## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| GEOFFREY TODD WEST, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | )    Case no.  4:08-cv-01576-IPJ-RRA |
| | ) |
| RICHARD ALLEN, Commissioner, | ) |
| Alabama Department of Corrections; | ) |
| et al., | ) |
| | ) |
| Respondents. | ) |

## MEMORANDUM OPINION

This action seeks habeas corpus relief with respect to Petitioner Geoffrey Todd West's ("West" or "Petitioner") state court conviction and death sentence on a charge of capital murder. *See* 28 U.S.C. § 2254 (2006).  All of the claims have been briefed to the Court, and the petition is ready for adjudication.

## FACTUAL BACKGROUND

### A.    THE OFFENSE

The following summary of the evidence relevant to the offense is taken from the Alabama Court of Criminal Appeals' opinion on direct appeal.  *West v. State*, 793 So.2d 870, 873 (Ala. Crim. App. 2000).  To the extent the appellate court relies upon the trial court's findings of fact, these findings are taken directly from the trial court's sentencing order, which the trial judge entitled "Judgment of the Court."  (C.R. Vol. 21, Tab. 62, p. 1).[1]

---

[1] The Court will utilize the following method of citation to the record. References to specific pages of the court record on direct appeal are designated  "**C.R.**___," and references to the transcript on direct appeal are designated "**R.**___." References to the court record of the Rule 32 proceedings are designated "**Rule 32 C.R.** __", and references to the transcript on collateral appeal are designated "**Rule 32 R.**___."  The court will strive to list any page number associated with the court records by reference to the numbers at the bottom of each page of a particular document, if those numbers are the most readily discoverable for purposes of expedient examination of that part of the record.

In its sentencing order, the trial court summarized the relevant facts of this case as follows:

> In the late hours of March 27, 1997, or early morning of March 28, 1997, Geoffrey Todd West and his girlfriend drove to Harold's Chevron located at 2920 Noccalula Parkway. The Defendant had previously been employed at this convenience store. The Defendant previously had expressed to others his intention to rob the Chevron Store and to "leave no witnesses," "kill the person up there."

> West entered the store armed with a .45 caliber handgun and the circumstances indicate that he held the attendant Berry at gunpoint and took $250.00 from a cookie can where the store money was kept. The medical evidence indicates that Berry was shot in the back of the head while lying prone on the floor behind the counter of the store. According to the medical examiner, the "wound would cause rapid incapacitation and a very rapid death."

*West v. State*, 793 So.2d 870, 873 (Ala. Crim. App. 2000) (quoting C.R. Vol. 21, Tab. 62, p. 1);

(*see also* Rule 32 C.R. Vol. 21, Tab. 73, p. 2 (same)).

## B.   THE SENTENCE

After the formal sentencing hearing, the trial court found the existence of two statutory aggravating circumstances and two statutory mitigating circumstances.[2] *See West v. State*, 793 So.2d

---

Otherwise, the page numbers that are referenced will correspond to those printed in the upper right hand corner of the record. Additionally, if there is an easily identifiable tab number close to any cited material, the Court has made reference to that for the reader's benefit.

[2] Initially, the trial court's sentencing order, which the trial judge entitled "Judgment of the Court," did not "make specific written findings concerning the existence or nonexistence of each aggravating circumstance enumerated in § 13A-5-49, Ala. Code 1975, each mitigating circumstance enumerated in § 13A-5-51, Ala. Code 1975, and any additional mitigating circumstances offered pursuant to § 13A-5-52, Ala. Code 1975." *West v. State*, 793 So.2d 870, 887 (Ala. Crim. App. 2000).

On remand to correct deficiencies in the original sentencing order, the trial court's Amended Sentencing Order listed two aggravating circumstances in addition to the two listed above: "(6) The capital offense was committed for pecuniary gain . . . ."; and "(8) That the capital offense was atrocious and cruel compared to other capital offenses . . . ." (C.R. Vol. 21, Tab. 63, pp. 28-29). These aggravating factors, however, were redacted when the trial court entered its Further Amended Sentencing Order, which is quoted in detail above. (C.R. Vol. 21, Tab. 64, pp. 1-2). Moreover, both the trial court's Amended Sentencing Order and Further Amended Sentencing Order listed "that the Defendant had no significant history of prior criminal activity" as a statutory mitigating factor. (C.R. Vol. 21, Tab 63, p. 29; C.R. Vol. 21, Tab. 64, p. 2). Yet this factor was not included within the trial court's initial sentencing order and was only added

870, 887-88 (Ala. Crim. App. 2000) (citing C.R. Vol. 21, Tab 64, pp. 1-3).  As to the statutory

aggravating factors, the trial court found:

> (1)  That the capital offense was committed by Geoffrey Todd West while he was under a sentence of imprisonment an aggravating circumstance described in § 13A-5-49 (1), Ala. Code 1975.
>
> . . . .
>
> (4)  That the capital offense was committed while the Defendant was engaged in the commission of, or an attempt to commit, or flight after committing or attempt to commit a robbery as described in § 13A-5-49 (4), Ala. Code 1975.

(C.R. Vol. 21, Tab. 64, pp. 1-2).  In regards to the statutory mitigating factors, the trial court found:

> (9)  That the Defendant had no significant history of prior criminal activity as described in § 13A-5-51 (1), Ala. Code 1975 which was a mitigating circumstance the Court considered in sentencing.
>
> . . . .
>
> (15)  That the Court specifically finds that the age of the Defendant at the time of the crime of 23 years was a mitigating circumstance which the Court considered in sentencing as described in § 13A-5-51 (7), Ala. Code.

*Id.* at 2.  "After considering all findings as listed above" as well as "the aspects of Defendant's

character and record presented by the evidence and sentence report as required by § 13A-5-52, Ala.

Code," the trial court held that "the aggravating circumstances . . . are sufficient to support the

sentence of death." *Id.* at 2-3.  And the court concluded by holding that "[i]t is further the opinion

of the Court that the mitigating circumstances above enumerated are insufficient to outweigh the

aggravating circumstances." *Id.* at 3.

---

after the Alabama Court of Criminal Appeals "remanded the case to the trial court with instructions that the trial court enter a new sentencing order that complies with the requirements of § 13A-5-47(d) . . . ." *West v. State*, 793 So.2d at 887; (*see* C.R. Vol. 21, Tab. 62, pp. 188-90).

## PROCEDURAL HISTORY

At 2:35 p.m. on June 1, 1999, West was found guilty of capital murder during the course of a robbery in violation of Alabama Code § 13A-5-40(a)(2) (1975).  (*See* R. Vol. 11, Tab. 19, pp. 1771-72).   A penalty hearing immediately followed, and, at 5:03 p.m. that same day, the jury recommended that West be sentenced to death by a vote of 10-2.  (*See* R. Vol. 12, Tab. 27, pp. 1802-03).  A formal sentencing hearing, as required by Alabama Code § 13A-5-47, was conducted on July 7, 1999, and the trial court judge followed the recommendation of the jury and sentenced West to death.  (*See* R. Vol. 12, Tab. 29, p. 1813).  An automatic appeal followed.

West appealed his conviction and sentence to the Alabama Court of Criminal Appeals who entered a published opinion "affirm[ing West's] conviction, but remand[ing] the case to the trial court with instructions that the trial court enter a new sentencing order that complies with the requirements of § 13A-5-47(d), Ala. Code 1975" on June 30, 2000.[3]  *See West v. State*, 793 So.2d 870, 887 (Ala. Crim. App. 2000).   After the trial court amended West's sentencing order, the Alabama Court of Criminal Appeals affirmed West's sentence of death on August 25, 2000.  *Id.* at 888.  The Supreme Court of Alabama denied West's petition for writ of certiorari without an opinion on February 23, 2001.[4]  *See Ex parte West*, No. 1000231 (Ala. Feb. 23, 2001) (Lyons, J.).  And the

---

[3] In particular, the trial court's sentencing order failed to "make specific written findings concerning the existence or nonexistence of each aggravating circumstance enumerated in § 13A-5-49, Ala. Code 1975, each mitigating circumstance enumerated in § 13A-5-51, Ala. Code 1975, and any additional mitigating circumstances offered pursuant to § 13A-5-52, Ala. Code 1975." *West v. State*, 793 So.2d 870, 887 (Ala. Crim. App. 2000).  For the trial court's original sentencing order, which the trial judge entitled "Judgment of the Court," see C.R. Vol. 21, Tab. 62, pp. 1-3.  For the trial court's Further Amended Sentencing Order, see C.R. Vol. 21, Tab. 64, pp. 1-3.

[4] The Alabama Supreme Court's order denying West's petition for writ of certiorari on direct appeal is not included within either West's present habeas petition or the volume of the record entitled "Opinions" by the Respondents.  *See* Petition (Doc. 1); (C.R. Vol. 21).  Nor can it be found on Westlaw or Lexis.  But the decision can be found within the appendix to West's Petition for a Writ of Certiorari to the United States Supreme Court, which West filed at the conclusion of his direct appeal.  (*See* C.R. Vol. 15, Tab. 38, App. A).

4

United States Supreme Court denied West's petition for writ of certiorari on October 1, 2001. *See*

*West v. Alabama*, 534 U.S. 849 (2001).

West thereafter filed a petition for relief from judgment pursuant to Rule 32 of the Alabama

Rules of Criminal Procedure on September 6, 2002. (Rule 32 C.R. Vol. 16, Tab. 40). On October

21, 2002, the State filed a Motion to Dismiss arguing that West's Rule 32 petition was barred by the

statute of limitations set forth in Rule 32.2(c) of the Alabama Rules of Criminal Procedure. (Rule

32 C.R. Vol. 16, Tab. 41, pp. 44-52). The circuit court granted the State's Motion to Dismiss and

summarily dismissed West's Rule 32 petition as untimely on March 12, 2003. (Rule 32 C.R. Vol.

16, p. 90). The Alabama Court of Criminal Appeals affirmed the circuit court's dismissal of West's

Rule 32 petition on September 26, 2003. *West v. State*, 890 So.2d 205 (Ala. Civ. App. 2003). On

November 21, 2003, the Court of Criminal Appeals overruled West's application for rehearing.

(Rule 32 C.R. Vol. 17, p. 16).

West subsequently petitioned the Alabama Supreme Court for certiorari review. On March

5, 2004, the Alabama Supreme Court summarily granted the writ and "suspend[ed] the provisions

of Rule 39(g) and (h), Ala. R. App. P., allowing [West] to file a brief." *Ex parte West*, 890 So.2d

210 (Ala. 2004). After finding that West's Rule 32 petition was timely filed, the Alabama Supreme

Court remanded the case to be considered in the first instance by the circuit court. *See id.* at 211.

On March 29, 2004, the State filed an Answer as well as a motion for summary dismissal

pursuant to Alabama Rule of Criminal Procedure 32.7(d), a motion for West to amend certain claims

that were insufficiently pleaded under Rules 32.3 and 32.6(b), and a motion for summary dismissal

pursuant to Rule 32.2(a). (Rule 32 C.R. Vol. 17, Tabs. 44-47, pp. 17-47). On December 28, 2004,

the Rule 32 circuit court granted the State's motion for summary dismissal pursuant to Alabama Rule

5

of Criminal Procedure Rule 32.2(a), and thereby summarily dismissed three claims in West's Rule

32 petition as procedurally barred.[5]  (Rule 32 C.R. Vol. 17, pp. 67-68).  Following an evidentiary

hearing as to the remaining issues, (Rule 32 R. Vol. 17-18, Tab. 49), the circuit court denied West's

Rule 32 petition on November 10, 2005.  (Rule 32 C.R. Vol. 21, Tab. 72, pp. 94-127).

On December 21, 2005, West filed a Notice of Appeal.  (Rule 32 C.R. Vol. 17, p. 128).  The

Alabama Court of Criminal Appeals affirmed the circuit court's decision in an unpublished opinion

on July 22, 2007.  (Rule 32 C.R. Vol. 21, Tab. 73).  The Supreme Court of Alabama denied certiorari

review on August 15, 2008.  (Rule 32 C.R. Vol. 21, Tab. 74).  Shortly thereafter, on August 29,

2008, West filed his present Petition for Writ of Habeas Corpus (the "Petition" or "Habeas Petition")

in this Court.

## THE SCOPE OF FEDERAL HABEAS REVIEW

Pursuant to 28 U.S.C. § 2254(a) (2006), a federal district court is prohibited from entertaining

a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a

State court" unless the petitioner alleges "he is in custody in violation of the Constitution or laws or

---

[5] Specifically, the circuit court summarily dismissed the following claims as procedurally barred under Rules 32.2(a)(3) and 32.2(a)(5) of the Alabama Rules of Criminal Procedure:

Claim I:  The Claim That The Indictment Was Fatally Defective.  (Paragraphs 1-17) Ala. R. Crim. P. 32.2(a)(3) and (a)(5).

Claim II:  The Claim That Alabama's Capital Sentencing Scheme Is Unconstitutional.  (Paragraph 18-33) Ala. R. Crim. P. 32.2(a)(3) and (a)(5).

Claim III(A):  The Claim That Trial Counsel Was Ineffective, In Part, Because Of Grossly Inadequate Compensation.  (Paragraph 42-44) Ala. R. Crim. P. 32.2(a)(3) and (a)(5).

(Rule 32 C.R. Vol. 17, pp. 67-68).  West did "not pursue th[ese] claims on appeal" to the Alabama Court of Criminal Appeals; "therefore, they [were] deemed to be waived" by that court.  (Rule 32 C.R. Vol. 21, Tab. 73, pp. 5-6).  In this Court, West neither attacks the sufficiency of the Rule 32 circuit court's summary dismissal of these claims nor raises these issues in his present Petition for Writ of Habeas Corpus.  Because West does not currently pursue these claims, they are abandoned.  *See Whisenhant v. Allen*, 556 F.3d 1198, 1202-03 (11th Cir. 2009) ("Because [the petitioner] does not raise these claims in his brief to us, these claims are abandoned." (citation omitted)).

treaties of the United States."  In other words, this Court's review of habeas claims is limited to federal constitutional questions.  Claims pertaining solely to "an alleged defect in a [state] collateral proceeding" or to a "state's interpretation of its own laws or rules" does not provide a basis for federal habeas corpus relief under section 2254.  *Alston v. Dep't of Corr., Fla.*, 610 F.3d 1318, 1325-26 (11th Cir. 2010) (citations omitted).  Accordingly, unless otherwise expressly stated, use of the word "claim" in this opinion presupposes a claim of federal constitutional proportion.

## A.    Exhaustion and Procedural Default

Prior to seeking relief in federal court from a state court conviction and sentence, a habeas petitioner is first required to present his federal claims to the state court by exhausting all of the state's available procedures.  *See* 28 U.S.C. § 2254(b)(1) (2006).  The purpose of this requirement is to ensure that state courts are afforded the first opportunity to correct federal questions affecting the validity of state court convictions.  As explained by the Eleventh Circuit:

> In general, a federal court may not grant habeas corpus relief to a state prisoner who has not exhausted his available state remedies.  28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State . . . .").  "When the process of direct review . . . comes to an end, a presumption of finality and legality attaches to the conviction. . . . The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited.  Federal courts are not forums in which to relitigate state trials."  *Smith v. Newsome*, 876 F.2d 1461, 1463 (11th Cir. 1989) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 887 [1983]).
>
> Exhaustion of state remedies requires that the state prisoner "fairly present federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard v. Connor*, 404 U.S. 270, 275-76 [1971]) (internal quotation marks omitted).  The Supreme Court has written these words:

> [T]hat the federal claim must be fairly presented to the state courts .
> . . . it is not sufficient merely that the federal habeas applicant has
> been through the state courts. . . .  Only if the state courts have had
> the first opportunity to hear the claim sought to be vindicated in a
> federal habeas proceeding does it make sense to speak of the
> exhaustion of state remedies.

*Picard*, 404 U.S. at 275.  *See also Duncan*, 513 U.S. at 365 ("Respondent did not
apprise the state court of his claim that the evidentiary ruling of which he complained
was not only a violation of state law, but denied him the due process of law
guaranteed by the Fourteenth Amendment.").

> Thus, to exhaust state remedies fully the petitioner must make the state court
> aware that the claims asserted present federal constitutional issues.  "It is not enough
> that all the facts necessary to support the federal claim were before the state courts
> or that a somewhat similar state-law claim was made."  *Anderson v. Harless*, 459
> U.S. 4, 5-6 (1982) (citations omitted).

*Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) (alterations in original) (parallel citations

omitted); *see also Mason v. Allen*, 605 F.3d 1114, 1119 (11th Cir. 2009).

Moreover, if a petitioner fails to raise his federal claim to the state court at the time and in

the manner dictated by the state's procedural rules, the state court can decide the claim is not entitled

to a review on the merits, *i.e.*, "the petitioner will have *procedurally defaulted* on that claim."

*Mason*, 605 F.3d at 1119 (emphasis added).  Usually, if the last state court to examine a claim

explicitly finds that the claim is defaulted because the petitioner failed to follow state procedural

rules, then federal review of the claim is also precluded pursuant to federal procedural default

principles.  As the Eleventh Circuit recently stated:

> "The teeth of the exhaustion requirement comes from its handmaiden, the
> procedural default doctrine."  *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).
> The doctrine of procedural default dictates that "[a] state court's rejection of a
> petitioner's constitutional claim on state procedural grounds will generally preclude
> any subsequent federal habeas review of that claim."  *Judd v. Haley*, 250 F.3d 1308,
> 1313 (11th Cir. 2001).  However, a state court's rejection of a federal constitutional
> claim on procedural grounds may only preclude federal review if the state procedural

ruling rests upon "adequate and independent" state grounds.  *Marek v. Singletary*, 62 F.3d 1295, 1301 (11th Cir. 1995) (citation omitted).

       We have "established a three-part test to enable us to determine when a state court's procedural ruling constitutes an independent and adequate state rule of decision." *Judd*, 250 F.3d at 1313.  "First, the last state court rendering a judgment in the case must clearly and expressly state that it is relying on state procedural rules to resolve the federal claim without reaching the merits of that claim." *Id.*  Second, the state court's decision must rest entirely on state law grounds and not be intertwined with an interpretation of federal law.  *See id.*  Third, the state procedural rule must be adequate, i.e., firmly established and regularly followed and not applied "in an arbitrary or unprecedented fashion." *Id.*

*Ward v. Hall*, 592 F.3d 1144, 1156-57 (11th Cir. 2010).[6]  And it is important to reiterate that federal deference to a state court's clear finding of procedural default under its own rules is so strong that:

       "[A] state court need not fear reaching the merits of a federal claim in an *alternative* holding.  Through its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law." *Harris*, 489 U.S. at 264 n. 10, 109 S. Ct. 1038 (emphasis in original).  *See also Alderman v. Zant*, 22 F.3d 1541, 1549-51 (11th Cir. 1994) (where a Georgia habeas corpus court found that the petitioner's claims were procedurally barred as successive, but also noted that the claims lack merit based on the evidence, "this ruling in the alternative did not have an effect . . . of blurring the clear determination

---

[6] "When the last state court rendering judgment affirms without explanation, [a federal habeas court will] presume that it rests on the reasons given in the last reasoned decision." *Mason*, 605 F.3d at 1118 n.2.  As the Supreme Court has observed:

       The problem we face arises, of course, because many formulary orders are not meant to convey *anything* as to the reason for the decision.  Attributing a reason is therefore both difficult and artificial.  We think that the attribution necessary for federal habeas purposes can be facilitated, and sound results more often assured, by applying the following presumption:  Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.  If an earlier opinion "fairly appear[s] to rest primarily upon federal law," we will presume that no procedural default has been invoked by a subsequent unexplained order that leaves the judgment or its consequences in place.  Similarly where, as here, the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits. . . .

*Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) (internal citations omitted).

by the [Georgia habeas corpus] court that the allegations was procedurally barred"),
*cert. denied*, 513 U.S. 1061, 115 S. Ct. 673, 130 L. Ed. 2d 606 (1994).

*Bailey v. Nagle*, 172 F.3d 1299, 1305 (11th Cir. 1999) (alterations in original).

The Supreme Court defines an "adequate and independent" state court decision as one which "rests on a state law ground that is *independent* of the federal question and *adequate* to support the judgment." *Lee v. Kemna,* 534 U.S. 362, 375 (2002) (quoting *Coleman v. Thompson,* 501 U.S. 722, 729 (1991)).  Whether or not a state procedural rule is "adequate and independent" as to have a preclusive effect on federal review of a claim "is itself a federal question." *Id.*  (quoting *Douglas v. Alabama*, 380 U.S. 415, 422 (1965)).

A state procedural rule is "independent of the federal question" when it "rests solidly on state law grounds [that are] not 'intertwined with an interpretation of federal law.'" *Judd v. Haley,* 250 F.3d 1308, 1313 (11th Cir. 2001) (quoting *Card v. Dugger*, 911 F.2d 1494, 1516 (11th Cir. 1990)). To be considered "adequate," the state procedural rule must be both "firmly established and regularly followed." *Kemna,* 534 U.S. at 376 (quoting *James v. Kentucky*, 466 U.S. 341, 348 (1984)).  Put differently, the rule must be "clear [and] closely hewn to" by the state for a federal court to find it to be adequate. *Cf. James*, 466 U.S. at 346.  This does not mean that the procedural rule must be rigidly applied in every instance, or that occasional failure to do so eliminates its "adequacy." Rather, the "adequacy" requirement means only that the procedural rule "must not be applied in an arbitrary or unprecedented fashion." *Judd,* 250 F.3d at 1313.  If the state procedural rule is adequate, then the federal court will normally foreclose its review.  If, however, the rule is not firmly established or if it is applied in an arbitrary, unprecedented, and manifestly unfair fashion, it is not adequate to preclude federal review.  *See Card*, 911 F.2d at 1517.

10

Of course, there are also instances where the doctrines of procedural default and exhaustion intertwine.  For instance, if a petitioner's federal claim is unexhausted, a district court will traditionally dismiss it without prejudice or stay the cause of action to allow the petitioner to first avail himself of his state remedies.  *See Rose v. Lundy*, 455 U.S. 509, 519-20 (1982).  But "if it is clear from state law that any future attempts at exhaustion [in state court] would be futile" under the state's own procedural rules, a court can simply find that the claim is "procedurally defaulted, even absent a state court determination to that effect."  *Bailey*, 172 F.3d at 1305 (citation omitted).

## B.   EXCEPTIONS TO THE PROCEDURAL DEFAULT DOCTRINE

"There are three situations in which an otherwise valid state ground will not bar" a federal habeas court from considering a constitutional claim that is procedurally defaulted:

> (1) where failure to consider a prisoner's claims will result in a "fundamental miscarriage of justice"; (2) where the state procedural rule was not "'firmly established and regularly followed'"; and (3) where the prisoner had good "cause" for not following the state procedural rule and was "prejudice[d]" by not having done so.

*Edwards v. Carpenter*, 529 U.S. 446, 455 (2000) (Breyer, J., concurring) (internal citations omitted); *see also Coleman*, 501 U.S. at 749-50 ("[A]n adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice.") (citations and internal quotation marks omitted); *Murray v. Carrier*, 477 U.S. 478, 496 (1986) ("[W]here a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ

even in the absence of a showing of cause for the procedural default.").[7]

### 1.        The "Cause and Prejudice" Standard

"A federal court may still address the merits of a procedurally defaulted claim if the petitioner can show cause for the default and actual prejudice resulting from the alleged constitutional violation." *Ward*, 592 F.3d at 1157 (citing *Wainwright v. Sykes*, 433 U.S. 72, 84-85 (1977)).  This so-called "cause *and* prejudice" standard is clearly framed in the conjunctive; therefore, a petitioner must affirmatively prove both cause and prejudice.  *Cf. id.* (emphasis added).  To show "cause," a petitioner must prove that "some objective factor external to the defense impeded counsel's efforts" to raise the claim previously.  *Carrier*, 477 U.S. at 488; *see also Amadeo v. Zant*, 486 U.S. 214, 221-22 (1988).

> Objective factors that constitute cause include "'interference by officials'" that makes compliance with the State's procedural rule impracticable, and "a showing that the factual or legal basis for a claim was not reasonably available to counsel."  In addition, constitutionally "[i]neffective assistance of counsel . . . is cause."  Attorney error short of ineffective assistance of counsel, however, does not constitute cause and will not excuse a procedural default.

*McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991) (citations omitted); *see also Coleman*, 501 U.S. at 754 ("Attorney error that constitutes ineffective assistance of counsel is cause . . . .").  Further, "where a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim in accordance with applicable state procedures."  *Reed v. Ross*, 468 U.S. 1, 16 (1984).

---

[7] *See also Herrera v. Collins*, 506 U.S. 390, 417 (1993) (assuming, without deciding, "that in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of the defendant unconstitutional," but stating that "the threshold showing for such an assumed right would be extraordinarily high"); *Davis v. Terry*, 465 F.3d 1249, 1252 n. 4 (11th Cir. 2006) ("It would be considered a fundamental miscarriage of justice if 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995))).

Once cause is proved, a habeas petitioner must also prove prejudice.  Such a showing must go beyond proof "that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *United States v. Frady*, 456 U.S. 152, 170 (1982); *see also McCoy v. Newsome*, 953 F.2d 1252, 1261 (11th Cir. 1992) (per curiam).

### 2.    The "Fundamental Miscarriage of Justice" Standard

In a "rare," "extraordinary,"[8] and "narrow class of cases,"[9] a federal court may consider a procedurally defaulted claim in the absence of a showing of "cause" for the procedural default if either:  (1) a fundamental miscarriage of justice "has probably resulted in the conviction of one who is actually innocent," *Smith v. Murray*, 477 U.S. 527, 537-38 (1986) (quoting *Carrier*, 477 U.S. at 496);[10] or (2) the petitioner shows "by clear and convincing evidence that but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty."  *Schlup*, 513 U.S. at 323-27 & n.44 (quoting *Sawyer v. Whitley*, 505 U.S. 333, 336 (1992)); *see also, e.g., Smith v. Murray*, 477 U.S. at 537-38.  But even when exhaustion and procedural default are not at issue, federal review of a claim is fairly restricted if the state court decided the issue on the merits.

---

[8] *Schlup*, 513 U.S. at 321 ("To ensure that the fundamental miscarriage of justice exception would remain 'rare' and would only be applied in the '*extraordinary case*,' while at the same time ensuring that the exception would extend relief to those who were truly deserving, th[e Supreme] Court explicitly tied the miscarriage of justice exception to the petitioner's innocence." (emphasis added)).

[9] *McCleskey*, 499 U.S. at 494 ("Federal courts retain the authority to issue the writ of habeas corpus in a further, *narrow class of cases* despite a petitioner's failure to show cause for a procedural default.   These are *extraordinary* instances when a constitutional violation probably has caused the conviction of one innocent of the crime.  We have described this class of cases as implicating a fundamental miscarriage of justice." (emphasis added) (citing *Carrier*, 477 U.S. at 485)).

[10] Specifically, in *Murray v. Carrier,* the Supreme Court observed that, "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default."  477 U.S. at 496.

**C.    Rules Governing Habeas Corpus Cases Under Section 2254**

**1.    28 U.S.C. § 2254(d) and (e)**

By enacting the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),[11] Congress significantly limited the circumstances under which a habeas petitioner may obtain relief. Indeed, under the AEDPA, a petitioner is only entitled to relief on a federal claim if he shows that "the state court decision was (1) 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States'; or (2) 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Boyd v. Allen*, 592 F.3d 1274, 1292 (11th Cir. 2010) (quoting 28 U.S.C. § 2254(d)); *see also Miller-El v. Dretke*, 545 U.S. 231, 240 (2005); *Williams v. Taylor*, 529 U.S. 362, 404 (2000).  Moreover, "[a] state court's factual findings are presumed correct unless rebutted by the petitioner with clear and convincing evidence." *Boyd*, 592 F.3d at 1292 (citing § 2254(e)(1)).

A state court's adjudication of a claim will be sustained under section 2254(d)(1) unless it is "contrary to" clearly established, controlling Supreme Court precedent or it is an "unreasonable application" of that law. These are two different inquiries, not to be confused or conflated, as the Supreme Court explained in *Williams v. Taylor*:

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court.  Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

---

[11] *See* Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996) (codified as amended in scattered sections of 28 U.S.C.).

529 U.S. at 404-05; *see also Alderman v. Terry*, 468 F.3d 775, 790-91 (11th Cir. 2006) ("[T]he 'contrary to' and 'unreasonable application' clauses are interpreted as independent statutory modes of analysis." (citation omitted)).  Further, the AEDPA limits the source of "clearly established Federal law . . . to the holdings, as opposed to the dicta, of the [Supreme] Court's decisions as of the time of the relevant state-court decision."  *Id.* at 412 (internal quotation marks omitted).[12]

A state-court determination can be "contrary to" clearly established Supreme Court precedent in either of two ways:

> First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours.

*Williams v. Taylor*, 529 U.S. at 405 (citation omitted).

Likewise, a state-court determination can be an "unreasonable application"[13] of clearly established Supreme Court precedent in either of two ways:

> First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Id.* at 407 (citation oimtted).  And whether a particular application of Supreme Court precedent is

---

[12] *See also Bowles v. Sec'y, Dep't of Corr.*, 608 F.3d 1313, 1315-1316 (11th Cir. 2010) ("[F]ederal law is 'clearly established' only when it is 'embodied in a holding' of the Supreme Court.  Dicta in Supreme Court opinions is not enough.  Nor can anything in a federal court of appeals decision, even a holding directly on point, clearly establish federal law for § 2254(d)(1) purposes." (citations omitted)).

[13] "[W]hen the federal court is faced with a 'run-of-the-mill state-court decision applying the correct legal rule,' the companion 'unreasonable application' provision of § 2254(d)(1) is the proper statutory lens." *Alderman*, 468 F.3d at 791 (citation omitted).

"unreasonable" turns not on subjective factors, but on whether the application of Supreme Court precedent at issue was "objectively unreasonable." *See Alderman*, 468 F.3d at 791; *Putman v. Head*, 268 F.3d 1223, 1241-49 (11th Cir. 2001). It is important to note, however, that the Supreme "Court has held on numerous occasions that it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1419 (2009) (citations and internal quotation marks omitted). Therefore, the proper inquiry under the AEDPA "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citation omitted).

Finally, section "2254(d)(2) regulates federal court review of state court findings of fact; the section limits the availability of relief to 'decisions that were based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Alderman*, 468 F.3d at 791 (brackets omitted) (quoting § 2254(d)(2)). And commensurate with the deference accorded to a state court's factual findings, "the petitioner must rebut 'the presumption of correctness [of a state court's factual findings] by clear and convincing evidence.'" *Ward*, 592 F.3d at 1155-56 (alterations in original) (quoting § 2254(e)(1)).[14] "This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." *Bui v. Haley*, 321 F.3d 1304,

---

[14] *See also Schriro v. Landrigan*, 550 U.S. at 473-74 ("AEDPA also *requires* federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" (emphasis added) (quoting § 2254(e)(1))).

1312 (11th Cir. 2003) (citing *Sumner v. Mata*, 449 U.S. 539, 547 (1981)).[15]

Having explained the scope of this Court's authority to review state court decisions, it is now appropriate to examine the federal procedural rules applicable to the controversy presently before the Court.

### 2.        Procedural Rules Governing Habeas Corpus Cases Under § 2254

Because "habeas corpus review exists only to review errors of constitutional dimension," a habeas corpus petition must meet the "heightened pleading requirements [of] 28 U.S.C. § 2254 Rule 2(c)." *McFarland v. Scott*, 512 U.S. 849, 856 (1994) (citation omitted).   "[T]he petition must 'specify all the grounds for relief available to the petitioner' and 'state the facts supporting each ground.'"   *Mayle v. Felix*, 545 U.S. 644, 655 (2005) (quoting Rule 2(c) of the Rules Governing Section 2254 Cases in the U.S. District Courts, 28 U.S.C. foll. § 2254).   Accordingly, a "general reference to the transcripts, case records and briefs on appeal patently fails to comply with Rule

---

[15] And in the unusual  instances where the state trial and appellate collateral courts rely on different legal theories in denying a petitioner's claim on the merits, both holdings are entitled to AEDPA deference. *See Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 752 (11th Cir. 2010).  As the Eleventh Circuit explained in the context of an ineffective assistance of counsel claim:

> The state collateral trial court denied this claim based on *Strickland*'s performance element and did not mention the prejudice element.  *See Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069 ("[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.").  The court determined that: "[Allen] did not give counsel any theory of innocence to investigate prior to the sentencing phase.  Thereafter, the theory was put forward as a possibility, not as fact.  Under those circumstances, Counsel cannot be deemed ineffective for failure to investigate the Defendant's subsequently disclosed theory of innocence."  *Florida v. Allen*, No. 92-30056-CF, slip op. at 44.  The Florida Supreme Court denied this claim based on *Strickland*'s prejudice element.  *See Allen II*, 854 So.2d at 1258 n. 5 (holding that this claim "lacks merit because Allen was not prejudiced by counsel's performance in the guilt phase").  *Under AEDPA we owe deference to both of those decisions.  See Hammond*, 586 F.3d at 1331; *see also Cone*, 129 S.Ct. at 1784.

*Id.* (emphasis added); *see also Hammond v. Hall*, 586 F.3d 1289, 1330-32 (11th Cir. 2009) ("The Georgia courts, considered collectively, gave two consistent reasons for deciding against this claim.  Each reason is due deference.").

17

2(c)."  *Phillips v. Dormire*, No. 4:04CV1483, 2006 WL 744387, at *1 (E.D. Mo. Mar. 20, 2006) (citing *Adams v. Armontrout*, 897 F.2d 332, 333 (8th Cir. 1990)); *see also Grant v. Georgia*, 358 F.2d 742 (5th Cir. 1966) (per curiam) ("The application fails to allege any facts upon which the trial court could find a deprivation of a constitutional right, or any other basis for collateral attack.  Mere conclusionary allegations will not suffice." (citation omitted)).[16]

The burden of proof is on the habeas petitioner "to establish his right to habeas relief and he must prove all facts necessary to show a constitutional violation."  *Blankenship v. Hall*, 542 F.3d 1253, 1270 (11th Cir. 2008).[17]  That is, to carry his or her burden, "a petitioner must state specific, particularized facts which entitle him or her to habeas corpus relief for each ground specified.  These facts must consist of sufficient detail to enable the court to determine, from the face of the petition alone, whether the petition merits further habeas corpus review."  *Adams*, 897 F.2d at 334; *see also Beard v. Clarke*, 18 Fed. Appx. 530, 531 (9th Cir. 2001) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief. . . .  Notice pleading is insufficient; the petitioner must state sufficient facts." (citations omitted)).[18]  Therefore, the mere assertion of a ground for relief, without more factual detail, does not satisfy a petitioner's burden of proof or the requirements of 28 U.S.C. § 2254(e)(2) and Rule 2(c) of the Rules Governing Section

---

[16]  The Eleventh Circuit, in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), adopted as binding precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

[17]  *See also Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) ("If there has been no evidentiary hearing in state court on an issue raised on habeas corpus, one is required if the petitioner alleges facts which, if true, would entitle him to relief."); *Hill v. Linahan*, 697 F.2d 1032, 1036 (11th Cir. 1983) ("The burden of proof in a habeas proceeding is always on the petitioner.").

[18]  *See also* Advisory Committee Note to Rule 4 of the Rules Governing Section Cases 2254 Cases in the U.S. District Courts, 28 U.S.C. foll. § 2254 ("[N]otice pleading is not sufficient [in habeas proceedings], for the petition is expected to state facts that point to a real possibility of constitutional error." (internal quotation marks omitted) (quoting *Aubut v. Maine*, 431 F.2d 688, 689 (1st Cir. 1970)).

2254 Cases in the U.S. District Courts, 28 U.S.C. foll. § 2254.  *See Smith v. Wainwright*, 777 F.2d 609, 616 (11th Cir. 1985) (holding that a general allegation of ineffective assistance of counsel is insufficient; a petition must allege specific errors in counsel's performance and facts showing prejudice).

**D.    EXHAUSTION AND PROCEDURAL DEFAULT ISSUES PERTINENT TO WEST'S CASE**

In the only paragraph West attributes to the standard of review in his present, federal habeas petition, he states:

> When reviewing a habeas corpus petitioner's claims of constitutional violations, federal courts are required to make independent decisions regarding whether the alleged violations occurred.  Decisions by state courts on petitioner's constitutional claims are not entitled to any presumption of correctness.  *Glidewell v. Burden*, 922 F.2d 1027, 1029 (11th Cir. 1987), *cert. denied*, 484 U.S. 1018, 108 S.Ct. 727, 98 L.Ed. 2d 676 (1988) .  Both questions of law and mixed questions of law and fact are reviewed de novo by federal habeas courts.  *Kennedy v. Herring*, 54 F.3d 678, 682 (11th Cir. 1995); *Cochran v. Herring*, 43 F.3d 1404, 1408 (11th Cir. 1995).

Petition (Doc. 1) at 25.  West apparently operates under the belief that the Eleventh Circuit's eventual "*de novo* [review of this] district court's grant or denial of [his] habeas corpus petition," *Ward*, 592 F.3d at 1155, is the determinative standard for this Court to address each and every issue set forth in his petition.  West is clearly mistaken, however, because even the Eleventh Circuit is bound to review claims raised within habeas petitions under the standards of review promulgated by both Congress and the Supreme Court.  *See, e.g.*, *Powell v. Allen*, 602 F.3d 1263, 1268 (11th Cir. 2010) (per curiam) ("[O]ur review of the Alabama habeas court's decision is limited by the terms of 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act . . . ." (citations and footnote omitted)).

To begin, West filed his habeas petition after April 24, 1996, and thus federal "review of

[his] habeas petition . . . is limited by the terms of 28 U.S.C. § 2254 as amended by the [AEDPA]."

*Land v. Allen*, 573 F.3d 1211, 1216 (11th Cir. 2009) (per curiam) (citation omitted).  But in spite of

the stringent limitations the AEDPA imposes upon this Court, West  still fails to cite any case post-

1995—*i.e.*, after the AEDPA's enactment—within his recitation of the standard of review.  Petition

(Doc. 1) at 25.  An omission West repeated in his Reply Brief.  *See* Reply Br. (Doc. 19) at 31.

Further, West's  inadvertence was compounded by the fact that he neglected to take the AEDPA into

account when crafting his arguments.[19]  As a result, West does not raise any arguments as to how the

state courts' rulings were either contrary to, or an unreasonable application of, clearly established

federal law.  *See, e.g.*, Answer (Doc. 10) at 11-12.

On the other hand, West argues, for the first time in his Reply Brief, that the state collateral

court's ruling that his "ineffectiveness claim failed to meet the pleading requirements of Rules 32.3

and 32.6(b) of the Alabama Rules of Criminal Procedure . . . . does not constitute an adequate

independent ground for precluding federal review of his claims."  Reply Br. (Doc. 19) at 34-35.[20]

But in making these arguments, at no time does West: (1) argue that the Alabama collateral courts'

ruling on his ineffective assistance claims were either "contrary to, or involved an unreasonable

---

[19] West not only omits discussing the AEDPA's implications to the claims he raises in his federal habeas petition, but he also cites section 2254—the applicable AEDPA provision governing habeas petitions filed by prisoners in state custody—only twice in his petition.  One reference is merely cursory and contained in West's introductory paragraph; whereas the other simply states: "The petitioner [West] has exhausted all available State remedies as required by 28 U.S.C. Section 2254."  Petition (Doc. 1) at 1, 2.

[20] *See also* Reply Br. (Doc. 19) at 42.

As stated above, West's Rule 32 Petition met the pleading requirements of Alabama law because he alleged facts which, if true, entitle him to relief.  But even if this Court finds that his ineffectiveness claims did not completely satisfy Rules 32.3 and 32.6(b), there is no question that, at a minimum, he substantially satisfied the purpose of the rule.  This renders the state court rejection of his ineffectiveness claims invalid as a basis for precluding federal review of it. . . .

*Id.* (citations omitted).

application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1); or (2) dispute the Respondents' arguments that his second claim, *i.e.*, his alleged denial of expert assistance,[21] is not entitled to federal habeas review, *see, e.g.*, Answer (Doc. 10) at 21-29.  Even so, the Court will address each of these issues separately below.

With these principles in mind, the Court now turns to West's two principal claims.

## PETITIONER'S CLAIMS

West raises two principal claims in his petition: (1) ineffective assistance of trial counsel; and (2) denial of expert assistance.  The Court will address each in turn.

## I.   INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

West first alleges that he was denied effective assistance of counsel in four respects.  *See* Petition (Doc. 1) at 27-42.  Before addressing West's allegations, however, the Court will discuss the general constitutional standard applicable to each of West's ineffective assistance sub-claims.

### A.      General Standard

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-pronged standard for judging, under the Sixth Amendment, the effectiveness of attorneys who represent criminal defendants at trial or on direct appeal.[22]

---

[21] As discussed at length in Part II below, West's denial of expert assistance claim is rather disjointed and raises a number of distinct alleged constitutional violations.  For present purposes, however, it suffices to say that West asserts claims under both the Sixth and Fourteenth Amendments, and the caption for this claim is entitled: "West was denied a reasonable opportunity to obtain expert assistance and was denied his right to effective cross-examination."  Petition (Doc. 1) at 43.

[22] Ineffective assistance of counsel claims are specifically limited to the performance of attorneys who represented a defendant at trial or on direct appeal from the conviction.  *See* 28 U.S.C. § 2254(i) (2006) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.").  As the Supreme Court stated in *Coleman v. Thompson*: "There is no constitutional right to an attorney in state post-conviction proceedings.  Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings."  501 U.S. 722, 752 (1991) (citations omitted).  Accordingly, the Eleventh Circuit has observed:

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. *First*, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Second*, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id*. at 687 (emphasis added); *see also Reed v. Sec'y, Fla. Dep't of Corr.*, 593 F.3d 1217, 1239-41 (11th Cir. 2010). Stated differently, "[a] petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced his defense." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citation omitted).

Because *Strickland*'s preceding two-part test is clearly framed in the conjunctive, a petitioner bears the burden of proving *both* "deficient performance" *and* "prejudice" by "a preponderance of competent evidence." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc).[23] Thus, a court is not required to address both aspects of the *Strickland* standard if a habeas petitioner is unable to establish one prong. *See, e.g., Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth

---

[B]ecause errors of post-conviction counsel cannot be constitutionally ineffective, a petitioner must bear the risk of attorney error that results in a procedural default. Thus, because [petitioner] had no constitutional right to counsel during his post-conviction proceedings, his attorneys' errors during those proceedings cannot constitute cause to excuse his procedural default. Because [petitioner] has failed to establish one element of the cause and prejudice exception, he cannot show the exception applies.

*Johnson v. Singletary*, 938 F.2d 1166, 1175 (11th Cir. 1991) (en banc) (citations and internal quotation marks omitted).

[23] *See also Kokal v. Sec'y, Dep't of Corr.*, 623 F.3d 1331, 1344 (11th Cir. 2010) ("[A] petitioner's failure to show either deficient performance or prejudice is fatal to a *Strickland* claim . . . ." (citation omitted)); *Williams v. Allen*, 598 F.3d at 789 ("The petitioner bears the burden of proof on the performance prong as well as the prejudice prong of a Strickland claim, and both prongs must be proved to prevail." (citation omitted)).

Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

Further, when assessing ineffective assistance of counsel claims:

[I]t is important to keep in mind that "in addition to the deference to counsel's performance mandated by *Strickland*, the AEDPA adds another layer of deference—this one to a State court's decision—when we are considering whether to grant federal habeas relief from a State court's decision." Thus, [a petitioner] not only has to satisfy the elements of the *Strickland* standard, but he must also show that the State "court applied *Strickland* to the facts of his case in an *objectively unreasonable manner*."

*Williams v. Allen*, 598 F.3d at 789 (brackets in original omitted) (citations omitted); *see also Porter v. McCollum*, 130 S.Ct. 447, 452 (2009) (per curiam).

### 1.    *The Performance Prong*

When reviewing whether defense counsel's performance was deficient, "the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices." *Bobby v. Van Hook*, 130 S.Ct. 13, 17 (2009*)* (per curiam) (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 479 (2000)). As such, a habeas petitioner must show that counsel's representation fell "'below an objective standard of reasonableness' in light of 'prevailing professional norms'" in order to establish deficient performance. *Id.* at 16 (quoting *Strickland*, 466 U.S. at 687-88); *see also Williams v. Taylor*, 529 U.S. at 390-91; *Johnson v. Upton*, 615 F.3d 1318, 1330 (11th Cir. 2010) ("[T]he governing standard is objectively reasonable attorney conduct under prevailing professional norms . . . .").

But such a showing is not for the weary as *Strickland* instructs lower federal courts to be "highly deferential" while engaging in such assessments:

Judicial scrutiny of counsel's performance must be highly deferential. It is

all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.   A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, *a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance*; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.   There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way.

*Strickland*, 466 U.S. at 689 (emphasis added) (citations and quotation marks omitted); *see also*

*Whisenhant v. Allen*, 556 F.3d 1198, 1203 (11th Cir. 2009) (per curiam) ("To counteract the

distorting effects of hindsight, the defendant bears the burden of overcoming a strong presumption

that the challenged action is sound trial strategy." (citation omitted)).  Simply put, a habeas petitioner

"must establish that no competent counsel would have taken the action that his counsel did take" to

overcome the presumption that counsel's conduct fell within the wide range of reasonable

professional assistance.  *Chandler*, 218 F.3d at 1315 (citation omitted); *see also Stewart v. Sec'y,*

*Dep't of Corr.*, 476 F.3d 1193, 1209 (11th Cir. 2007).

The reasonableness of counsel's performance is judged from the perspective of the attorney,

at the time of the alleged error, and in light of all the circumstances.  *See*, *e.g.*, *Newland v. Hall*, 527

F.3d 1162, 1184 (11th Cir. 2008) ("We review counsel's performance 'from counsel's perspective

at the time,' to avoid 'the distorting effects of hindsight.'" (quoting *Strickland*, 466 U.S. at 689));

*Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001) (giving lawyers "the benefit of the doubt

for 'heat of the battle' tactical decisions").  As the Eleventh Circuit has stated:

Under this standard, there are no "absolute rules" dictating what reasonable

24

> performance is or what line of defense must be asserted.  [*Chandler*, 218 F.3d] at
> 1317.  Indeed, as we have recognized, "[a]bsolute rules would interfere with
> counsel's independence—which is also constitutionally protected—and would
> restrict the wide latitude counsel have in making tactical decisions."  *Putman v.
> Head*, 268 F.3d 1223, 1244 (11th Cir. 2001).

*Michael v. Crosby*, 430 F.3d 1310, 1320 (11th Cir. 2005).  "Even if many reasonable lawyers would

not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds

unless it is shown that no reasonable lawyer, in the circumstances, would have done so."  *Rogers v.

Zant*, 13 F.3d 384, 386 (11th Cir. 1994).  In short, an attorney's performance will be deemed

deficient only if it is objectively unreasonable, *i.e.*, it falls below the wide range of competence

demanded of attorneys in criminal cases, and it is shown "that no competent attorney would have

taken the action that [the petitioner's] counsel did take."  *Williams v. Allen*, 598 F.3d at 790 (citation

and quotation marks omitted); *see also Stone v. Dugger*, 837 F.2d 1477, 1479 (11th Cir. 1988)

("[E]ven in capital felony cases defendants have no legal right to the very best counsel.").

### 2.    *The Prejudice Prong*

Even when counsel performed in a deficient manner, a habeas petitioner must still establish

that he or she suffered prejudice as a result of that deficiency.  To satisfy this standard, a petitioner

"must show that there is a reasonable probability that, but for counsel's unprofessional errors, the

results of the proceeding would have been different.  A reasonable probability is a probability

sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694; *see also Williams

v. Taylor*, 529 U.S. at 391.  Put differently, the Eleventh Circuit has opined: "The prejudice prong

does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that

counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable."

*Rhode v. Hall*, 582 F.3d 1273, 1280 (11th Cir. 2009) (citing *Lockhart v. Fretwell*, 506 U.S. 364, 369

(1993)).  And "[w]hen evaluating this probability, 'a court . . . must consider the totality of the evidence before the judge or jury.'"  *Brownlee v. Haley*, 306 F.3d 1043, 1060 (11th Cir. 2002) (citation omitted).

Further, a habeas petitioner "must affirmatively prove prejudice, because '[a]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.'"  *Gilreath v. Head*, 234 F.3d 547, 551 (11th Cir. 2000) (quoting *Strickland*, 466 U.S. at 693).  The fact that counsel's "error had some conceivable effect on the outcome of the proceeding" is insufficient to show prejudice.  *Strickland*, 466 U.S. at 693; *see also Porter*, 130 S.Ct. at 455-56.  Instead, a petitioner must present competent evidence proving "that trial counsel's deficient performance deprived him of 'a trial whose result is reliable.'"  *Brown v. Jones*, 255 F.3d 1272, 1278 (11th Cir. 2001) (citation omitted).  Therefore, "when a petitioner challenges a death sentence, 'the question is whether there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.'"  *Stewart*, 476 F.3d at 1209 (quoting *Strickland*, 466 U.S. at 695).

### 3.    *Deference to the State Court's Findings*

Lest one forget, section 2254's application applies in addition to the underlying substantive law.  "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult.  The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly so.'"  *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011) (citations omitted).  As a result, this "doubly," "highly deferential" standard transforms the *Strickland* inquiry from "whether counsel's actions were reasonable" into "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*

26

(citations omitted).  In other words, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland*'s standard."  *Id.* at 785.

Finally, "[i]neffectiveness of counsel is a mixed question of fact and law."  *Thompson v. Haley*, 255 F.3d 1292, 1297 (11th Cir. 2001) (citation omitted).  "State court findings of historical facts made in the course of evaluating an ineffectiveness claim are subject to a presumption of correctness under 28 U.S.C. § 2254(d)."  *Thompson*, 255 F.3d at 1297.

### B.    Specific Claims of Trial Counsel's Ineffectiveness

West raises a number of alleged deficiencies in his trial counsel's performance, which the Court divides into four general categories: (1) failure to object to the use of a stun belt during trial; (2) failure to investigate and present mitigation evidence during the penalty phase and sentencing hearing; (3) failure to present to the jury the statutory mitigating circumstance of West not having a significant history of prior criminal activity; and (4) failure to request a continuance so that the defense could procure and use an "obliterated documents" expert.  *See* Petition (Doc. 1) at 28-42. On the other hand, Respondents argue that West's sub-claims are procedurally defaulted because the Alabama Court of Criminal Appeals dismissed each claim under an independent and adequate state procedural rule, *see* Answer (Doc. 10) at 8-20, and also contend that sub-claims two (2) through four (4) above are conclusory in nature and fail to state a valid claim for relief under 28 U.S.C. § 2254. *Id.* at 11-20.  Regardless, Respondents declare that West cannot show he is entitled to 28 U.S.C. § 2254(d) or (e)(2) relief.  *Id.* at 8-20; Respondents' Brief on the Merits (Doc. 11) at 20-41.

27

### 1.     *Failure to Object to the Use of a Stun Belt During Trial.*

West alleges that his trial counsel, John David Floyd and Rodney L. Ward,[24] were "ineffective for failing to object to the requirement that West wear a stun belt throughout his trial." Petition (Doc. 1) at 28. West claims this negatively impacted his trial in two respects. First, West contends that the stun belt "impact[ed his] presumption of innocence before the jury" because it "was left to make the highly prejudicial supposition that West was a dangerous man, an added presumption as to his guilt." *Id.* at 29. Second, West contends that he was unable "to participate in his own defense" because the stun belt impeded his ability "to confer with counsel" and rendered him "unable to follow the proceedings." *Id.* at 31-32.

Respondents counter by first arguing that "[t]his claim is procedurally defaulted . . . because it was dismissed under an independent and adequate state procedural rule." Answer (Doc. 10) at 8. Specifically, Respondents argue that the Rule 32 circuit court, which was later affirmed by the Alabama Court of Criminal Appeals, "held that this claim was due to be dismissed, under Rule 32.7(d) of the Alabama Rules of Criminal Procedure, because it failed to comply with the specificity and full factual pleading requirements of Rule 32.3 and 32.6(b) of the Alabama Rules of Criminal Procedure." *Id.* (citing Rule 32 C.R. Vol. 21, Tab. 72, pp. 19-21; Rule 32 C.R. Vol. 21, Tab. 73, pp. 9-13). Alternatively, Respondents also argue that "this claim was raised in West's Rule 32 petition and on collateral appeal in the Alabama Court of Criminal Appeals and was denied on the merits," *id.* at 9 (citations omitted),  and thus:

> West has not alleged, and cannot show, that the denial of relief on this claim in state court "(1) resulted in a decision that was contrary to, or involved an unreasonable

---

[24] Hereinafter, West's trial counsel, John David Floyd and Rodney L. Ward, will be collectively referred to as "trial counsel" or "counsel," unless context suggests otherwise.

application of, clearly established federal law, as determined by the Supreme Court
of the United States; or (2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the state court
proceeding."

*Id.* at 9-10 (quoting 28 U.S.C. § 2254(d)).

The Alabama Court of Appeals' opinion is set out below.  The reader is advised that any

additional factual findings—either made by a state court or other pertinent historical facts from the

record—will be set out in footnotes.  On collateral review, the Alabama Court of Criminal Appeals

made the following findings of fact and conclusions of law:

> West first argues that his counsel were ineffective for not objecting to the
> requirement that he wear a stun belt during his trial.  He claims that, because counsel
> did not object, "the jury was left to make the highly prejudicial supposition that West
> was a dangerous man, an added presumption as to his guilt."  (West's brief at p. 15.)
> West further argues that the use of the stun belt interfered with his right to participate
> in his own defense and to confer with counsel because, he says, when a stun belt is
> used on a defendant at trial, despite the defendant's physical presence in the
> courtroom, his fear of discharge [if the belt were activated] may eviscerate his ability
> to take an active role in his own defense."  (West's brief at p. 18.)  The circuit court
> denied this claim on the ground that West had failed to met his burden of proof.  The
> court first noted that West had failed to prove that the jury saw the stun belt.  The
> court also noted that defense counsel had testified that he preferred that his clients
> wear a stun belt instead of other types of restraints because the belt was not visible
> to the jury.  The circuit court also determined that West had failed to present any
> evidence to establish that because he was forced to wear the stun belt, he was unable
> to participate meaningfully in his own defense.[FN]2  We agree with the circuit court.
>
>> [FN]2 The circuit court, in an alternative ruling, also found that the
>> claim was due to be dismissed because it was insufficiently pleaded.
>> (C. 114).
>
> West did not present testimony from any member of the jury; thus no one
> testified that anyone on the jury either saw the stun belt or assumed that the use of the
> stun belt necessarily meant that West was a dangerous man and was more likely to

be guilty than if he had not been wearing a stun belt. Deputy Jim Findley[25] testified that during a majority of the days of West's trial, he placed the stun belt on West's body. Deputy Findley placed the stun belt under West's clothing before West entered the courtroom, and the belt was not visible to anyone. Deputy Findley testified that West did not express any concerns about having to wear the belt; in fact, Deputy Findley testified that West joked with him about having to wear the belt. As the circuit court noted in its final order, one of West's trial attorneys, John Floyd,[26] testified that he prefers that deputies use a stun belt on his clients instead of leg irons or handcuffs because the stun belt is not visible to the jury. Floyd described the configuration of the courtroom where West's case was tried, and explained that the defense table faced the jury so the jury did not see West's back, where the box containing the electrodes attached to the belt was located. Floyd further testified that West took the stand at trial so he would have walked by the jury box, but that he could not state that any juror observed the stun belt. The only time Floyd saw the belt was when West lifted his shirt to show it to Floyd. Finally, Floyd testified that he did not remember West expressing to him any concerns about wearing the belt.

West was required to prove that counsel's failure to object to the use of the stun belt constituted deficient performance, and that he suffered prejudice as a result of that deficient performance. The circuit court found that West had failed to prove that counsel's performance was deficient because Floyd made a tactical decision not to object to the use of the stun belt because, unlike leg irons or handcuffs, the stun belt was not visible to the jury. That decision was a reasonable tactical decision, and such decisions are virtually unchallengeable when they are made after a thorough investigation of the facts and the law. See Strickland v. Washington, 466 U.S. 668, 690 (1984). As noted by the United States Supreme Court:

> "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the <u>wide latitude counsel must have in making tactical decisions</u>."

Strickland, 466 U.S. at 689 (emphasis added). Thus, counsel's decision not to object to the use of the stun belt did not constitute deficient performance.

---

25 Deputy Jim Findley is a Deputy Sheriff at the Etowah County Sheriff's Department where West was housed both before and during his capital trial. (*See* Rule 32 R. Vol. 17, Tab. 49, pp. 5, 20). For the transcript of Deputy Findley's testimony at the Rule 32 evidentiary hearing, see *id.* at 20-31.

26 For the transcript of John Floyd's testimony at the Rule 32 evidentiary hearing, see Rule 32 R. Vols. 17-18, Tab. 49, pp. 31-104.

In addition, West did not prove that he suffered any prejudice as a result of counsel's decision in this regard. Most notably, West did not present testimony that any juror saw the stun belt. Because West failed to prove that any juror saw the stun belt, he necessarily failed to prove that the stun belt caused any juror to determine that he was dangerous or guilty.

Because West failed to prove either prong of the Strickland test, the circuit court correctly denied this portion of this allegation of ineffective assistance of counsel.

West also argues that the circuit court erred when it denied him relief on his claim that the stun belt interfered with his ability to confer with counsel and to participate in his own defense at trial. The circuit court determined that West had failed to prove that the use of the stun belt had a negative psychological impact on him or that it prevented him from participating in his defense. We agree.

First, as noted above, trial counsel's decision not to object to the use of the stun belt was a reasonable, strategic decision, and did not constitute deficient performance. This portion of West's claim fails for that reason alone. Moreover, as the circuit court noted, West failed to prove prejudice. West did not testify at the hearing, so there was no evidence that the use of the belt caused any prejudice or interfered with West's ability to participate in his own defense. To the contrary, Deputy Findley testified that West joked about the stun belt and did not voice any concerns about it. Floyd testified that he did not recall West voicing any concerns about the belt or indicating that he was distracted by it. Floyd also testified that West communicated effectively with him by writing notes during the trial and that communication with West was never a problem. Finally, we note that Floyd also testified that West directed defense counsel to refrain from presenting mitigating evidence or making any argument on his behalf at the penalty phase, thus clearly indicating that the use of the stun belt did not so distract West from the trial that he could not participate in his defense. Therefore, West failed to prove deficient performance or prejudice as to this portion of his allegation of ineffective assistance of counsel.[FN]3

[FN]3 We note that West relies on United States v. Durham, 287 F.3d 1297 (11th Cir. 2002), in support of his claim. In Durham, the United States Court of Appeals for the Eleventh Circuit vacated Durham's conviction and remanded the case after finding that the district court had failed to make sufficient findings to justify the use of a stun belt. However, this Court distinguished Durham in a case on direct appeal in which the defendant did not object to the use of the stun belt, and held that no plain error occurred when a stun belt was used for security purposes. See Belisle v. State, [Ms. CR-02-2124, March 2,

31

2007] ___ So.2d ___, ___ (Ala. Crim. App. 2007).[27] See also
Snyder v. State, 893 So.2d 488, 512-14 (Ala. Crim. App. 2003) (trial
court did not err when it forced Snyder, over his objection, to wear a
stun belt during trial).

> For the foregoing reasons, the circuit court properly denied West's claim that
his trial counsel were ineffective for not objecting to the use of the stun belt at trial.

(Rule 32 C.R. Vol. 21, Tab. 73, pp. 9-13). And to the extent Respondents now rely upon the Rule

32 circuit court's findings of fact or incorporates that court's legal analysis as its own, Respondents

quote the following passages from the Rule 32 circuit court's final order:

> In paragraphs 45 through 55 of his petition, West contends that trial counsel
> was ineffective for failing to object to West wearing the stun belt at his capital
> murder trial. In doing so, West makes two distinct claims in regard to the use of
> the stun belt at his capital murder trial. First, West alleges that the stun belt was visible
> to the jury. As a result of the belt being visible to the jury, West contends that the
> jury viewed him as highly dangerous and the stun belt "added presumption as to his
> guilt[.]" (Pet. ¶ 48)[28] Second, West alleges that the mere presence of the stun belt
> prevented him from participating in his own trial. The Court finds that West failed
> to meet his burden of proving trial counsel's performance was deficient or caused
> him to be prejudiced as required by Strickland. Rule 32.3, ARCrP. Therefore, these
> claims are hereby denied.

> First, West failed to demonstrate that trial counsel's failure to object to the
> use of the stun belt constituted deficient performance. At the evidentiary hearing,
> Attorney Floyd testified that he preferred the use of the stun belt over other restraint
> devices, such as leg shackles, because the stun belt was not visible to the jury and
> was less restrictive to his client. (EH. 35, 72-73)[29] Clearly, trial counsel's decision
> not to object was not, "outside the range of professionally competent assistance."
> Chandler, 218 F.3d at 1314. Rather, counsel made a sound tactical decision not to
> object based on their belief that the stun belt would not be visible to the jury and

---

[27] *Belisle v. State* was later reported at 11 So.3d 256 (Ala. Crim. App. 2007). Further, the Alabama Court of Criminal Appeals' opinion above purportedly refers to pages 281-82 of its opinion in *Belisle*. (*See* Rule 32 C.R. Vol. 21, Tab. 73, p. 13 n.3).

[28] The Rule 32 circuit court's references to "(Pet. ¶ . . .)," (*see* Rule 32 Vol. 21, Tab. 72, p. 19), or simply "(¶ . . .)," *see id.* at 29, are references to West's Rule 32 petition.

[29] The Rule 32 circuit court's citations to "EH." are references to the transcript from the Rule 32 evidentiary hearing. (*See* Rule 32 R. Vols. 17-18, Tab. 49).

would be less restrictive than other means of restraints.

Moreover, West failed to demonstrate that he was prejudiced by trial counsel's failure to object to the use of the stun belt.  As Mr. Floyd stated at the hearing, the stun belt was not visible to the jury.  (EH. 41)  Deputy Findley also testified that the stun belt was applied to West at the jail, prior to West being escorted to the courtroom.  (EH. 22)  Deputy Findley further stated that the stun belt was placed under West's clothing and was not visible to anyone. (EH. 28) As such, West failed to present any evidence that the jury actually observed the stun belt.

Likewise, West failed to present any evidence that use of the stun belt had such a psychological impact on him or that he was prevented from participating in his own trial.  Deputy Findley testified at the hearing that West "joked" about the stun belt with he and other deputies.  (EH. 29) Attorney Floyd testified that the stun belt did not affect West's ability to communicate with either him or Mr. Ward during the trial.  (EH. 71-74)  As such West failed to prove he was prejudiced by counsel's failures.  See Ala. R. Crim. P. 32.3.  Therefore, this claim is denied.[FN]3

[FN]3 Alternatively, this claim is dismissed as insufficiently pleaded. In his Rule 32 petition, West failed to allege facts sufficient to show he was prejudiced by trial counsel's alleged failure to object to his wearing a stun belt during trial.  West failed to specify how he was prevented from participating in his trial by the stun belt or identify any instances where he was unable to follow the proceedings or assist in his own defense.  See, Bracknell v. State, 2003 WL 0949823, *3 (Ala. Crim. App. 2003) (holding that "Although Bracknell specifically identified the acts or omissions on the part of his trial counsel that he believed constituted deficient performance, he failed to include in his petition any facts tending to indicate how those omissions prejudiced his defense.").  As such, West's claim fails to comply with the specificity and full factual pleading requirements of Rule 32.6(b) and 32.3, Ala. R. Crim. P.; therefore, it is summarily dismissed by the Court.

Respondents' Br. (Doc. 11) at 21-22 (quoting Rule 32 C.R. Vol. 21, Tab. 72, pp. 19-21).[30]

---

[30] In its Brief on the Merits, Respondents only quote the second, third, and part of the fourth paragraphs provided above from the Rule 32 circuit court's order.  *See* Respondents' Br. (Doc. 11) at 21-22 (quoting Rule 32 C.R. Vol. 21, Tab. 72, pp. 19-21).  The Court, however, thought it best to provide an unabridged reproduction of Rule 32 circuit court's ruling on this issue and therefore included the first paragraph, the omitted portion of the fourth paragraph, and the corresponding footnote.

a.     The Question of Procedural Default.

First, as to Respondents' contention that "[t]his claim is procedurally defaulted from this Court's review because it was dismissed under an independent and adequate state procedural rule" by the Rule 32 circuit court, Respondents' argument is fundamentally flawed.  Answer (Doc. 10) at 8.  Federal review of a habeas petitioner's claim is only "barred by the procedural default doctrine *if the last state court to review the claim* states clearly and expressly that its judgment rests on a procedural bar."  *Johnson v. Singletary*, 938 F.2d 1166, 1173 (11th Cir. 1991) (emphasis added) (citing *Harris v. Reed*, 489 U.S. 255, 263 (1989)).[31]

In the present case, the Alabama Court of Criminal Appeals—the last state court to review West's claim—did not "clearly and expressly" state that its judgment rested on a procedural bar. (*See* Rule 32 C.R. Vol. 21, Tab. 73, pp. 9-13).  To begin, that court began its analysis by agreeing with the Rule 32 circuit court's denial of "this claim on the ground that West had *failed to meet his burden of proof*."  *Id.* at 10 (emphasis added).  While the court's reference to the "burden of proof" by itself may be ambiguous, the court later clarified this statement by announcing that "West was required to prove that counsel's failure to object to the use of the stun belt constituted deficient performance, and that he suffered prejudice as a result of that deficient performance."  *Id.* at 11. Seen in this light, the court's ruling that "West had failed to meet his burden of proof" is clearly a reference to West's burden under *Strickland v. Washington*, 466 U.S. 668 (1984), as opposed to any

---

[31] This inquiry is not to be confused with a federal habeas court's review of whether a state court's application of *Strickland* was contrary to or an unreasonable application of clearly established law.  *See Kokal*, 623 F.3d at 1345 ("We review the highest state court decision reaching the merits of the petitioner's claim." (citations omitted)); *Shere v. Fla. Dep't of Corr.*, 537 F.3d 1304, 1310 (11th Cir. 2008) ("[O]ur review is limited to examining whether the highest state court's resolution of a petitioner's claim is contrary to, or an unreasonable application of, clearly established law, as set forth by the United States Supreme Court."); *Newland v. Hall*, 527 F.3d 1162, 1199 (11th Cir. 2008) ("[T]he highest state court decision reaching the merits of a habeas petitioner's claim is the relevant state court decision.").

independent and adequate state procedural rule.  *See id.* at 10-11.  As a result, the Alabama Court of Criminal Appeals did not "state[] clearly and expressly that its judgment rests on a procedural bar."  *Johnson*, 938 F.2d at 1173 (citation omitted).  To the contrary, the court clearly and expressly reached the merits of West's claim, spending roughly three single-spaced pages addressing the issue. (*See* Rule 32 C.R. Vol. 21, Tab. 73, pp. 9-13).

Moreover, Respondents' reliance on the Rule 32 circuit court's holding is misplaced as it was not the "the last state court to review [West's] claim."  *Johnson*, 938 F.2d at 1173 (citation omitted). Even though that court, in a footnote, dismissed West's claim as insufficiently plead under Rules 32.6(b) and 32.3 , (*see* Rule 32 C.R. Vol. 21, Tab. 72, p. 21 n.3), the Alabama Court of Criminal Appeals did not rely on this ground when it denied West's claim.  (*See* Rule 32 C.R. Vol. 21, Tab. 73, pp. 9-13).  And other than a reference to the Rule 32 circuit court's alternative ruling in a footnote itself, the Alabama Court of Criminal Appeals neither stated that West failed to satisfy the applicable pleading standards nor cited a state procedural rule in support.  *See id.* at 10 n.2. Therefore, Respondents are clearly mistaken in arguing that this claim is procedurally barred as resting on an independent and adequate state procedural rule.  Because the Alabama Court of Criminal Appeals considered and rejected this claim on the merits, federal habeas review pursuant to 28 U.S.C. § 2254(d) is proper.

b.    Merits.

To reiterate, West "must show that counsel's performance was deficient, and that the deficiency prejudiced his defense" in order to carry his burden under *Strickland* and thereby establish ineffective assistance of counsel.  *Wiggins v. Smith*, 539 U.S. at 521 (citation omitted).  But West's burden does not end there as section 2254 also mandates that "[a] federal court cannot grant a

35

petition for writ of habeas corpus on claims adjudicated on the merits in the state court unless the decision was (1) 'contrary to' or an 'unreasonable application of' 'clearly established' Supreme Court law." *Lawhorn v. Allen*, 519 F.3d 1272, 1288 (11th Cir. 2008) (citing *Williams v. Taylor*, 529 U.S. at 412). In other words, section 2254 forces West to "not only establish that the state court applied *Strickland* incorrectly, but also that the state court 'applied *Strickland* to the facts of his case in a objectively unreasonable manner.'" *Id.* at 1294 (quoting *Bell v. Cone*, 535 U.S. 685, 699 (2002)). That is, a federal habeas court must sustain a state collateral court's determination that a petitioner failed to establish an ineffective assistance claim "if there was a reasonable justification for the state court's decision." *Harrington*, 131 S.Ct. at 790.

### i. Deficient Performance

To overcome the "strong presumption" that counsel performed in a competent manner, West "bears the heavy—but not insurmountable—burden of persuading the court 'that no competent counsel would have taken the action that his counsel did take.'" *Haliburton v. Sec'y for Dep't of Corr.*, 342 F.3d 1233, 1243 (11th Cir. 2003) (quoting *Chandler*, 218 F.3d at 1314-15). In making this determination, this Court assesses the reasonableness of counsel's performance from the perspective of West's trial counsel, at the time of the alleged error, and in light of all the circumstances. *See, e.g.*, *Newland*, 527 F.3d at 1184; *Johnson v. Alabama*, 256 F.3d at 1176. At all times, however, this Court "must indulge a strong presumption that [West's trial] counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

In regards to this portion of West's ineffective assistance claim, he argues that his trial counsel violated his "constitutional rights to be present at his own trial, to confer with counsel, and to participate in his own defense" by not objecting to the use of a stun belt during his trial. Petition

(doc. 1) at 31 (citing *Durham*, 287 F.3d 1297).   As to whether his trial counsel's performance was deficient, West's primary authority for this contention is the Eleventh Circuit's decision in *United States v. Durham*, 287 F.3d 1297 (11th Cir. 2002).   *Id.* at 28-32.   In that case, the Eleventh Circuit held that a federal district court "abused its discretion in ordering [the defendant] to wear the belt" during his trial.   *Durham*, 287 F.3d at 1309.   For a variety of reasons, however, *Durham* is inapposite to the issue presented in West's case.

First, as West himself points out, *Durham* concerned an issue of first impression in the Eleventh Circuit.   Petition (Doc. 1) at 28; *see also Durham*, 287 F.3d at 1303.[32]   Therefore, Alabama courts lacked the Eleventh Circuit's guidance on this particular issue not only because *Durham* was decided over three years after West's trial, but also because the Eleventh Circuit, for the first time, applied prior precedent addressing other forms of restraints to the use of stun belts.   *See id.* at 1304-05 (discussing Eleventh Circuit and Supreme Court precedent concerning other forms of courtroom restraints, namely leg shackles).

Second, even if *Durham* had been decided before West's trial, it does not embody "clearly

---

[32] Judge Wilson framed the issue before the court as:

> We have never addressed whether the use of this particular restraint in a given set of circumstances violates any of a defendant's trial rights.  However, we have a substantial body of case law addressing how other sorts of security measures affect a defendant's trial rights.  This body of law offers pertinent guidance in our analysis of *this case of first impression*.
>
>         . . . .
>
> The principles outlined above were developed in response to different sorts of physical restraints (leg shackles, handcuffs, gags, etc.) than are at issue in the instant case.  We have never addressed whether the use of stun belts to restrain criminal defendants raises the same set of constitutional concerns as do other physical restraints.  Our first task is thus to assess whether stun belts impose the same sorts of burdens on a defendant's trial rights as do other restraints.  We can then determine whether the district court's imposition of this security measure is within the outer boundaries of its discretion.

*Durham*, 287 F.3d at 1303, 1304-05 (emphasis added).

established Federal law" for purposes of § 2254(d)(1).  *See Bowles*, 608 F.3d at 1316  ("[F]ederal

law is 'clearly established' only when it is 'embodied in a holding' of the Supreme Court.  Dicta in

Supreme Court opinions is not enough.  Nor can anything in a federal court of appeals decision, even

a holding directly on point, clearly establish federal law for § 2254(d)(1) purposes." (citations

omitted)).  Because the Eleventh Circuit's holding in *Durham* was not "'embodied in a holding' of

the Supreme Court," *see id.*, the Alabama collateral court's failure to extend any ruling reached by

the court in *Durham* could not result in a ruling that was "contrary to, or involved an unreasonable

application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1); *see also Williams v. Taylor*,

529 U.S. at 405, 407.

Third, and finally, *Durham* was decided on direct appeal and concerned a situation where

defense counsel filed a pre-trial "motion seeking to prohibit [the stun belt's] use," which the district

court denied after a hearing on the issue.  287 F.3d at 1301, 1303; *see also Martin v. Sec'y, DOC*,

347 Fed. Appx. 485, 494 (11th Cir. 2009) (per curiam) (holding that a section 2254 petitioner's

reliance on *Durham* was "misplaced" because *Durham* "involved the direct appeal of a district

court's denial of a motion to prohibit the use of a stun belt," rather than "[t]he relevant inquiry in a

§ 2254 proceeding [which] is whether the state's decision violated clearly established Supreme Court

case law" (citations omitted)).  As such, the Eleventh Circuit was faced with an entirely different

inquiry; it addressed whether the district court abused its discretion by utilizing this form of security

measure when defense counsel had objected both before and during trial to its use.  *See Durham*, 287

F.3d at 1301-04.  It did not address whether the defense counsel's performance fell below the

standard established in *Strickland*, much less "whether the state court's application of the *Strickland*

standard was unreasonable," which is the relevant inquiry for a court conducting federal habeas

review.  *Harrington*, 131 S.Ct. at 785; *see also Martin*, 347 Fed. Appx. at 494.

Viewed this way, the Alabama Court of Criminal Appeals' ruling was neither "contrary to, [n]or involved an unreasonable application of, clearly established Federal law."  28 U.S.C. § 2254(d)(1).  It held that West's trial "counsel's decision not to object to the use of the stun belt did not constitute deficient performance" because it "was a reasonable tactical decision . . . made after a thorough investigation of the facts and the law."  (Rule 32 C.R. Vol. 21, Tab. 73, p. 11 (citing *Strickland*, 466 U.S. at 690)).  This holding was based on facts adduced during the Rule 32 evidentiary hearing where West's trial counsel testified that he preferred using a stun belt, as opposed to leg irons or handcuffs, because it was not visible to the jury.  *Id.* at 10-11.[33]  A "tactical decision" West's trial counsel made in light of the fact "that the defense table faced the jury so the jury did not see West's back, where the box containing the electrodes attached to the belt was located."  *Id.* at 11.  Further, his trial counsel testified that West never voiced any concerns about having to wear the stun belt.  *Id. But see Martin*, 347 Fed. Appx. at 494 (noting, in dicta, "that counsel *may have been deficient* for failing to object to the use of the stun belt" because the defendant informed his trial counsel "that the stun belt was uncomfortable and *asked him to do something about the belt*, but counsel failed to object or request a hearing on the issue" (emphasis added)).

In light of the foregoing, West's trial counsel made an "objectively reasonable choice[]" by deciding not to object to the use of a stun belt during trial.  *Bobby*, 130 S.Ct. at 17 (citation omitted).  And because West's trial counsel is afforded  "the benefit of the doubt for 'heat of the battle' tactical

---

[33] For the source of the Alabama collateral court's factual findings in this regard, see Rule 32 R. Vol. 18, Tab. 49, pp. 71-74.

decisions," *Johnson v. Alabama*, 256 F.3d at 1176, this Court cannot say that the Alabama Court of Criminal Appeals' ruling that West failed to establish deficient performance resulted in a holding that "contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). In other words, West has failed to "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement," and thus his claim is due to be denied. *Harrington*, 131 S.Ct. at 786-87.

### ii. Prejudice

Even assuming his trial counsel performed deficiently, West is still unable to "show that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. After reviewing the record as well as the arguments made before this Court, it is clear that West has not proven "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Simply put, West has failed to carry his burden of proof as he has not shown that the outcome of the proceedings would have been different *but for* his counsel's failure to object to the stun belt's use at trial. *See Williams v. Allen*, 598 F.3d at 789 ("The petitioner bears the burden of proof on the performance prong as well as the prejudice prong of a *Strickland* claim, and both prongs must be proved to prevail." (citation omitted)).

In *Marquard v. Sec'y for Dep't of Corr.*, the Eleventh Circuit addressed the retroactivity of the Supreme Court's ruling in *Deck v. Missouri*, 544 U.S. 622, 632-33 (2005), which held "that routine shackling during the penalty phase of a capital trial, without a case-specific finding that security needs justify shackling, violates a defendant's due process rights unless the state shows beyond a reasonable doubt that the shackling did not contribute to the verdict." *Marquard*, 429 F.3d

1278, 1311 (11th Cir. 2005) (citing *Deck*, 544 U.S. at 632-33).   After determining that "*Deck*

announced [a] new constitutional rule of criminal procedure" that did "not apply retroactively to

Marquard's § 2254 petition," the Eleventh Circuit concluded:

> After *Deck*, Marquard still has the burden in his IAC-shackling claim to establish a reasonable probability that, but for his trial counsel's failure to object to shackling, the result of his sentencing would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984) (holding that to establish a Sixth Amendment violation a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").
>
> Thus, in this case, Marquard still must show a reasonable probability that, absent his being shackled, the sentencer would have concluded that the balance of aggravating factors and mitigating factors did not warrant death and would have imposed a life sentence.   *See Strickland*, 466 U.S. at 695 ("When a defendant challenges a death sentence such as the one at issue in this case, the question is whether there is a reasonable probability that, absent errors, the sentencer—including an appellate court, to the extent it independently reweighs the evidence—would have concluded that the balance of aggravating and mitigating circumstances did not warrant death."); *Chandler v. United States*, 218 F.3d 1305, 1312-13 (11th Cir. 2000) (en banc) (quotation marks and citations omitted); *Earhart v. Johnson*, 132 F.3d 1062, 1067 (5th Cir. 1998) (concluding that even if counsel's failure to obtain expert testimony would have mandated reversal on direct appeal, the defendant still must show that the expert's testimony would have altered the outcome of the trial in order to succeed on an ineffective-assistance claim for failure to call the expert).

*Id.* at 1313-14 (footnote and parallel citations omitted).

As in *Marquard*, to establish *Strickland* prejudice West "still must show a reasonable

probability that, absent [having to wear the stun belt], the sentencer would have concluded that the

balance of aggravating factors and mitigating factors did not warrant death and would have imposed

a life sentence." *Id.* at 1314 (citations omitted).   But West has failed to carry his burden as to either

aspect of this ineffective assistance sub-claim, that is: (1) the stun belt impacted his presumption of

innocence because it was visible to the jury; and (2) it impeded his ability to participate in his trial.

*See* Petition (Doc. 1) at 29, 31-32.

41

First, as both the Rule 32 circuit court and the Alabama Court of Criminal Appeals concluded, West has not presented evidence to establish that any juror observed him wearing the stun belt at any time during either the guilt or penalty phase of his trial.  (*See* Rule 32 C.R. Vol. 21, Tab. 72, p. 20; Rule 32 C.R. Vol. 21, Tab. 73, p. 10).  Moreover, West's trial counsel testified at the Rule 32 evidentiary hearing "that he could not state that any juror observed the stun belt" and that "[t]he only time [he] saw the stun belt was when West lifted his shirt to show it to [him]."  (Rule 32 C.R. Vol. 21, Tab. 73, p. 11).[34]  West, therefore, has failed to "show a reasonable probability that, absent [having to wear the stun belt], the sentencer would have concluded that the balance of aggravating factors and mitigating factors did not warrant death and would have imposed a life sentence," *Marquard*, 429 F.3d at 1314 (citations omitted), because he has failed to establish that any juror *actually* observed him wearing the stun belt.

Second, West has not shown that the stun belt caused such a psychological impact that it prevented him from participating in his own defense or conferring with his attorneys.  On the contrary, the evidence adduced at the Rule 32 evidentiary hearing actually established that the stun belt in no way affected West's ability to participate in his trial.  Deputy Findley,  the officer that usually applied the stun belt, testified that West "joked about the stun belt and did not voice any concerns about it."  (Rule 32 C.R. Vol. 21, Tab. 73, pp. 10, 12).[35]  Further, West's lack of concern

---

[34] These quotes actually appear in the Alabama Court of Criminal Appeals' summary of John Floyd's testimony, which, as factual findings made by a state collateral court, are accorded "a presumption of correctness under 28 U.S.C. § 2254(d)."  *Thompson*, 255 F.3d at 1297.  For this portion of the Rule 32 evidentiary transcript, see Rule 32 R. Vol. 18, Tab. 49, 71-74.

[35] In particular, Deputy Findley testified:

Q:  Did [West] ever joke around with you about the stun belt?

A:  Yes, sir.

42

was substantiated by his trial counsel's testimony "that he did not recall West voicing any concerns about the belt or indicating that he was distracted by it" and "that West communicated effectively with him by writing notes during the trial and that communication with West was never a problem." *Id.*; (*see also* Rule 32 R. Vol. 18, Tab. 49, pp. 73-74).  More importantly, however, West did not testify at the evidentiary hearing, leaving it up for speculation as to whether the stun belt's presence actually impeded his ability to participate in his trial.  (*See* Rule 32 C.R. Vol. 21, Tab. 73, p. 12).[36] Similarly, then, West has failed to "show a reasonable probability that, absent [having to wear the stun belt], the sentencer would have concluded that the balance of aggravating factors and mitigating factors did not warrant death and would have imposed a life sentence," *Marquard*, 429 F.3d at 1314 (citations omitted), because he has also failed to establish how the stun belt affected his ability to participate in his trial.

In conclusion, West was required to "affirmatively prove prejudice," yet he failed to prove

---

Q:  Can you kind of tell us what he joked around about, what he said?

A:  No, sir, I don't recall the specifics of anything, but there was some joking about it about riding the stun belt and --

Q:  So he never expressed any concern about having to wear it?

A:  No, sir.

(Rule 32 R. Vol. 17, Tab. 49, p. 29).

[36] Although in the context of *Strickland*'s performance prong, it is important to note that the Eleventh Circuit has repeatedly stated the following concerning "[a]n ambiguous or silent record":

"An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption [of effective representation].  Therefore, 'where the record is incomplete or unclear about [counsel]'s actions, we will presume that he did what he should have done, and that he exercised reasonable professional judgment.'"  *Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (en banc) (quoting *Williams v. Head*, 185 F.3d 1223, 1228 (11th Cir. 1999)).

*See, e.g., Grayson v. Thompson*, 257 F.3d 1194, 1218 (11th Cir. 2001).

either that the jury observed him wearing the stun belt or that it impacted his ability to participate in his own trial. *Gilreath*, 234 F.3d at 551; *see also Martin*, 347 Fed. Appx. at 494-95 (holding that a § 2254 petitioner failed to prove prejudice because "the evidence presented at the evidentiary hearing established . . . . [that he] communicated with counsel throughout trial and participated in his defense, and the stun belt was placed underneath [his] sweater and not visible to the jury"). Because West has not shown that his trial counsel's failure to object to the use of the stun belt "rendered the result of the trial fundamentally unfair or unreliable," he accordingly failed to establish *Strickland* prejudice. *Rhode*, 582, F.3d at 1280 (citation omitted). Therefore, West's claim is due to be denied as he has not shown that the Alabama Court of Criminal Appeals' ruling was either "contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1).

> **2.      *Failure to Investigate and Present Mitigation Evidence During the Penalty Phase and Sentencing Hearing.***

In this regard, West primarily contends that his trial counsel was "grossly ineffective" for "failing to bring a wealth of mitigating information to the attention of the sentencer," which in turn "resulted in the sentencer determining that West should die with no understanding of West as an individual." Petition (Doc. 1) at 33-34. He alleges that "defense counsel failed to conduct any investigation into [his] background for the purpose of discovering mitigating evidence" during either the "[m]ore than nineteen (19) months [that] passed between counsels' appointment and the commencement of West's trial" or "during the five (5) weeks that passed between the jury's recommendation of death and the trial judge's sentencing hearing." *Id.* at 34-35. Specifically, West argues that:

The testimony at the evidentiary hearing established that defense counsel failed to conduct any investigation into West's background for the purpose of discovering mitigating evidence.  Defense counsel conceded that it conducted no mitigation investigation prior to West's trial.  Counsel further conceded that their failure to conduct such an investigation was "woefully deficient."[37]

Defense counsel never subpoenaed or reviewed any medical, mental health, school or other records of the petitioner.  Further, trial counsel did not conduct an investigation into West's social history; never spoke with any of his neighbors or friends; and never inquired as to whether West had suffered physical, sexual or emotional abuse.  In fact, defense counsel conceded that the defense had no strategy for West's penalty phase or sentencing.  Further, defense counsel conceded that they did not prepare any witnesses to testify at the penalty phase.

. . . .

Trial counsel never obtained a medical, social, educational, employment or family history of West.  Worse yet, they totally failed to interview any member of West's immediate family for purposes of discovering mitigating evidence.  By failing to so investigate, trial counsel made it impossible for themselves to discover the wealth of mitigation evidence that they could have easily obtained.  Neither counsel made any effort to explore West's family or social history beyond his "'[g]eneral background history,'" which "[i]s a far cry from a reasonable investigation into mitigating evidence." *Jackson v. Herring*, 42 F.3d [1350,] 1367[ (11th Cir. 1995)].

*Id.* at 34-37 (alterations in original).  West also asserts that his "[t]rial counsel offered <u>no</u> evidence or witnesses during either the penalty phase or the sentencing hearing."  *Id.* at 34 (citing R. Vol. 11-12, pp. 1778-80, 1807, 1809)  Finally, West concludes by simply stating that "[t]he prejudice caused by counsel's ineffective assistance is evidenced by the jury's recommendation of the death sentence by a vote of ten to two" and "[h]ad counsel conducted an adequate investigation concerning mitigation and presented such evidence, it is very likely that the jury's recommendation would have been different."  *Id.* at 38.

---

[37] (*See* Rule 32 R. Vol. 17, Tab. 49, p. 52).  At the Rule 32 evidentiary hearing, West's trial counsel, John Floyd, stated: "There has been a lot of changes since then and, you know, a lot of case law that comes out of the Supreme Court that I read regularly tells me that what we [*i.e.*, West's trial counsel] were doing then is *woefully deficient*." *Id.* (emphasis added).

Respondents raise three arguments in response to West's claim.  First, Respondents assert that "this Court should summarily dismiss this claim because it is conclusory in nature and fails to state a valid claim for relief under 28 U.S.C. § 2254."  Answer (Doc. 10) at 13.  In particular, Respondents argue that "West contends that his trial counsel were ineffective for failing to investigate and present mitigation evidence, but he does not identify any of the records to which he is referring in this claim or explain why his counsel should have obtained those unidentified records."  Respondents' Br. (Doc. 11) at 25 (citing Petition (Doc. 1) at 33-38).  Second, Respondents argue that West's "claim is procedurally defaulted from this Court's review because it was dismissed under an independent and adequate state procedural rule" in that "the Alabama Court of Criminal Appeals held that this claim was due to be dismissed under Rule 32.7(d) of the Alabama Rules of Criminal Procedure, because it failed to comply with the specificity and full factual pleading requirements of Rule 32.3 and 32.6(b) . . . ."  Answer (Doc. 10) at 11 (citing Rule 32 C.R. Vol. 21, Tab. 73, pp. 13-15) (citations omitted).  Third, and finally, Respondents argue that "habeas relief cannot be granted because it was 'adjudicated on the merits'" by the Rule 32 circuit court.  *Id.* at 12 (quoting 28 U.S.C. § 2254(d)).[38]

On collateral review, the Alabama Court of Criminal Appeals made the following findings of fact and conclusions of law:

West next argues that his counsel were ineffective because, he says, they did not investigate and present mitigating evidence during the penalty phase of his trial. The circuit court denied this claim on the ground that West had failed to prove either prong of the <u>Strickland</u> test.  Although we do not necessarily disagree with the circuit

---

[38] While the Rule 32 circuit court ultimately held that "West has failed to prove that he was prejudiced by counsel's failure to introduce the alleged mitigating evidence," (Rule 32 C.R. Vol. 21, Tab. 72, p. 30), Respondents appear to only cite the portion of the Rule 32 circuit court's opinion wherein it dismissed this claim under Alabama's doctrine of invited error, which provides that "a defendant cannot by his voluntary conduct invite error and then seek to profit thereby."  *Id.* at 27-28 (quoting *Phillips v. State*, 527 So.2d 154, 156 (Ala. 1988)).

court's finding in this regard, we find it unnecessary to determine the propriety of that finding because, after thoroughly reviewing West's petition, we conclude that West failed to plead this claim with sufficient specificity to satisfy the requirements in Rule 32.3 and Rule 32.6(b). Although this was not the reason the circuit court gave for denying West's allegation of ineffective assistance of counsel in this regard, this Court can nevertheless affirm on this ground.

West alleged in his petition that his counsel was ineffective because, he said, counsel did not "bring a wealth of mitigating information to the attention of the sentencer . . . ." (Cl. 33.) He also alleged that counsel should have "brought whatever evidence from his background, family life, medical history, school records, and any other life experiences that might be mitigating to the attention of the sentencer in his trial." (Cl. 34.) West further alleged that "counsel should have obtained complete and accurate information about Mr. West's medical history, employment and training history, family and social history, and any religious or cultural influences." (Cl. 35.) Finally, West alleged that "[t]rial counsel never obtained a medical, social, educational, employment or family history of Mr. West. Worse yet, they totally failed to interview any member of Mr. West's immediate family for purposes of discovering mitigating evidence." (Cl. 37.) However, these allegations contain no <u>facts</u> whatsoever. West failed to allege specifically what records should have been obtained and what mitigating information any of those records contained; he failed to allege what witnesses should have been interviewed and what mitigating information the witnesses would have imparted; he failed to plead any specific facts regarding the medical, social, educational, employment or family history information that, he alleged, should have been investigated; and [he failed to] specifically plead any facts about what such an investigation would have revealed.[39] Additionally, West failed to plead any specific facts alleging prejudice. "[B]are allegations do not suffice: 'A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.'" <u>Nelson v. Hargett</u>, 989 F.2d 847, 850 (5th Cir. 1993), quoting <u>United States v. Green</u>, 882 F.2d 999, 1003 (5th Cir. 1989). Thus, these allegations failed to satisfy the pleading requirements in Rule 32.3 and Rule 32.6(b), and this portion of this claim of ineffective assistance of counsel was properly denied.

We note that in one portion of this claim, in paragraph 72 of the petition, West did provide facts to satisfy the pleading requirements; he alleged:

---

[39] In this portion of the Alabama Court of Criminal Appeals' opinion, the court stated "*and did he* specifically plead any facts about what such an investigation would have revealed." (Rule 32 C.R. Vol. 21, Tab. 73, p. 14 (emphasis added)). From the surrounding context, however, it is clear the court actually intended to state that West "[*failed to*] specifically plead any facts about what such an investigation would have revealed." *Id.* (emphasis added).

"Had trial counsel performed the necessary investigation, they could have elicited testimony from Mr. West's parents, stepfather and brother regarding the fact that Geoff West had, less than two years prior to this incident, been a member in regular attendance at Southside Baptist Church in Southside, Alabama, where he sang in the chorus that traveled to sing at churches as far away as Canada. A former girlfriend would have testified that within two (2) years before March 1997, she broke up with Mr. West because she found out he had drunk a beer, when, to her knowledge, he never before drank or used drugs of any kind. A teacher from his high school Economics class would have testified that he was so impressed by Mr. West's 'many outstanding qualities,' and that 'his strongest suite [sic] is honesty,' that he was inspired to write a letter to Mr. West's parents commending him as a person and as a student. This is significant, meaningful, mitigating evidence showing that [West] was a very young man whose prior actions did not warrant a death penalty. No such information was presented to the jury or the trial court.["]

"This information, coupled with the presentation by counsel of evidence of the mitigating factors of Mr. West's age (21) at the time of the crime for which he was charged, and the absence of any significant criminal history (noted only by the trial court on remand, and not by counsel at any time) could have made the difference in the very significant one (1) vote needed to save Mr. West's life."

(Cl. 34-35.)[40]

Although West did plead sufficient facts in this portion of the petition, he failed to present any evidence at the evidentiary hearing to prove these allegations. Because a Rule 32 petitioner bears the burden of both pleading and proof, and because West failed to offer any proof to support these sufficiently-pleaded allegations, denial of this portion of this claim of ineffective assistance of counsel was also proper.

(Rule 32 C.R. Vol. 21, Tab. 73, pp. 13-15 (alterations in original)). And to the extent Respondents

now rely upon the Rule 32 circuit court's findings of fact or incorporates that court's legal analysis

---

[40] (*See* Rule 32 C.R. Vol. 16, Tab. 40, ¶ 72).

as its own,[41] which the Alabama Court of Criminal Appeals "d[id] not necessarily disagree with,"

*id.* at 13, Respondents quote the following passages from the Rule 32 circuit court's final order:

> It is undisputed that trial counsel did not offer any mitigation evidence at either the penalty or sentencing phases of the trial.  However, "[a]n attorney's performance is not per se ineffective for failing to present mitigating evidence at the penalty phase of a capital trial."  Hunt v. State, --- So.2d ---, 2005 WL 2046326, at *20 (Ala. Crim. App. Aug. 26, 2005).  At the Rule 32 evidentiary hearing, West failed to meet his burden of proof demonstrating that counsel's failure to investigate or present mitigating evidence was either unreasonable or prejudicial.  As such this claim is denied.

> Mr. Floyd testified at the evidentiary hearing that he did little, if any, pre-trial investigation of mitigating evidence. (EH. 52-54) According to Mr. Floyd, while he met regularly with West and his family and gathered background information, it was mostly for the purpose of presenting a guilt phase defense. (EH. 84-85)  However, West did not call his other trial counsel, Rodney Ward[,] to testify at the evidentiary hearing even though Mr. Ward was present and available to testify.  As such, this Court does not know what actions Mr. Ward did or did not take in investigating possible mitigating evidence or in preparing for a possible penalty phase.  "An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of effective representation, and therefore, where the record is incomplete or unclear about counsel's actions, a court will presume that he did what he should have done and that he exercised reasonable professional judgment."  Hunt v. State, --- So.2d ---, 2005 WL 2046326, at *23 (Ala. Crim. App. Aug. 26, 2005) (citation omitted).

> Moreover, while trial counsel has a clear duty to make reasonable investigations into mitigating evidence, "a particular decision to investigate must be

---

[41] Both here and in other portions of its Answer and Brief on the Merits, Respondents make a claim similar to the following: "In the alternative, this claim is without merit.  In reviewing this claim, the Rule 32 circuit court found as follows . . . ."  *See, e.g.*, Respondents' Brief (Doc. 11) at 21.  Other than to reinforce that state court factual findings are afforded a presumption of correctness under § 2254(e)(1), it is unclear whether Respondents are citing the Rule 32 circuit court's holding to adopt that court's analysis as its own or whether it is claiming "[p]ursuant to 28 U.S.C. § 2254(d), habeas relief cannot be granted on this claim because it was 'adjudicated on the merits in state court proceedings'" by the Rule 32 circuit court.  Answer (Doc. 10) at 15.

  Irrespective of the manner in which Respondents invoke the Rule 32 circuit court's ruling, this Court need not resolve this issue.  As discussed in detail below, the Alabama Court of Criminal Appeals' dismissal of this portion of West's ineffective assistance claim is treated as a holding on the merits for purposes of federal habeas review.  *See infra* Part I(B)(2)(b).  And since the Rule 32 circuit court and the Alabama Court of Criminal Appeals both dismissed this claim on the merits, "[e]ach reason is due deference" under the AEDPA because these "courts, considered collectively, gave two consistent reasons for deciding against this claim."  *Hammond*, 586 F.3d at 1331 (11th Cir. 2009); *see also Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d at 752.

directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland at 466 U.S. at 690-91, 104 S.Ct. 2052. For example, "when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." Chandler, 281 F. 3d at 1319 (citation omitted). In the instant case, trial counsel's failure to investigate mitigating evidence is tempered by the fact that West ordered trial counsel not to present any mitigation evidence.

At the evidentiary hearing, Mr. Floyd admitted that West indicated that he either wanted to go home or be sentenced to death, rather than spend the next 60 or 70 years of his life in prison. (EH. 91-92) As Mr. Floyd testified, West repeatedly instructed counsel not to present any mitigating evidence on his behalf. (EH. 88-89) West's desire to be either acquitted or sentenced to death is further supported by evidence admitted at trial. In a series of letters written to his girlfriend and co-defendant, West repeatedly emphasized that he would rather be sentenced to death than spend his life in prison. In one letter, West stated that "[l]ife without parole would just be as bad, in fact, I would rather die in the chair than spend the rest of my life behind bars." (C. 313)[42] In another letter, West states "I would take the death penalty to if they would give it to me today." (C. 275)[43] At another point in the proceedings, West physically grabbed Mr. Floyd's arm and told him to sit down and not say anything on his behalf in mitigation. (EH. 92)

The [Alabama] Court of Criminal Appeals has held that "[w]hen a competent defendant knowingly and voluntarily chooses a lawful course of action or defense strategy, counsel is essentially bound by that decision. If the defendant is prejudiced in some respect by his own decision, he should not be heard to complain about those consequences by challenging the conduct of his counsel." Adkins v. State, --- So.2d ---, 2001 WL 111928 (Ala. Crim. App. 2001) West did not introduce any evidence at the hearing to indicate that he was not competent to determine whether he wished to have mitigating evidence presented on his behalf. In the instant case, counsel would have been wasting time and effort investigating mitigating evidence, evidence that their client had already instructed them not to present on his behalf.

Further, in addressing a claim similar to West's, the Court of Criminal Appeals held in Adkins v. State that "a defendant is estopped from raising a claim of ineffective assistance of counsel for counsel's failure to present mitigating evidence when the defendant waived the presentation of mitigating evidence. To punish Adkins's attorneys for following his wishes would conflict with the doctrine of

---

[42] (See C.R. Vol. 2, Tab. 1, p. 313).

[43] (See C.R. Vol. 2, Tab. 1, p. 275).

invited error."  2001 WL 111928 (Ala. Crim. App. 2001)  "Under the doctrine of invited error, a defendant cannot by his own voluntary conduct invite error and then seek to profit thereby."  Phillips v. State, 527 So.2d 154, 156 (Ala. 1988).  In short, West cannot instruct counsel to forgo the presentation of mitigating evidence and then, years later, allege attorney error for following his wishes.  As such, West has failed to demonstrate by a preponderance of competent evidence, that counsel's failure to investigate or present mitigation evidence was unreasonable.  See Chandler, 218 F.3d at 1313.

In any event, West has failed to prove prejudice from counsel's failure to introduce mitigating evidence.  Because both parts of the Strickland standard must be satisfied before a violation of the Sixth Amendment can be found, a court need not address the performance prong if the defendant cannot satisfy the prejudice prong and vice-versa.  Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000).  Rule 32.3 of the Alabama Rules of Criminal Procedure places the burden of proof in these proceedings squarely on West.  Rule 32.3 provides, in pertinent part, that "the petitioner shall have the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief."  As the Court of Criminal Appeals has stated "[p]rejudice cannot merely by alleged; it must be affirmatively proved."  Williams v. State, 783 So.2d 108, 119 (Ala.Crim.App.2000).  As such, at the evidentiary hearing, West was required to prove his claim that the mitigation evidence alleged in his Rule 32 petition existed and would have altered the balance of aggravating and mitigation circumstances.

At the evidentiary hearing, however, West did not offer a single mitigation witness or item of mitigating evidence.  West elicited from counsel the fact that he did not present medical records, school records, and work records. (EH. 54-62)  Yet, at the evidentiary hearing, West failed to introduce these same records that he faults counsel for failing to offer.  "When the petitioner for postconviction relief alleges that mitigating evidence should have been presented at the penalty phase such that trial counsel was ineffective for failing to present such evidence, he has the burden of proving that such mitigating evidence does in fact exist."  Hunt v. State, --- So.2d ----, 2005 WL 2046326, at *22 (Ala. Crim. App. Aug. 26, 2005).  In his Rule 32 petition, West also alleged that counsel should have elicited mitigating testimony from his parents, stepfather, and brother. (¶ 72)  West, however, failed to call any of these witnesses to testify on his behalf at the evidentiary hearing.  Finally, West also alleged that counsel should have called a former girlfriend and teacher to testify on his behalf, but again, he failed to call these witnesses at the evidentiary hearing. (¶ 72)  "When a petitioner for postconviction relief contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented at the evidentiary hearing."  Hunt v. State, --- So.2d ----, 2005 WL 2046326, at *22 (Ala. Crim. App. Aug. 26, 2005) (citation omitted).  As such, West failed to carry his burden of proof in these proceedings.  See Ala. R. Crim. P.

32.3.  West has not shown that any of the records he alleges should have been offered or witnesses he alleges should have been called by trial counsel would have provided any mitigating evidence.  As such, West has failed to prove that he was prejudiced by counsel's failure to introduce the alleged mitigating evidence.  Therefore, this claim is denied.  Ala. R. Crim. P. 32.7(d).

Respondents' Br. (Doc. 11) at 28-30 (quoting Rule 32 C.R. Vol. 21, Tab. 72, pp. 24-30).[44]

a. Procedural Rules Governing Habeas Corpus Cases Under § 2254.

At the outset, this claim does not, or at least *should* not, merit extensive habeas analysis because Respondents are correct to contend that "this Court should summarily dismiss this claim because it is conclusory in nature and fails to state a valid claim for relief under 28 U.S.C. § 2254." Respondents' Br. (Doc. 11) at 25.  In his present habeas petition, West does *not* identify any of the records he refers to in his claim *nor* what witnesses should have been interviewed.  *See* Petition (Doc. 1) at 33-38.  Further, West did *not* allege what mitigating information any of those records or witnesses would have imparted.  *Id.*  And finally, West did *not* plead any specific facts regarding what aspects of his background should have been investigated, *much less* what such an investigation would have revealed.  *Id.*  Therefore, these allegations are insufficient to satisfy the heightened pleading requirements governing federal habeas petitions.  *See*, *e.g.*, *Mayle*, 545 U.S. at 655 ("[T]he petition must 'specify all the grounds for relief available to the petitioner' and 'state the facts supporting each ground.'" (quoting Rule 2(c) of the Rules Governing Section 2254 Cases in the U.S. District Courts, 28 U.S.C. foll. § 2254)); *McFarland*, 512 U.S. at 856.

Habeas Rule 2(c) required West's present habeas petition to state the facts supporting each ground for relief, yet he has not provided facts describing how he was prejudiced—an essential

---

[44] In its Brief on the Merits, Respondents do not quote the last two paragraphs provided above from the Rule 32 circuit court's order.  *See* Respondents' Br. (Doc. 11) at 28-30 (quoting Rule 32 C.R. Vol. 21, Tab. 72, pp. 24-28). The Court, however, thought it best to provide an unabridged reproduction of Rule 32 circuit court's ruling on this issue.

element of his claim—by his trial counsel's purported deficiencies.  *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("The . . . presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." (citations omitted)).  Put differently, West failed to come forward with even one piece of mitigating evidence, years after his initial conviction, that his counsel should have presented.  The absence of a fully-developed argument necessarily leads this Court to conclude that this claim is conclusory and fails to allege a basis for habeas relief.  *See id.*  Even though this aspect of West's ineffective assistance claim is due to be dismissed, the Court will nevertheless address the other portions of his claim as instructed by the Eleventh Circuit.[45]

### b. The Question of Procedural Default.

Respondents further contend that "[t]his claim is procedurally defaulted from this Court's review because it was dismissed under an independent and adequate state procedural rule."  Answer (Doc. 10) at 11.  During West's Rule 32 proceedings, the Alabama Court of Criminal Appeals dismissed this claim as insufficiently pleaded under Rule 32.3 and Rule 32.6(b) of the Alabama Rules of Criminal Procedure.  (Rule 32 C.R. 21, Tab. 73, p. 13 ("West failed to plead this claim with sufficient specificity to satisfy the requirements in Rule 32.3 and Rule 32.6(b).")).[46]

---

[45] *Cf. Chambers v. Sec'y, Dep't of Corr.*, 397 Fed. Appx. 520, 520-21 (11th Cir. 2010) (per curiam) ("To the end that we may avoid having to consider this case more than once on appeal, we vacate the district court's judgment and remand the case with the instruction that the district court entertain the sixth ground . . . ." (citation omitted)); *Clisby v. Jones*, 960 F.2d 925, 935-36 (11th Cir. 1992) (en banc) ("Accordingly, we now exercise our supervisory power over the district courts, and instruct the district courts to resolve all claims for relief raised in a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1988), regardless whether habeas relief is granted or denied." (citation omitted)).

[46] While the Alabama Court of Criminal Appeals dismissed this claim as insufficiently pleaded, it also found that West plead sufficient facts in one part of this claim.  (*See* Rule 32 C.R. Vol. 21, Tab. 73, pp. 14-15 (quoting Rule 32 C.R. Vol. 16, Tab. 40, ¶ 72)).  That portion of West's Rule 32 petition stated:

> Had trial counsel performed the necessary investigation, they could have elicited testimony
> from Mr. West's parents, stepfather and brother regarding the fact that Geoff West had, less than two

Whether this portion of West's ineffective assistance claim is procedurally defaulted hinges upon whether the Alabama Court of Criminal Appeals' denial of this claim under Rules 32.3 and 32.6(b) "constitutes an independent and adequate state rule of decision." *Powell*, 602 F.3d at 1269. The Eleventh Circuit has crafted a three-part test for making this determination:

> We established a three part test to enable us to determine when a state court's procedural ruling constitutes an independent and adequate state rule of decision. *First*, the last state court rendering a judgment in the case must clearly and expressly state that it is relying on state procedural rules to resolve the federal claim without reaching the merits of that claim. *Secondly*, the state court's decision must rest solidly on state law grounds, and may not be "intertwined with an interpretation of federal law." *Finally*, the state procedural rule must be adequate; *i.e.*, it must not be applied in an arbitrary or unprecedented fashion. The state court's procedural rule cannot be "manifestly unfair" in its treatment of the petitioner's federal constitutional claim to be considered adequate for the purposes of the procedural default doctrine.

*Judd*, 250 F.3d at 1313 (emphasis added) (internal citations omitted).

---

years prior to this incident, been a member in regular attendance at Southside Baptist Church in Southside, Alabama, where he sang in the chorus that traveled to sing at churches as far away as Canada. A former girlfriend would have testified that within two (2) years before March 1997, she broke up with Mr. West because she found out he had drunk a beer, when, to her knowledge, he never before drank or used drugs of any kind. A teacher from his high school Economics class would have testified that he was so impressed by Mr. West's "many outstanding qualities," and that 'his strongest suite [sic] is honesty,' that he was inspired to write a letter to Mr. West's parents commending him as a person and as a student. This is significant, meaningful, mitigating evidence showing that [West] was a very young man whose prior actions did not warrant a death penalty. No such information was presented to the jury or the trial court.

This information, coupled with the presentation by counsel of evidence of the mitigating factors of Mr. West's age (21) at the time of the crime for which he was charged, and the absence of any significant criminal history (noted only by the trial court on remand, and not by counsel at any time) could have made the difference in the very significant one (1) vote needed to save Mr. West's life.

(Rule 32 C.R. Vol. 16, Tab. 40, ¶ 72). In regards to the preceding, the court ultimately found that West "failed to present any evidence at the evidentiary hearing to prove these allegations." (Rule 32 C.R. Vol. 21, Tab. 73, p. 15). As such, the court held that denial of this portion of West's claim was proper "[b]ecause a Rule 32 petitioner bears the burden of both pleading and proof, and because West failed to offer any proof to support these sufficiently-pleaded allegations." *Id.* West, however, does not include these "sufficiently-pleaded" allegations within his present habeas petition to this Court. *See* Petition (Doc. 1) at 33-38. Therefore, West is deemed to have abandoned these claims. *See Whisenhant v. Allen*, 556 F.3d 1198, 1202-03 (11th Cir. 2009) ("Because [the petitioner] does not raise these claims in his brief to us, these claims are abandoned." (citation omitted)).

It is clear that the preceding three-part test governs the resolution of this issue, which is evidenced by the Eleventh Circuit's steadfast recital of its commands.  *See, e.g.*, *Mason*, 605 F.3d at 1119-20 (quoting *Judd*, 250 F.3d at 1313).  On the other hand, the Eleventh Circuit has reached disparate outcomes when applying this framework to situations where Alabama collateral courts have ruled that a Rule 32 petitioner failed to satisfy the pleading requirements of Rule 32.3 and Rule 32.6(b).  *Compare Powell*, 602 F.3d at 1272-73 (treating the Rule 32 court's procedural ruling as a holding on the merits), *with Jenkins v. Bullard*, 210 Fed. Appx. 895, 899-901 (11th Cir. 2006) (per curiam) (holding that the Rule 32 court's procedural ruling triggered procedural default of the petitioner's same habeas claim).  Due to the lack of guidance on this issue, this Court will independently apply *Judd*'s three-part test to West's claim.

As to the first prong, the Alabama Court of Criminal Appeals "clearly and expressly state[d] that it [was] relying on state procedural rules to resolve the federal claim."  *Judd*, 250 F.3d at 1313.  After summarizing West's argument and finding "these allegations contain no <u>facts</u> whatsoever," it held that "these allegations failed to satisfy the pleading requirements in Rule 32.3 and Rule 32.6(b), and this portion of this claim of ineffective assistance of counsel was properly denied." (Rule 32 C.R. Vol. 21, Tab. 73, p. 14).  But a state court's explicit reliance on a procedural rule alone does not fully satisfy *Judd*'s first prong because the state court must also reach its procedural ruling "without reaching the merits of that claim."  250 F.3d at 1313.

Less than a year ago, the Eleventh Circuit addressed a habeas petitioner's ineffective assistance of counsel claim where "[t]he Rule 32 court . . . found that [the petitioner] failed to plead facts on which an ineffective assistance claim could be based and, for that reason, denied [his] claim . . . ."  *Powell*, 602 F.3d at 1272-73 (citation and footnote omitted).  In Powell the Eleventh Circuit

55

went on to characterize "the Rule 32 court's rejection of [the petitioner's] claim as a holding on the merits." *Id.* at 1273 (citations omitted).  Other than a passing reference to *Judd*, the only support cited by the court was a parenthetical quote to a Fifth Circuit case that found "no procedural bar from the state court ruling . . . because the ruling 'require[d] some evaluation, however cursory, of the merits of a petitioner's claim.'" *Id.* (quoting *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997)).

A few years earlier, however, the Eleventh Circuit reached the opposite conclusion in an unpublished opinion, albeit implicitly.[47]  *See Jenkins*, 210 Fed. Appx. at 899.  While addressing an ineffective assistance claim that was similarly dismissed by an Alabama Rule 32 court for "not meet[ing] the specificity requirements of Rules 32.3 and 32.6(b)," the Eleventh Circuit ruled that the claim was not procedurally defaulted and even cited the elements of an ineffective assistance claim under *Strickland v. Washington* within its analysis.  *Id.* at 899 (citing *Strickland*, 466 U.S. at 687, 689, 694).

However, there is no need to parse the differences between the Eleventh Circuit's disparate rulings in *Powell* and *Jenkins* because the Eleventh Circuit's own rules provide that "[u]npublished opinions are not considered binding precedent . . . ."  11th Cir. R. 36-2; *see also Gray v. Bostic*, 613 F.3d 1035, 1041 n.2 (11th Cir. 2010) ("Unpublished opinions are not precedential . . . ." (citation omitted)).  In other words, *Powell*'s published ruling trumps *Jenkins*'s unpublished ruling.

---

[47] In *Jenkins*, the Eleventh Circuit recited a substantially similar three-part test as the one found in *Judd*, even citing *Judd* within the test's formulation.  *See Jenkins*, 210 Fed. Appx. at 899.  For present purposes, the only difference between the two tests is that *Jenkins* omitted *Judd*'s requirement that the state collateral court must make its ruling "without reaching the merits of that claim."  *Compare id.* at 899, *with Judd*, 250 F.3d at 1313.  Nevertheless, the Eleventh Circuit *implicitly* ruled on this issue because it *explicitly* cited the elements of an ineffective assistance of counsel under *Strickland v. Washington* when finding that the petitioner's Rule 32 petition failed to "comply with the specificity requirements of Rules 32.3 and 32.6(b)."  *Jenkins*, 210 Fed. Appx. at 899 (citing *Strickland*, 466 U.S. at 687, 689, 684).

Returning to the case at hand, the Alabama Court of Criminals Appeals' procedural ruling that West did not comply with the specificity and full factual pleading requirements in Rules 32.3 and 32.6(b) will be treated as a holding on the merits since it "require[d] some evaluation, however cursory, of the merits of [West's] claim." *Powell*, 602 F.3d at 1273 (quoting *Stokes*, 123 F.3d at 860). And this finding is evidenced from the Court of Criminal Appeals' holding that "West failed to plead any specific facts alleging prejudice." (Rule 32 C.R. Vol. 21, Tab. 73, p. 14). Therefore, this aspect of West's ineffective assistance claim is not procedurally defaulted as the state collateral court's ruling does not satisfy the first prong of *Judd*'s three-part test, and this Court is accordingly not barred from reaching the merits of this claim.[48]

c. <u>Merits</u>.

In addition to discussing procedural default, *Powell* also states this Court's role in addressing the merits of West's claim. It states:

> [The] AEDPA limits our review to whether the state court's determination that [the petitioner] failed to plead sufficient facts in his Rule 32 petition to support a claim of ineffective assistance of counsel was contrary to or an unreasonable application of Supreme Court precedent. Thus, we look only to the allegations in [the petitioner's] Rule 32 petition and whether those allegations sufficiently state a claim for ineffective assistance of counsel.

*Powell*, 602 F.3d at 1273 (footnote omitted). To have raised an ineffective assistance claim before Alabama courts, West's Rule 32 petition[49] "was required to allege specific facts showing that his [trial] counsel's performance was deficient—that counsel's decisions were so unreasonable that they could not be considered as part of the [trial] strategy—and that the deficiency made a difference to

---

[48] This ruling does not disturb this Court's prior, alternative ruling that this ineffective assistance sub-claim is due to be dismissed for failing to comply with the pleading requirements governing *federal* habeas petitions. *See supra* Part I(B)(2).

[49] For West's Rule 32 petition, see Rule 32 C.R. Vol. 16, Tab. 40.

the outcome of the proceeding." *Jenkins*, 210 Fed. Appx. at 899 (citing *Strickland*, 466 U.S. at 687, 689, 694).

But the preceding does not describe the totality of West's burden. As Justice Kennedy explained earlier this year, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Harrington*, 131 S.Ct. at 785; *see also id.* ("For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" (emphasis in original) (citation omitted)). Due to the AEDPA's application in section 2254 proceedings, "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. . . . When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* at 788. Thus, a federal habeas court must sustain a state collateral court's determination that a petitioner failed to establish an ineffective assistance claim "if there was a reasonable justification for the state court's decision." *Id.* at 790. And before addressing the substance of West's ineffective assistance claim, it also bears repeating that the state court's factual findings are accorded a presumption of correctness. *See* 28 U.S.C. § 2254(e)(1) (2006); *Robinson v. Moore*, 300 F.3d 1320, 1342 (11th Cir. 2002).

In the present case, it is clear, for a number of reasons, that West's Rule 32 petition failed to establish *Strickland* prejudice. Because of West's inability to establish this prong of the *Strickland* inquiry, the Court need not address whether his trial counsel's performance was, in fact, deficient.[50]

---

[50] While the Court will not conduct an extensive analysis as to whether West's trial counsel was deficient for failing to investigate and present mitigating evidence, the Court would like to note a few general principles that would support a finding that West's counsel did not perform in a deficient manner. First, as to West's failure to investigate

*See Walker v. Martin*, No. 09-996, 2011 U.S. LEXIS 1712, at *22 (U.S. Feb. 23, 2011) ("[A] court need not determine whether counsel's performance was deficient . . . [i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . ." (quoting *Strickland*, 466 U.S. at 697)).

### i. Prejudice

As to whether West's Rule 32 petition sufficiently alleged ineffective assistance, the Alabama Court of Criminal Appeals held:

> [T]hese allegations contain no <u>facts</u> whatsoever. West failed to allege specifically what records should have been obtained and what mitigating information any of those records contained; he failed to allege what witnesses should have been interviewed and what mitigating information the witnesses would have imparted; he failed to plead any specific facts regarding the medical, social, educational, employment or family history information that, he alleged, should have been investigated; and [he failed to] specifically plead any facts about what such an investigation would have revealed. Additionally, West failed to plead any specific facts alleging prejudice. "[B]are allegations do not suffice: 'A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.'" <u>Nelson v. Hargett</u>, 989 F.2d 847, 850 (5th Cir. 1993), quoting <u>United States v. Green</u>, 882 F.2d 999, 1003 (5th Cir. 1989). Thus, these allegations failed to satisfy the pleading requirements in Rule 32.3 and Rule 32.6(b), and this portion of this

mitigating evidence claim, he "has not presented sufficient evidence to give an idea of what investigation actually took place." *Harvey v. Warden*, 629 F.3d 1228, 1259 (11th Cir. 2011). Further, West's attempt to analogize his case to that in *Williams v. Taylor*, 529 U.S. 362 (2000), *see* Petition (Doc. 1) at 35, is unavailing because it "involved an attorney who overlooked a readily available document that would have opened doors to undiscovered mitigation evidence," and "[n]o such document existed for [West]." *Harvey*, 629 F.3d at 1263 (citations omitted).

Second, in regards to counsel's alleged failure to present a mitigation defense at the penalty phase, "*there is no absolute duty to introduce mitigating evidence at all.*" *See Marquard*, 429 F.3d at 1305 (emphasis added) (citing *Chandler*, 218 F.3d at 1319). And this goes without saying that West failed to produce, nearly a decade after he was initially convicted, even one document or witness that his counsel should have presented in furtherance of a mitigation defense. *Cf. Harvey*, 629 F.3d at 1244 ("[The petitioner] argues that, because the record shows no evidence of consent, we must presume that he never consented. This argument turns the *Strickland* burden of proof on its head. It is the petitioner's burden to introduce evidence proving trial counsel's deficiency." (citation omitted)).

Seen in this light, the allegations in both West's Rule 32 petition and his present habeas petition do not overcome the "evidentiary presumption that [his] counsel acted properly." *Id.* at 1245; *see also Williams v. Head*, 185 F.3d 1223, 1227-28 (11th Cir. 1999) ("Following the Supreme Court's instructions, we will 'indulge a strong presumption that [counsel's] conduct falls within the wide range of reasonable professional assistance,' and that he 'made all significant decisions in the exercise of reasonable professional judgment.'" (quoting *Strickland*, 466 U.S. at 689-90)).

claim of ineffective assistance of counsel was properly denied.

(Rule 32 C.R. Vol. 21, Tab. 73, p. 14). Having reviewed the briefs as well as an independent review of the state court record, this Court concludes that the Alabama Court of Criminal Appeals' decision was neither "contrary to, [n]or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1).

Other than reciting a litany of potential sources that are strikingly similar to those found in the 1989 ABA Guidelines,[51] West's Rule 32 petition—as well as his present habeas petition—contains nothing more than an implicit allegation that his trial counsel was *per se* deficient for not investigating and presenting a mitigation defense, which is simply not true.[52] (*See* Rule 32 C.R. Vol. 16, Tab. 40, ¶¶ 67-82). Regardless of whether West's Rule 32 petition contained allegations sufficient to establish deficient performance, West "has not alleged what mitigating factors would have been established but for his counsel's deficient performance," *i.e.*, his failure to investigate and present mitigation evidence. *Powell*, 602 F.3d at 1274.

West's Rule 32 petition was required to "specifically, 'show that there is a reasonable probability that . . . the result of the [sentencing] proceeding would have been different,' *Strickland*, 466 U.S. at 694, 'if competent counsel had presented and explained the significance of all the available evidence.' *Williams*, 529 U.S. at 399." *Lawhorn v. Allen*, 519 F.3d 1272, 1296 (11th Cir. 2008) (alterations in original) (parallel citations omitted). But West's Rule 32 petition did not point to one piece of mitigation evidence that should have presented as part of his mitigation defense, (*see*

---

[51] *Compare* Rule 32 C.R. Vol. 16, Tab. 40, ¶¶ 74, 78-79, *with* ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases ("ABA Guidelines") 11.4.1(2)(C) (1989).

[52] *See Marquard*, 429 F.3d at 1305 ("Indeed, *there is no absolute duty to introduce mitigating evidence* at all." (emphasis added) (citing *Chandler*, 218 F.3d at 1319)).

Rule 32 C.R. Vol. 16, Tab. 40, ¶¶ 67-82); an omission West repeated in his present habeas petition, *see* Petition (Doc. 1) at 33-38.  If West could not cite any mitigation evidence years after his state court conviction, then, *a fortiori*, he could not establish prejudice from his counsel's failure to present it.[53]  In other words, West faults his trial counsel for failing to produce mitigation evidence at the penalty phase of his trial, yet he himself fails to produce any mitigation evidence that should have been presented.  *See Lawhorn*, 519 F.3d at 1296 ("The penalty phase focuses '*on the production of evidence* . . . .'" (emphasis added) (citation omitted)).  As such, West's Rule 32 petition failed to show prejudice, and his present claim, therefore, is due to be denied.[54]

Relatedly, the Alabama Court of Criminal Appeals found that West alleged sufficient facts in one portion of his Rule 32 petition to satisfy the pleading requirements of Rules 32.3 and 32.6(b), but it held that West "failed to present any evidence at the [Rule 32] evidentiary hearing to prove these allegations."  (*See* Rule 32 C.R. Vol. 21, Tab. 73, pp. 14-15 (quoting Rule 32 C.R. Vol. 16, Tab. 40, ¶ 72)).  These allegations pertained to: (1) West's "regular attendance at Southside Baptist Church"; (2) his former girlfriend's statement that she broke up within him two years before the murder "because she found out he had drunk a beer, when, to her knowledge, he never before drank or used drugs of any kind"; and (3) his former high school economics teacher's belief that West had "'many outstanding qualities,' and that 'his strongest suite [sic] is honesty.'"  (Rule 32 C.R. Vol. 16, Tab. 40, ¶ 72).

---

[53] *Cf. Puiatti v. McNeil*, 626 F.3d 1283, 1314 (11th Cir. 2010) (stating, in the context of a severance motion, that the petitioner "has not proffered a single piece of evidence he was unable to put before the jury or judge for consideration by virtue of the joint penalty phase").

[54] Regardless of West's failure to produce mitigating evidence and his corresponding inability to establish prejudice, he also "could not be granted federal habeas relief because the state courts' factual determination that [he] would not have allowed counsel to present any mitigating evidence at sentencing is not an unreasonable determination of the facts under § 2254(d)(2)."  *Schriro v. Landrigan*, 550 U.S. at 481.

But as the Court of Criminal Appeals concluded, West did not call any witness at the Rule 32 evidentiary hearing to substantiate these claims. (*See* Rule 32 C.R. Vol. 21, Tab. 73, pp. 14-15). Instead, he only called a prison correctional officer, a deputy from the Etowah County Sheriff's Office, and one of two attorneys that represented him at trial. (*See* Rule 32 R. Vols. 17-18, Tab. 49). By failing to support these well-plead allegations with admissible evidence, West failed to "affirmatively prove prejudice." *Gilreath*, 234 F.3d at 551 (citation omitted). Therefore, the Alabama Court of Criminal Appeals was correct to conclude that "West failed to offer any proof to support these sufficiently-pleaded allegations," (Rule 32 C.R. Vol. 21, Tab. 73, p. 15), and its ruling was not "contrary to or an unreasonable application of Supreme Court precedent." *Powell*, 602 F.3d at 1273. Moreover, and in spite of the foregoing, West neither includes these well-plead allegations within his present habeas petition nor faults the Court of Criminal Appeals for this aspect of its ruling. As such, West is deemed to have abandoned this aspect of his claim. *See Whisenhant*, 556 F.3d at 1202-03 ("Because [the petitioner] does not raise these claims in his brief to us, these claims are abandoned." (citation omitted)).

Alternatively, even if West sufficiently plead this claim in his Rule 32 petition, his claim still does not warrant habeas relief. First, West has failed to proffer any testimony or documents that, assuming it had been presented to the sentencer, "would have added [any]thing of value." *Bobby*, 130 S.Ct. at 19 (citation omitted). Unlike cases where petitioners sufficiently plead *Strickland* violations, this Court is unable to "reweigh the evidence in aggravation against the totality of available mitigating evidence" because West has failed to present *any* mitigating evidence—either during state or federal proceedings—which would have been presented at the sentencing phase but for his counsel's alleged deficient performance. *Kokal*, 623 F.3d at 1345-46 (quoting *Wiggins*, 539

U.S. at 534).[55]  By this fact alone, West is unable to establish prejudice and accordingly cannot carry

his burden under *Strickland*.  *See Holladay*, 209 F.3d at 1248 ("[T]he court need not address the

performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

Second, and more importantly, West's trial counsel did not present a mitigation defense

during the penalty phase because West instructed them not to do so.  During the Rule 32 evidentiary

hearing, West's trial counsel, John Floyd, testified:

> Q:    All right.  And with regard to that, isn't it true that the reason that you didn't
>       present any mitigating evidence was that Mr. West told you he did not want
>       to present any mitigation evidence?
>
> A:    He did indicate that to us at one point in time.  I'm not sure it was my best
>       judgment to listen to him, but he did indicate that.
>
> Q:    He actually did that on multiple occasions, did he not?
>
> A:    Yes, he did. . . .

(Rule 32 R. Vol.18, Tab. 49, pp. 88-89).  Floyd further testified:

> Q:    Okay.  Do you recall during the course of Mr. West talking to you about not
>       wanting to put on any mitigation evidence that he told you this or this in
>       substance: That he would rather spend -- he would rather have the death
>       penalty than spend 60 or 70 years in prison?
>
> A:    At 22 years of age, yes, he made that statement and I can understand his
>       reasoning behind it.  And I -- hindsight is 20/20 -- I think Rodney [Ward,
>       *i.e.*, West's other trial counsel,] and I let that cloud our judgment.  You know,

---

[55] For example, during the state, post-conviction evidentiary hearing at issue in *Cummings v. Sec'y, Dep't of Corr.*, the following witnesses testified in support of Cummings's mitigation evidence claim: "His new counsel called [the petitioner's] sister, Covington; his niece, Catherine Wooden; his son, Frederick; the mother of his children, Deborah Dawson; his middle school principal, Moses Pool; a childhood friend, Eddie Webster; and three expert witnesses, Dr. Lynn Schram, Dr. Merry Haber, and Dr. Bruce Frumkin." *Cummings*, 588 F.3d 1331, 1344 (11th Cir. 2009).  In the case at bar, however, West did not call any witnesses to provide mitigation evidence during his Rule 32 evidentiary hearing. (*See* Rule 32 R. Vols. 17-18, Tab. 49, pp. 5-104).  In fact, West only called three witnesses: (1) Scott Hassell, a correctional officer who only "provide[d] supervision while [West] was in the housing unit" both before and during West's trial, (*see* Rule 32 R. Vol. 17, Tab. 49, p. 5); (2) Deputy Jim Findley, a deputy sheriff who applied a stun belt to West during the course of his trial as well as provided courtroom security, *see id.* at 20; and (3) John Floyd, one of two attorneys to represent West during his capital trial, (*see* Rule 32 R. Vols. 17-18, Tab. 49, pp. 31-104).

we were the ones that were the attorneys.  We should have done something different and we should have put something on for him.

Q:      He actually made that comment to you?

A:      He made that comment.

Q:      -- Or words like that a couple of times?

A:      He made that comment to me several times and unfortunately I let that cloud our judgement as to what we should have done.

Q:      Now, during the course of trial, especially the penalty phase and the sentencing phase in front of the judge, there were points in time when you, as an attorney, could make an opening statement or closing argument, things of that nature; is that correct?

A:      Correct.

Q:      And at one point during that isn't it true that Mr. West actually grabbed your arm and told you "don't say anything on my behalf"?

A:      We discussed that when I talked to you and I think -- I may have talked to all three of you by conference phone the other day when you called.  I had remembered that being at the actual penalty phase.  From what you tell me from the record, what it indicated it was actually at the sentencing hearing.  But at one point in time when I was getting up to either make an argument on Geoff's behalf or something he did -- he grabbed hold of my arm and told me not to say anything for him.  Yes, he did.

Q:      And you did not do that; you didn't say anything?

A:      I didn't say anything.

*Id.* at 91-93.[56]

        Recently, in *Allen v. Sec'y, Fla. Dep't of Corr.*, the Eleventh Circuit faced a nearly identical

_____

        [56] Pursuant to 28 U.S.C. § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct."  Even though this discourse appears in the Rule 32 evidentiary hearing transcript, the facts adduced during Floyd's testimony are still accorded a presumption of correctness as both the Rule 32 circuit court and the Alabama Court of Criminal Appeals included these facts within their orders.  (*See* Rule 32 C.R. Vol. 21, Tab. 72, pp. 25-28; Rule 32 C.R. Vol. 21, Tab. 73, p. 17).

situation and held:

> The United States Supreme Court has told us in no uncertain terms that if a competent defendant did instruct his counsel not to offer any mitigating evidence, "counsel's failure to investigate further *could not have been prejudicial under Strickland*." *Schriro*, 550 U.S. at 475, 127 S.Ct. at 1941 (emphasis added) . . . .

> As we recently explained, the *Schriro* rule "follows naturally from *Strickland*'s formulation of the prejudice prong, for there cannot be a reasonable probability of a different result if the defendant would have refused to permit the introduction of mitigation evidence in any event." *Cummings v. Sec'y, Dep't of Corr.*, 588 F.3d 1331, 1360 (11th Cir. 2009) (citing *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068). Allen therefore must show "that—but for his counsel's supposedly unreasonable conduct—helpful [mitigation] evidence actually would have been heard by the jury" or the sentencing court. *Gilreath v. Head*, 234 F.3d 547, 552 n.12 (11th Cir. 2000). If Allen "would have precluded its admission in any event, [he] was not prejudiced by anything that trial counsel did." *Id.*; *see also id.* at 551-52.

> . . . .

> . . . . Because Allen has not shown that counsel could have done anything regarding mitigating circumstance evidence that would have led to the presentation of it, he has failed to establish the prejudice element of this ineffective assistance of counsel claim.

*Allen*, 611 F.3d at 762-63, 765 (emphasis in original) (footnote omitted).

As in *Allen*, West affirmatively and repeatedly instructed his trial counsel to not present a mitigation defense. (Rule 32 C.R. Vol.18, Tab. 49, pp. 88-89, 91-93); *see Allen*, 611 F.3d at 760-61, 765.[57] Further, at one point during the trial proceedings, West even grabbed his counsel's arm and reiterated this command by instructing "don't say anything on my behalf." (Rule 32 C.R. Vol.18, Tab. 49, pp. 91-93).[58] And finally, West repeatedly stated that he preferred death over the possibility

---

[57] *See also Cummings*, 588 F.3d at 1366 ("[The petitioner] has not shown that he would have consented to presenting the mitigating evidence adduced at the [state post-conviction] evidentiary hearing even if [his trial counsel] had investigated, discovered it, and counseled him to present it.").

[58] *Cf. Cummings*, 588 F.3d at 1366 (noting that the defendant "interrupted with an objection when one of his sisters (after the guilty verdict) tried to address the state trial court").

of life without parole.  (Rule 32 C.R. Vol.18, Tab. 49, pp. 91-93); *see Allen*, 611 F.3d at 765.[59]

Similarly, then, "[b]ecause [West] has not shown that counsel could have done anything regarding mitigating circumstance evidence that would have led to the presentation of it, he has failed to establish the prejudice element of this ineffective assistance of counsel claim."  *Allen*, 611 F.3d at 765.  At bottom, Judge Carnes's concluding observation carries just as much force here as in *Allen*:

> [West], a mentally competent, intelligent defendant, having been convicted of a brutal murder, faced life imprisonment or death.  Insisting on doing things his way, he chose death and prevented his counsel from attempting to secure a life sentence through the development and presentation of mitigating circumstances evidence.  That is not a choice that most people would have made, but it is one that he had the right to make, and he made it voluntarily and with full awareness of the consequences.  What [West] does not have is the right to escape the consequences of his own decision not to present any mitigating circumstances evidence by shifting the blame for it to someone else.

*Id.* (internal citation omitted).  Therefore, West's claim is due to denied.

---

[59] *See also Cummings*, 588 F.3d at 1366 (The defendant's statements "make clear that he preferred a sentence of death to one of life imprisonment.").

### 3.   Failure to Present to the Jury the Statutory Mitigating Circumstance of West Not Having a Significant History of Prior Criminal Activity.

During the sentencing phase of West's trial, his counsel argued to the jury the statutory mitigating factor of "West's age at the time of the offense."  Petition (Doc. 1) at 38.[60]  Despite this, West claims that his trial counsel was ineffective for not "argu[ing] to the jury that West did not have a significant history of prior criminal activity."  *See id.* at 38-39.[61]   In support, West quotes the following statement from his trial counsel's opening statement at the sentencing phase:

> We expect to offer one statutory mitigating circumstance and that would be the age of the defendant at the time of the offense.  His birthday is 7-29-[75], 21 years old at the time the offense was committed.  <u>Now, other than that, there are no statutory mitigating circumstances other than that one that we intend on offering</u>.  The others don't apply in this particular case and we will not offer any testimony on those issues.

*Id.* (emphasis in original) (quoting R. Vol. 11, p. 1778).[62]  West claims that this "rendered the penalty phase of [his] trial unreliable" because the trial court—on remand to correct deficiencies within the original sentencing order—determined that an additional statutory mitigating factor existed.[63]  *Id.* at 39 (citation omitted).

---

[60] *See* Ala. Code § 13A-5-51(7) (1975) ("Mitigating circumstances shall include . . . [t]he age of the defendant at the time of the crime.").

[61] *See* Ala. Code § 13A-5-51(1) (1975) ("Mitigating circumstances shall include . . . [t]he defendant has no significant history of prior criminal activity.").

[62] In West's habeas petition, it states that his birthday is "7-29-95."  Petition (Doc. 1) at 39.  This, however, is clearly an inadvertent, typographic error as the portion of the trial transcript West quotes actually states that his birthday is "7-29-75."  (R. Vol. 11, p. 1778).  And this fact is corroborated by both the presentence investigation report, which is entitled "Alabama Board of Pardons and Paroles: Report of Investigation," (*see* C.R. Vol. 3, Tab. 1, p. 408), and the Alabama Department of Corrections's website.  *See Inmates on Deathrow*, ALABAMA DEPARTMENT OF CORRECTIONS, http://www.doc.state.al.us/deathrow.asp (last visited April 19, 2011).

[63] Both the trial court's Amended Sentencing Order and Further Amended Sentencing Order listed "that the [West] had no significant history of prior criminal activity" as a statutory mitigating factor.  (C.R. Vol. 21, Tab 63, p. 29; C.R. Vol. 21, Tab. 64, p. 2).  This factor was neither presented to the jury at the penalty phase nor included within the trial court's initial sentencing order.  (*See* C.R. Vol. 21, Tab. 62, pp. 188-90).  It was only added after the Alabama Court of Criminal Appeals "remanded the case to the trial court with instructions that the trial court enter a new sentencing order that complies with the requirements of § 13A-5-47(d) . . . ."  *West v. State*, 793 So.2d at 887.

In rebuttal, Respondents raise a number of arguments.  First, Respondents argue that "[a]s an initial matter, this Court should summarily dismiss this claim because it is conclusory in nature and fails to state a valid claim for relief under 28 U.S.C. § 2254."  Respondents' Br. (Doc. 11) at 31. Specifically, Respondents argue, *inter alia*, that "West fails to allege any facts pertaining to his criminal history or that the jury's finding this additional mitigating factor would have swayed their sentencing recommendation in favor of life without parole."  *Id.*  Second, Respondents assert that West's "claim is procedurally defaulted form this Court's review because it was dismissed under an independent and adequate state procedural rule" in that "the Alabama Court of Criminal Appeals held that this claim was due to be dismissed under Rule 32.7(d) of the Alabama Rules of Criminal Procedure, because it failed to comply with the specificity and full factual pleading requirements of Rule 32.3 and 32.6(b) . . . ."  Answer (Doc. 10) at 14 (citing Rule 32 C.R. Vol. 21, Tab. 73, pp. 15-17) (citations omitted)).  Finally, Respondents argue in the alternative that "this claim was raised in West's Rule 32 petition, and the circuit court denied it on the merits."  *Id.* at 15 (citing Rule 32 C.R. Vol. 21, Tab. 72, pp. 123-26).  In this regard, Respondents specifically assert that: (1) West "instructed his trial counsel not to present any mitigation evidence"; (2) "counsel's decision was reasonable because West had a burglary conviction"; and (3) "on remand[] the [Rule 32] circuit court found the existence of the statutory mitigating circumstance . . . and nevertheless found that the aggravating circumstances outweighed the mitigating circumstances."  Respondents' Br. (Doc. 11) at 35.

On collateral review, the Alabama Court of Criminal Appeals made the following findings of fact and conclusions of law:

West next argues that the circuit court erred when it denied his claim that his trial counsel were ineffective for not arguing to the jury at the penalty phase of the trial the § 13A-5-51(1), Ala. Code 1975, mitigating circumstance applied to his case because he did not have a significant history of prior criminal activity.  The circuit court denied this claim on the ground that West had failed to prove either prong of the Strickland test.  After thoroughly reviewing West's petition, we conclude that West failed to plead this claim with sufficient specificity to satisfy the requirements in Rule 32.3 and Rule 32.6(b).  Although this was not the reason the circuit court gave for denying West's allegation of ineffective assistance of counsel, as noted above, this Court can nevertheless affirm on this ground.

In his petition, West alleged that his counsel argued at the sentencing hearing before the jury only that his age was a mitigating circumstance, and that the trial court later determined that the § 13A-5-51(1) mitigating circumstance applied.  He then alleged:

> "86.  The trial court's decision, on remand, that this additional mitigating circumstance existed does not alter the fact that its existence was never presented or argued to the jury.  In a case like the instant one, where the jury voted for death by 10 to 2, the slimmest margin possible to avoid a mistrial on the issue of the jury's recommendation, such a failure had a tremendous prejudicial impact.["]

> "87.  Counsel's failure to present this statutory mitigating factor to the jury rendered the penalty phase of Mr. West's trial unreliable.  Gregg v. Georgia, 428 U.S. 153 (1976).  That failure by counsel deprived Mr. West of a fair and accurate penalty phase determination as required by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution; Article I, Sections 6, 8 and 15 of the Constitution of Alabama; and Alabama Law.  See also Williams v. Taylor, 529 U.S. 362 (2000).  As a result, Mr. West's sentence must be set aside."

(Cl. 40.)[64]

West made only bare allegations that his constitutional rights had been violated and concluded that his sentence must be vacated, but those allegations and conclusions are unsupported by any facts.  West failed to allege in the petition what aggravating circumstances were found by the trial court; he failed to allege the details of his criminal history and why that history was not significant; he failed to allege

---

[64] (Rule 32 C.R. Vol. 16, Tab. 40, ¶¶ 86-87).

why counsel should have argued that this mitigating circumstance existed after West directed them not to present any argument on his behalf at sentencing; he failed to allege that the jury would have recommended a sentence of life imprisonment without parole if counsel had argued that this mitigating circumstance existed; and finally, he failed to allege that the trial court would not have imposed a death sentence if the jury had recommended a life-without-parole sentence.

Bare conclusions without any supporting facts do not satisfy the pleading requirements of Rule 32.3 and Rule 32.6(b).  We find that West clearly failed to plead sufficient facts supporting either prong of the Strickland test.  Therefore, denial of this claim of ineffective assistance of counsel was proper.

(Rule 32 C.R. Vol. 21, Tab. 73, pp. 15-17).  And to the extent that Respondents now rely upon the

Rule 32 circuit court's findings of fact or incorporates that court's legal analysis as its own,

Respondents quote the following passages from the Rule 32 circuit court's final order:

West also contends that trial counsel was ineffective for failing to argue, as a statutory mitigating circumstance[,] that West did not have a significant criminal history.  See § 13A-5-51(1), Ala. Code. 1975.  West contends that had counsel argued this mitigating circumstance to the jury, it would have returned a life without parole recommendation.  West's claim is without merit and is denied.

It is undisputed that trial counsel did not argue that West did not have a significant criminal history.  However, trial counsel's failure to argue this statutory mitigating circumstance is reasonable for two reasons.  First, as explained above in greater detail, West ordered trial counsel not to present any mitigating evidence. Clearly, at the time of his trial and sentencing, West wanted to be sentenced to death instead of spending the next 60 or 70 years of his life in prison.  (EH. 91-92) While one may personally disagree with West's decision, it was his decision to make.  As Mr. Floyd testified, West repeatedly instructed counsel not to present any mitigating evidence on his behalf.  (EH. 88-89)

Moreover, it is not illogical for a defendant to prefer life on death row over spending the remainder of his life in the general prison population.  West did not present any evidence or testimony that his instructions to counsel were not knowing or voluntary.  As such, counsel was bound to follow their client's wishes, irregardless of their own beliefs.  "When a competent defendant knowingly and voluntarily chooses a lawful course of action or defense strategy, counsel is essentially bound by that decision.  If the defendant is prejudiced in some respect by his own decision, he should not later be heard to complain about those consequences by challenging the conduct of his counsel."  Adkins v. State, --- So.2d ---, 2001 WL 111928 (Ala. Crim.

70

App. 2001) (citations omitted).  Counsel cannot be deemed ineffective for following the instructions of their client to forego the presentation of mitigating evidence.

Moreover, trial counsel's decision not to argue the statutory mitigating circumstance of no significant criminal history was reasonable in light of the facts of the case.  One of the aggravating circumstances in this case was that West was under a sentence of imprisonment at the time of the crime.  (SR. 32)[65]  Specifically, West had been convicted of burglary just prior to his committing capital murder.  (EH. 64)  Despite the fact that this Court later determined that West did not have a significant criminal history, it is reasonable to [sic] for an attorney to believe that a previous burglary conviction would negate the possibility of arguing this statutory mitigating circumstance to the jury.  As such, counsel's failure to argue the statutory mitigating circumstance of no significant prior criminal history before the jury was not unreasonable.

Finally, West cannot demonstrate prejudice from counsel's failure to argue this statutory mitigating circumstance.  On remand from the Court of Criminal Appeals, this Court found and considered, as a statutory mitigating circumstance[,] that West did not have a significant history of prior criminal activity.  (SR. 32-33)  However, this Court still found that the aggravating circumstances outweighed the mitigating circumstances and the proper sentence was death.  West has presented no evidence or argument that would alter that equation.  Even if counsel had argued that § 13A-5-51(1), Ala. Code. 1975, to the jury, the proper sentence in this case would still be death.  "[T]here is no reasonable probability that the balance of aggravating and mitigating circumstances that led to the imposition of the death penalty in this case would have been different." Grayson v. Thompson, 257 F.3d 1194, 1225 (11th Cir. 2001).  As such, West has failed to prove prejudice as required by Strickland.  Therefore, this claim is denied.

Respondents' Br. (Doc. 11) at 34-35 (quoting Rule 32 C.R. Vol. 21, Tab. 72, pp. 30-33).[66]

---

[65] The Rule 32 circuit court's citation to "(SR. 32)" is apparently a reference to the trial court's "Amended Sentencing Order." (*See* C.R. Vol. 21, Tab. 63, p. 32).  Even though the trial court subsequently entered a "Further Amended Sentencing Order," it also included "[t]hat the capital offense was committed by Geoffrey Todd West while he was under a sentence of imprisonment" as a statutory aggravating circumstance. (*See* C.R. Vol. 21, Tab. 64, p. 1).

[66] In its Brief on the Merits, Respondents do not quote the first paragraph provided above from the Rule 32 circuit court's order. *See* Respondents' Br. (Doc. 11) at 34-35 (quoting Rule 32 C.R. Vol. 21, Tab. 72, pp. 31-33).  The Court, however, thought it best to provide an unabridged reproduction of Rule 32 circuit court's ruling on this issue.

a. Procedural Rules Governing Habeas Corpus Cases Under § 2254.

As to the pleading requirements governing *federal* habeas petitions, West yet again fails to sufficiently plead this aspect of his ineffective assistance claim. In particular, West's petition does not elaborate as to why his trial counsel's failure to argue this mitigating circumstance constituted deficient performance and thereby violated the standard articulated by the Supreme Court in *Strickland*. *See* Petition (Doc. 1) at 38-39. Moreover, West also fails to demonstrate how his trial counsel's allegedly deficient performance prejudiced his defense because he does not establish, let alone argue, that "there is a reasonable probability that, absent the errors, *the sentencer* . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death."[67] *Stewart*, 476 F.3d at 1209 (emphasis added) (quoting *Strickland*, 466 U.S. at 695). Other than a bare allegation that his counsel's failure to argue this statutory mitigating circumstance "had a tremendous impact" because "the jury voted for death by 10 to 2, [which is] the slimmest margin possible to avoid a mistrial on the issue of the jury's recommendation," West's petition does not discuss how or why this claim warrants federal habeas relief. Petition (Doc. 1) at 39.

Absent a citation to *Gregg v. Georgia*, 428 U.S. 153 (1976), after asserting that his trial counsel's conduct "rendered the penalty phase of [his] trial unreliable," *see* Petition (Doc. 1) at 39, this portion of West's ineffective assistance claim amounts to nothing more than a "general reference to the transcripts, case records and briefs on appeal [that] patently fails to comply with Rule 2(c)" of the Rules Governing Section 2254 Cases in the U.S. District Courts. *Phillips*, 2006 WL 744387, at *1 (citation omitted). Because West's petition merely asserts a ground for relief without

---

[67] "In Alabama, the trial judge[, not the jury,] is the ultimate sentencer in capital cases." *Parker v. Allen*, 565 F.3d 1258, 1285 (11th Cir. 2009) (citing Ala. Code § 13A-5-47 (1994)).

articulating how his trial counsel violated *Strickland*, much less arguing how the Alabama collateral court's ruling to the contrary was either contrary to or an unreasonable application of clearly established federal law, West failed to satisfy the requirements of Habeas Rule 2(c).  *See Smith v. Wainwright*, 777 F.2d at 616 (holding that a general allegation of ineffective assistance of counsel is insufficient; a petition must allege specific errors in counsel's performance and facts showing prejudice); *Hill v. Linahan*, 697 F.2d 1032, 1036 (11th Cir. 1983) ("The burden of proof in a habeas proceeding is always on the petitioner.").   Accordingly, this claim is conclusory and fails to sufficiently plead a basis for federal habeas relief.  Even though this ineffective assistance claim is due to be dismissed, the Court will nonetheless address the merits of West's claim.

b.  The Question of Procedural Default.

The Alabama Court of Criminal Appeals dismissed this portion of West's ineffective assistance claim in the same manner in which it dismissed his preceding claim that his trial counsel was ineffective for failing to investigate and present a mitigation defense.  (*Compare* Rule 32 C.R. Vol. 21, Tab. 73, pp. 13-15, *with id.* at 15-17).  Specifically, the court held: "We find that West clearly failed to plead sufficient facts supporting either prong of the <u>Strickland</u> test.  Therefore, denial of this claim of ineffective assistance of counsel was proper."  *Id.* at 17.  Because the Court of Criminal Appeals' procedural ruling "require[d] some evaluation, however cursory, of the merits of [West's] claim," it is deemed a holding on the merits for purposes of federal habeas review. *Powell*, 602 F.3d at 1273 (quoting *Stokes*, 123 F.3d at 860).   As such, West's claim is not procedurally barred, and this Court is not precluded from reaching the merits of his claim.

c. <u>Merits</u>.

To prevail on an ineffective assistance claim in state court, West's Rule 32 petition "was required to allege specific facts showing that his [trial] counsel's performance was deficient—that counsel's decisions were so unreasonable that they could not be considered as part of the [trial] strategy—and that the deficiency made a difference to the outcome of the proceeding." *Jenkins*, 210 Fed. Appx. at 899 (citing *Strickland*, 466 U.S. at 687, 689, 694). Due to the restrictions imposed by the AEDPA, however, this Court's review is limited to a determination of

> whether the state court's determination that [West] failed to plead sufficient facts in his Rule 32 petition to support a claim of ineffective assistance of counsel was contrary to or an unreasonable application of Supreme Court precedent. *Thus, [this* Court] look[s] only to the allegations in [West's] Rule 32 petition and whether those allegations sufficiently state a claim for ineffective assistance of counsel.

*Powell*, 602 F.3d at 1273 (footnote omitted); *see also Harrington*, 131 S.Ct. at 788 ("When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.").

The Alabama Court of Criminal Appeals held that the allegations in West's Rule 32 petition[68] "fail[ed] to plead this claim with sufficient specificity to satisfy the requirements in Rule 32.3 and Rule 32.6(b)." (Rule 32 C.R. Vol. 21, Tab. 73, p. 16). In support of this ruling, the court found:

> West made only bare allegations that his constitutional rights had been violated and concluded that his sentence must be vacated, but those allegations and conclusions are unsupported by any facts. West failed to allege in the petition what aggravating circumstances were found by the trial court; he failed to allege the details of his criminal history and why that history was not significant; he failed to allege why counsel should have argued that this mitigating circumstance existed after West directed them not to present any argument on his behalf at sentencing; he failed to

---

[68] For the allegations in West's Rule 32 petition associated with his present contention that his trial counsel was ineffective for failing to argue an additional statutory mitigating factor before the jury, see Rule 32 C.R. Vol. 16, Tab. 40, ¶¶ 83-87.

74

allege that the jury would have recommended a sentence of life imprisonment without parole if counsel had argued that this mitigating circumstance existed; and finally, he failed to allege that the trial court would not have imposed a death sentence if the jury had recommended a life-without-parole sentence.

*Id.* at 17.  Because "[b]are conclusions without any supporting facts do not satisfy the pleading requirements of Rule 32.3 and Rule. 32.6(b)" and "West clearly failed to plead sufficient facts supporting either prong of the Strickland test," the Court of Criminal Appeals concluded that "denial of this claim of ineffective assistance of counsel was proper." *Id.*

Upon reviewing West's Rule 32 petition, it is clear that "those allegations [did not] sufficiently state a claim for ineffective assistance of counsel." *Powell*, 602 F.3d at 1273 (footnote omitted).  Instead of "alleg[ing] specific facts showing that his [trial] counsel's performance was deficient . . . and that the deficiency made a difference to the outcome of the proceeding," *Jenkins*, 210 Fed. Appx. at 899 (citation omitted), West's Rule 32 petition only plead the legal conclusion that his trial counsel performed deficiently by not raising the statutory mitigating circumstance "to the jury that Mr. West did not have a significant history of prior criminal activity."  (*See* Rule 32 C.R. Vol. 16, Tab. 40, ¶ 83 (citing Ala. Code § 13A-5-51(1) (1975)).  Ultimately, West's claim is due to be denied because he has failed to show that the Alabama Court of Criminal Appeals' decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law" or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

### i.  Deficient Performance

The only assertion West made in his Rule 32 petition to support the contention that his counsel performed deficiently was that "[n]otwithstanding counsel's decision that only one statutory

mitigating factor existed, the trial court determined on remand that an additional statutory mitigating

factor existed." (Rule 32 C.R. Vol. 16, Tab. 40, ¶ 85). Within its discussion of this claim, the

Alabama Court of Criminal Appeals held that West's Rule 32 petition "failed to allege . . . the details

of his criminal history and why that history was not significant." (Rule 32 C.R. Vol. 21, Tab. 73,

p. 17). By not discussing the details of his criminal history, *a fortiori*, Alabama collateral courts

were unable to discern whether West's trial counsel were in fact deficient by failing to raise the

statutory mitigating circumstance that he "ha[d] no significant history of prior criminal activity" to

the jury. Ala. Code § 13A-5-51(1) (1975). Viewed in this light, the allegations, or rather the

conclusion, in West's Rule 32 petition clearly did not overcome the "evidentiary presumption that

[his] counsel acted properly." *Harvey v. Warden*, 629 F.3d 1228, 1245 (11th Cir. 2011).[69] And thus,

the Alabama Court of Criminal Appeals did not unreasonably apply federal law when it determined

that West failed to plead his trial counsel was constitutionally ineffective for not raising this statutory

mitigating circumstance before the jury.

Alternatively, from this Court's independent review of the state court record, other reasons

support the finding that, in regards to *Strickland*'s performance prong, West's trial counsel's decision

not to argue the statutory mitigating circumstance of no significant criminal history was reasonable

in light of the facts of West's case. *See Parker v. Allen*, 565 F.3d 1258, 1285-86 (11th Cir. 2009)

("The deficient performance inquiry focuses on 'whether counsel's assistance was reasonable

considering all of the circumstances' . . . ." (quoting *Strickland*, 466 U.S. at 687-88)). The Rule 32

---

[69] *See also Williams v. Head*, 185 F.3d at 1227-28 ("Following the Supreme Court's instructions, we will 'indulge a strong presumption that [counsel's] conduct falls within the wide range of reasonable professional assistance,' and that he 'made all significant decisions in the exercise of reasonable professional judgment.'" (quoting *Strickland*, 466 U.S. at 689-90))

circuit court found that "it [was] reasonable for an attorney to believe that a previous burglary conviction would negate the possibility of arguing this statutory mitigating circumstance to the jury," (Rule 32 C.R. Vol. 21, Tab. 72, p. 32), which concerned West's March 1997 burglary conviction. (*See* C.R. Vol. 3, Tab. 1, p. 411).  As a result of this conviction, West was placed on probation on March 24, 1997—only four days before West "was arrested and charged with this offense," *i.e.*, his arrest for capital murder on March 28, 1997.  *Id.* at 413.

While this fact alone may be sufficient to support a finding that West's trial counsel made a reasonable decision to not present this mitigating circumstance to the jury, this fails to take into account the evidence presented at trial purportedly linking West to a third theft.[70]  Specifically, the jury heard testimony during the penalty phase concerning a letter purportedly written by West where he stated: "I, Geoff West, purposely killed that lady at the Chevron, I also robbed Burton's on the mountain and have no remorse. . . . [A crime] they have been trying to solve . . . for three years." (R. Vol. 9, p. 1194).  Therefore, West's trial counsel was not only aware of West's prior burglary conviction for which he received probation, but he also knew of evidence presented at trial linking West to a third theft.  Further, it is also worth noting that there were numerous references at trial about West's use and sale of drugs,[71] which coincided with West's conviction in September 1996 for "Unlawful Possession of Marihuana 2nd" and "Unlawful Possession of Drug Paraphernalia." (C.R. Vol. 3, Tab. 1, p. 411).

---

[70] West's "first" theft was his March 1997 burglary conviction, which resulted in his probation at the time of the murder.  (*See* C.R. Vol. 3, Tab. 1, pp. 408-13).  His "second" theft was in conjunction with his present capital murder charge for "Intentional Murder During a *Robbery* 1st Degree."  *Id.* at 408 (emphasis added); (*see also* C.R. Vol. 1, Tab. 1, p. 6 (West's Indictment)).

[71] For example, when asked "What other drugs [in addition to marijuana] did Geoff use?" Amy Pearce answered "Narcotic pills, LSD, crystal methamphetamine." (R. Vol. 8, pp. 1041, 1115; *see also* C.R. Vol. 3, p. 411-12 (describing West's two stints in "substance abuse rehab")).

In light of the foregoing, it becomes clear that it was entirely reasonable for West's trial counsel to conclude that, in the mind of both the judge and jury, West's connection to two previous thefts as well as his use and sale of drugs "would negate the possibility of arguing this statutory mitigating circumstance to the jury."  (Rule 32 C.R. Vol. 21, Tab. 72, p. 32); *see also Parker*, 565 F.3d at 1278 ("The petitioner bears the heavy burden of proving that 'no competent counsel would have taken the action' taken by his counsel." (citation omitted)).  As such, West has failed to establish that his trial counsel performed in a constitutionally deficient manner, and therefore his claim is due to be denied.  Even though West's claim can be denied on this ground alone, the Court will nevertheless discuss *Strickland*'s prejudice prong.

### i. Prejudice

"To show prejudice, [West was required to] prove that there is a reasonable probability that the sentencing judge would have arrived at a different conclusion after being presented with the additional evidence and reweighing the aggravating and mitigating circumstances."  *Parker*, 565 F.3d at 1285.  But as the Alabama Court of Criminal Appeals correctly noted, West's Rule 32 petition failed to allege, *inter alia*, "what aggravating circumstances were found by the trial court." (Rule 32 C.R. Vol. 21, Tab. 73, p. 17).  Without these facts, Alabama collateral courts were unable to "reweigh the evidence in aggravation against the totality of available mitigating evidence" and thereby conduct a proper prejudice determination.  *Kokal*, 623 F.3d at 1345 (quoting *Wiggins*, 539 U.S. at 534).

Further, West's Rule 32 petition did not "allege that the trial court would not have imposed a death sentence if the jury had recommended a life-without-parole sentence."  (Rule 32 C.R. Vol. 21, Tab. 73, p. 17).  While it is true that the statutory mitigating factor West cites was not argued

before the jury, it does alter the fact that the trial judge found this factor to exist yet still concluded "that the aggravating circumstances outweighed the mitigating circumstances and the proper sentence was death." (Rule 32 C.R. Vol. 21, Tab. 72, p. 33). "In Alabama, the trial judge is the ultimate sentencer in capital cases. *In this case, the sentencing judge was the same as the post-conviction judge and clearly stated that the sentence would not have been different even with additional testimony*." *Parker*, 565 F.3d at 1285-86 (emphasis added) (citation omitted). Accordingly, West is unable to establish prejudice, and thus the Alabama collateral courts did not unreasonably apply *Strickland* when concluding the same.

In sum, the allegations in West's Rule 32 petition were insufficient to establish prejudice as West "ha[d] not shown a reasonable probability that" if counsel had presented this additional mitigating circumstance to the jury it "would have resulted in a life sentence rather than the death penalty." *Williams v. Allen*, 598 F.3d at 794-95. Therefore, West's claim is due to be denied.

### 4. Failure to Request a Continuance so that the Defense Could Procure and Use an "Obliterated Documents" Expert.

Finally, West contends that his trial "counsels' failure to request a continuance so that it could obtain expert assistance constituted ineffective assistance of counsel." Petition (Doc. 1) at 41. In particular, West alleges that "[c]ounsel was also ineffective by not making a motion for a continuance so that it could procure an expert to assist the defense in cross-examining the State's 'obliterated documents expert,' Stephen [sic] Drexler," because a defense expert could "have offered testimony to rebut or contradict aspects of Mr. Drexler's testimony." *Id.* at 39-40.

West raises four points in support of his claim that his trial counsel was ineffective for failing to move for a continuance. First, West alleges that the "State's expert's 'obliterated documents'

testimony was crucial to the prosecution of West" because the letters Drexler deciphered were "the only evidence connecting West with the murder"—apart from the testimony of "two witnesses purported to tie him to the crime." *Id.* at 40-41. Second, West alludes that his trial counsel was ineffective for failing to request a continuance especially "[i]n light of the testimony that West's trial counsel had never dealt with such an expert witness." *Id.* at 41. Third, West cites the constrained timeline surrounding when his trial counsel discovered that the State intended to use the letters and Drexler's testimony at trial. He alleges that his trial counsel did not learn until eight days before trial that the State intended "to use the letters as evidence against West," and further claims that his counsel was not informed until the first day of jury selection "that a State 'obliterated documents' expert had examined portions of the letters purportedly obliterated by Pearce [*i.e.*, West's co-defendant and former girlfriend] with a black felt-tip pen." *Id.* Finally, West states that his counsel only "learned <u>during</u> trial that the State's expert witness would testify regarding obliterations." *Id.*

Respondents answer by raising three arguments. First, Respondents argue that "[a]s an initial matter, this Court should summarily dismiss this claim because it is conclusory in nature and fails to state a valid claim for relief under 28 U.S.C. § 2254." Respondents' Br. (Doc. 11) at 36. Respondents support this assertion by arguing, *inter alia*, that "West fails, however, to identify an 'obliterated documents' expert that would have been available for his trial" and that West "does not allege what assistance that expert would have provided." *Id.* at 36-37. Second, Respondents assert that "[t]his claim is procedurally defaulted from this Court's review because it was dismissed under an independent and adequate state procedural rule" in that "the Alabama Court of Criminal Appeals held that this claim was due to be dismissed under Rule 32.7(d) of the Alabama Rules of Criminal Procedure, because it failed to comply with the specificity and full factual pleading requirements of

80

Rule 32.3 and 32.6(b) . . . ."  Answer (Doc. 10) at 17-18 (citing Rule 32 C.R. Vol. 21, Tab. 73, pp.

17-18) (citations omitted).  Third and finally, Respondents alternatively argue that "this claim was

raised in West's Rule 32 petition, and the circuit court denied it on the merits."  *Id.* at 18-19 (citing

Rule 32 C.R. Vol. 21, Tab. 72, pp. 114-17).  In particular, Respondents argue that West's trial

counsel's decision "to focus on challenging the authenticity of the letters rather than requesting a

continuance to procure an obliterated documents expert" was reasonable, and thus his ineffective

assistance claim is meritless.  Respondents' Br. (Doc. 11) at 41.

On collateral review, the Alabama Court of Criminal Appeals made the following findings

of fact and conclusions of law:

> Finally, West argues that his counsel were ineffective because, he says, they
> did not move for a continuance so they could obtain the services of an expert who
> could assist them in responding to the testimony of the State's "obliterated
> documents" expert.  The circuit court denied this claim on the ground that West
> failed to prove either prong of the Strickland test.  After carefully reviewing West's
> petition, we again conclude that West failed to plead this claim with sufficient
> specificity to satisfy the requirements in Rule 32.3 and Rule 32.6(b).  Although this
> was not the reason the circuit gave for denying this allegation of ineffective
> assistance of counsel, this Court can affirm on this ground.
>
> In the petition, West alleged that, eight days before trial, the State provided
> to defense counsel "several letters he allegedly wrote to Amy Pearce [his co-
> defendant] in the summer and fall of 1997 while the two were in the Etowah county
> jail.  Mr. West consistently denied that he wrote those letters." (Cl. 30.)  He further
> alleged that, on the first day of trial, the State informed defense counsel that it would
> present testimony from an "obliterated documents" expert, who had examined the
> letters and the portions purportedly obliterated by Pearce.  West also alleged that
> "[d]espite Mr. West's right to expert assistance, and the highly subjective nature of
> obliterated text interpretation, counsel made little effort to procure an expert to rebut
> the State's expert's untested claim that the obliterated portions of the letters alleged
> [sic] written to Pearce actually contained what the State's expert claimed." (Cl. 31.)
> Finally, West alleged that the letters were admitted and unchallenged and "proved to
> be the only corroboration of Pearce's testimony regarding the events occurring on the
> night Ms. Berry died.  Counsel's deficient performance seriously prejudiced Mr.
> West's rights, and as a result, his conviction and sentence of death must be set aside."

(Cl. 32.)

    The foregoing allegations fail to satisfy the pleading requirements set forth in Rule 32.3 and Rule 32.6(b).  West failed to plead what facts were presented at trial, including what information was contained in the letters he was alleged to have written; what the State's expert testified was obliterated from the letters and why this was relevant to the case against him; what a defense expert would have testified to with regard to the obliterated text; that defense counsel could have secured the services of an expert if a continuance had been granted; that the trial court would have granted a continuance if defense counsel had requested one;[FN]4 or that if defense counsel had presented the testimony of its own expert, West would not have been convicted.

      [FN]4 In fact, the judge stated in his order denying the petition that, as the judge who presided over West's trial, he could state he would not have granted a continuance if one had been requested.  (C. 116.)

    Clearly, then, West failed to provide a "clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds."  Rule 32.6(b), Ala.R.Crim.P.  See also Hyde v. State, 950 So.2d 344, 356 (Ala. Crim. App. 2006).  Therefore, denial of this claim of ineffective assistance of counsel was proper.

(Rule 32 C.R. Vol. 21, Tab. 73, pp. 17-19 (alterations in original)).   And to the extent that Respondents now rely upon the Rule 32 circuit court's findings of fact or incorporates that court's legal analysis as its own, Respondents quote the following passages from the Rule 32 circuit court's final order:

    West has again failed to meet his burden of proving that counsel's performance was deficient or that he was prejudiced by counsel's failure to move for a continuance.

    According to Mr. Floyd, he became aware that the State would present an obliterated documents expert shortly before trial. (EH. 47, 76-77) At trial, this Court informed West and his counsel that they would be given the same amount of time to locate and procure the services of an obliterated documents examiner.  (R. 268-270) As such, instead of moving for a continuance, Mr. Floyd attempted to locate an expert but was unsuccessful.  (EH. 80, 82)  Mr. Floyd also testified that instead of challenging the obliterated portions of the letters, he argued that West did not write any of the letters at issue in the case.  (EH. 83)

This Court finds that trial counsel's decision not to move for a continuance and instead challenge the authenticity of the letters was a sound tactical decision. In support of this defense, Mr. Floyd presented several witnesses who were personally acquainted with West's handwriting. These witnesses all testified that the letters were not in West's handwriting. (EH. 83, R. 1311-23, 1364-65, 1391-93) Obviously, if trial counsel's theory, that West did not write the letters in question, had been successful, there would have been no need for a continuance or an obliterated documents expert. Moreover, counsel's decision to forego a handwriting expert, in lieu of lay witnesses familiar with West's handwriting, was also reasonable.

Because both parts of the <u>Strickland</u> standard must be satisfied before a violation of the Sixth Amendment can be found, a court need not address the performance prong if the defendant cannot satisfy the prejudice prong and vice-versa. <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000). This Court, however, will address West's failure to demonstrate prejudice. First and foremost, this Court also served as the trial court in West's capital murder trial. As such, this Court is in the unique position of knowing whether, if requested by trial counsel, a motion for continuance in order to secure either an obliterated documents examiner or a handwriting expert would have been granted. This Court would not have granted such a motion for continuance. As explained at trial, this Court gave the defense ample opportunity to locate an expert. In fact, the defense actually had more time to locate an expert than the State. Because any motion for a continuance would have been denied by this Court, West cannot demonstrate prejudice due to trial counsel's failure to request a continuance.

As explained earlier, Rule 32.3 of the Alabama Rules of Criminal Procedure places the burden of proof in these proceedings squarely on West. Rule 32.3 provides, in pertinent part, that "the petitioner shall have the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief." As the Court of Criminal Appeals has stated, "[p]rejudice cannot merely be alleged; it must be affirmatively proved." <u>Williams v. State</u>, 783 So.2d 108, 119 (Ala.Crim.App.2000). As such, not only was West required to prove that he was entitled to a continuance, which he cannot, he was also required to prove that had he been granted a continuance, he would have been able to procure favorable testimony from either an obliterated documents expert or handwriting expert.

At the evidentiary hearing, West did not offer any evidence or testimony that an obliterated documents expert or handwriting expert would have testified favorably in his defense, much less that one was even available to testify. As such, West failed to prove he was prejudiced by counsel's failures. See Ala. R. Crim. P. 32.3. Therefore, this claim is denied. Ala. R. Crim. P. 32.7(d).

Respondents' Br. (Doc. 11) at 40-41 (quoting Rule 32 C.R. Vol. 21, Tab. 72, pp. 21-24).[72]

a.  Procedural Rules Governing Habeas Corpus Cases Under § 2254.

In regards to whether West complied with pleading requirements for *federal* habeas petitions, he again fails to plead sufficient facts to support this aspect of his ineffective assistance claim.  At no time in his petition does West state "what an 'obliterated documents' expert would have done to aid the preparation of his defense or what testimony he would have presented."  Answer (Doc. 10) at 20.  Merely claiming that expert assistance would somehow have aided his cause and that his trial counsel was thereby ineffective for not requesting a continuance does not satisfy the heightened pleading requirements for federal habeas cases under section 2254.  *See*, *e.g.*, *Mayle*, 545 U.S. at 655 ("[T]he petition must . . . 'state the facts supporting each ground[ for relief].'" (quoting Rule 2(c) of the Rules Governing Section 2254 Cases in the U.S. District Courts, 28 U.S.C. foll. § 2254)); *McFarland*, 512 U.S. at 856.

As stated above, Habeas Rule 2(c) required West to plead facts supporting each ground for relief, yet he has not described how he was prejudiced—an essential element of his ineffective assistance claim—by his trial counsel's purported deficient performance in that he failed to establish how a defense expert would have aided his cause.  The absence of a fully-developed argument necessarily leads this Court to conclude that this claim is conclusory and fails to allege a basis for habeas relief.  *See Blackledge*, 431 U.S. at 74 ("The . . . presentation of conclusory allegations unsupported by specifics is subject to summary dismissal . . . .").  Even though this aspect of West's

---

[72] In its Brief on the Merits, Respondents do not quote the last two paragraphs provided above from the Rule 32 circuit court's order.  *See* Respondents' Br. (Doc. 11) at 40-41 (quoting Rule 32 C.R. Vol. 21, Tab. 72, pp. 21-23).  As with West's other ineffective assistance sub-claims, the Court thought it best to provide an unabridged version of Rule 32 circuit court's ruling on the issue.

ineffective assistance claim is due to be dismissed, the Court will still address the merits of his claim as instructed by the Eleventh Circuit.

b.   The Question of Procedural Default.

The same principles guide the Court's analysis of this ineffective assistance sub-claim as West's two preceding ineffective assistance sub-claims.[73]  During West's Rule 32 proceedings, the Alabama Court of Criminal Appeals "again conclude[d] that West failed to plead this claim with sufficient specificity to satisfy the requirements in Rule 32.3 and Rule 32.6(b)." (Rule 32 C.R. Vol. 21, Tab. 73, p. 17).  Because the court's procedural ruling "require[d] some evaluation, however cursory, of the merits of [West's] claim," it is deemed a holding on the merits for purposes of federal habeas review.  *Powell*, 602 F.3d at 1273 (quoting *Stokes*, 123 F.3d at 860).  Therefore, West's claim is not procedurally barred, and the Court is not precluded from reaching the merits of his claim.[74]

c.   Merits.

As stated repeatedly above, to have effectively raised an ineffective assistance claim before Alabama courts, West's Rule 32 petition "was required to allege specific facts showing that his [trial] counsel's performance was deficient—that counsel's decisions were so unreasonable that they could not be considered as part of the [trial] strategy—and that the deficiency made a difference to the outcome of the proceeding." *Jenkins*, 210 Fed. Appx. at 899 (citing *Strickland*, 466 U.S. at 687, 689, 694).  But since this Court is constrained by the dictates of the AEDPA, this review is accordingly limited

---

[73] For a full discussion of the standard used to determine whether the Alabama Court of Criminal Appeals' procedural ruling that West failed to comply with the pleading requirements in Rules 32.3 and 32.6(b) constituted a procedural bar and thereby precludes federal habeas review, see Part I(B)(2)(b) *supra*.

[74] This finding does not alter the Court's prior, alternative ruling that West failed to comply with the pleading requirements for *federal* habeas petitions in Part I(B)(4)(a).

85

> to whether the state court's determination that [the petitioner] failed to plead
> sufficient facts in his Rule 32 petition to support a claim of ineffective assistance of
> counsel was contrary to or an unreasonable application of Supreme Court precedent.
> Thus, [a federal habeas court] look[s] only to the allegations in [the petitioner's] Rule
> 32 petition and whether those allegations sufficiently state a claim for ineffective
> assistance of counsel.

*Powell*, 602 F.3d at 1273 (footnote omitted); *see also Harrington*, 131 S.Ct. at 788 ("When §

2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is

whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.").

In the present case, the Alabama Court of Criminal Appeals found that the allegations in

West's Rule 32 petition "fail[ed] to satisfy the pleading requirements set forth in Rule 32.3 and Rule

32.6(b)."  (Rule 32 C.R. Vol. 21, Tab. 73, p. 18).  In support of this ruling, the court stated:

> West failed to plead what facts were presented at trial, including what information
> was contained in the letters he was alleged to have written; what the State's expert
> testified was obliterated from the letters and why this was relevant to the case against
> him; what a defense expert would have testified to with regard to the obliterated text;
> that defense counsel could have secured the services of an expert if a continuance had
> been granted; that the trial court would have granted a continuance if defense counsel
> had requested one; or that if defense counsel had presented the testimony of its own
> expert, West would not have been convicted.

*Id.* (footnote omitted).  And because "West failed to provide a 'clear and specific statement of the

grounds upon which relief is sought, including full disclosure of the factual basis of those grounds,'"

the Court of Criminal Appeals concluded that "denial of this claim of ineffective assistance of

counsel was proper."  *Id.* at 18-19 (citations omitted).

After a review of West's Rule 32 petition, it is clear that "those allegations [did not]

sufficiently state a claim for ineffective assistance of counsel."  *Powell*, 602 F.3d at 1273 (footnote

omitted).  Rather than "alleg[ing] specific facts showing that his [trial] counsel's performance was

deficient . . . and that the deficiency made a difference to the outcome of the proceeding," *Jenkins*,

210 Fed. Appx. at 899 (citation omitted), the allegations in West's Rule 32 petition amounted to no more than a bare assertion that his trial counsel performed deficiently by not requesting a continuance in order to procure a obliterated documents expert.  (*See* Rule 32 C.R. Vol. 16, Tab. 40, ¶¶ 56-66).

Even though West's Rule 32 petition emphasized that "the defense's need for such an expert[] cannot be overstated," at no time does the petition take the next logical step and proceed to explain *why* "the defense's need for such an expert[] cannot be overstated."  *Id.* at ¶ 59.  For example, West's Rule 32 petition repeatedly asserted a defense expert could have "assist[ed] the defense in cross-examining the State's 'obliterated documents expert'" and "could also have offered testimony to rebut or contradict aspects of Mr. Drexler's testimony."  *Id.* at ¶ 56.[75]  Yet in every instance, West failed to claim *how* a defense expert could have "assist[ed] the defense in cross-examining the State's 'obliterated documents expert'" or claim exactly *what* testimony such an expert could have "offered . . . to rebut or contradict aspects of Mr. Drexler's testimony."  *Id.*

Earlier this year, the Supreme Court faced a related contention that a habeas petitioner's trial counsel "was constitutionally deficient because he had not expected the prosecution to offer expert testimony and therefore was unable to offer expert testimony of his own in response."  *Harrington*, 131 S.Ct. at 790-91.  In finding that the petitioner's trial counsel did not perform in a deficient manner, the Court held:

> Even if counsel should have foreseen that the prosecution would offer expert evidence, [the petitioner] would still need to show it was indisputable that *Strickland*

---

[75] (*See, e.g.*, Rule 32 C.R. Vol. 16, Tab. 40, ¶ 63 (A defense expert could have been beneficial "not only to challenge the State's evidence as to the contents purportedly under the obliterated portions, but also to challenge the authenticity of the letters Mr. West claimed he did not write."); *id.* at ¶ 66 ("The testimony of a handwriting expert that the letters were not written by Mr. West would have raised serious doubts about Pearce's entire testimony.")).

> required his attorney to act upon that knowledge.  Attempting to establish this, the
> Court of Appeals held that defense counsel should have offered expert testimony to
> rebut the evidence from the prosecution.  But *Strickland* does not enact Newton's
> third law for the presentation of evidence, requiring for every prosecution expert an
> equal and opposite expert from the defense.

*Id.* at 791.  Here, West makes a contention that is similarly analogous to Newton's third law as he

basically claims that he was entitled to a defense expert because an expert was proffered by the

prosecution.  As such, West's claim likewise fails because he did not "show it was indisputable that

*Strickland* required his attorney to act upon that knowledge."  *Id.*  In other words, West's Rule 32

petition failed to establish that "it was indisputable that *Strickland* required his attorney" to move

for a continuance in order to seek expert assistance.  *See id.*

West has not shown that the Alabama Court of Criminal Appeals' decision was either

contrary to, or an unreasonable application of, clearly established federal law.  *See* 28 U.S.C. §

2254(d)(1).  West's claim, therefore, is due to be denied.

### *i.  Deficient Performance*

Alternatively, even if the state collateral court concluded that West satisfied Rule 32's

pleading requirements, denial of this ineffective assistance sub-claim would still be proper.  Contrary

to West's assertion that his counsel was deficient for not seeking a continuance to procure a defense

expert to assist in cross-examining the State's obliterated documents expert, *see* Petition (Doc. 1)

at 39-42, the real issue is whether his counsel's decision to attack the authenticity of the letters, as

opposed to an attack of the State expert's conclusions, comprised a "sound tactical decision" as the

Rule 32 circuit court concluded.  (*See* Rule 32 C.R. Vol. 21, Tab. 72, p. 22).

For a habeas petitioner to sufficiently establish a claim of ineffective assistance, he or she

"'must overcome the presumption that, under the circumstances, the challenged action' could be

considered trial strategy." *Parker*, 565 F.3d at 1278 (quoting *Strickland*, 466 U.S. at 689). As the Supreme Court has often stated: "There is a 'strong presumption' that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer neglect.'" *Harrington*, 131 S.Ct. at 790 (quoting *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) (per curiam)). Here, West failed to rebut this presumption, which is evident after a review of the state court record.

Simply put, the record clearly supports the Rule 32 circuit court's conclusion that West's trial counsel made a "sound tactical decision." (*See* Rule 32 C.R. Vol. 21, Tab. 72, pp. 21-23). In particular, there was a sound factual basis for West's trial counsel's determination to pursue an authentication defense rather than engaging in a so-called "battle of the experts." Under the constraints of a looming trial, West's counsel was unable to find an obliterated documents expert for the defense. But his strategy, if ultimately proven correct, did not require expert testimony. Rather than attacking Drexler's interpretation of the obliterated portions of the letters, West's trial counsel argued that "it is not [his] letters," *i.e.*, that West did not write the letters. (R. Vol. 8, p. 1064). Such a strategy was—and remains—a sound tactical decision because many of the letters did not even bear West's name. In fact, they were signed by one "Henry Hill," who coincidentally is the same name as the lead protagonist from the classic film *Goodfellas*.[76]  *Id.* at 1069-70.

At first blush, it may seem strange that West chose to conceal his penmanship, but it begins to come into focus after considering Amy Pearce's trial testimony. Pearce, West's girlfriend at the time of the offense as well as his co-defendant, stated that she was not allowed to communicate with West and vice versa after both were imprisoned at the Etowah County Detention Center because

---

[76] *See Goodfellas*, THE INTERNET MOVIE DATABASE ("IMDB"), http://www.imdb.com/title/tt0099685/ (last visited April 19, 2011) (stating that the character "Henry Hill" was played by Ray Liotta).

inmates, much less co-defendants, were prohibited from corresponding with one another.  *Id.* at 1066-67.  Because of this, West and Pearce concocted an elaborate strategy whereby a third party outside the jail, usually West's mother, acted as an intermediary.[77]  *Id.* at 1067.  For example, West would write a letter under the pen name "Henry Hill" and mail it to his mother at a local post office box set up under the name "Tamera Williams."  *Id.* at 1068.  Afterwards, West's mother would turn around and mail the letter to Pearce.  *Id.* at 1067-68.

In this light, counsel was not arguing that West did not write letters bearing West's own name and listing his prison cell as the return address.  To the contrary, his attorney argued that West did not write letters that were not only signed by "Henry Hill," but also sent by someone outside the jail.  *See id.* at 1067-70.  Therefore, West's trial counsel's strategy of calling witnesses to testify that the letters were not in West's handwriting was entirely reasonable, both at the time of trial as well as in hindsight.  *See Harrington*, 131 S.Ct. at 789 ("Counsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." (citations omitted)).

Further, West's trial attorneys also attempted to impeach Pearce's credibility as a witness for the prosecution.  As in many cases where one co-defendant pleads guilty and testifies against the other in exchange for some sort of reduced sentence, West's counsel emphasized the fact that Pearce stood to benefit from cooperating with the prosecution.  (*See* R. Vol. 8, pp. 1158-62).  Relatedly, Pearce also testified about the letter's contents and West's handwriting.  *See id.* at 1069-70.  And when the preceding is considered in light of the fact that the letters' authenticity was in question,

---

[77] At trial, West's mother, Donna Lumpkin, did not dispute that she acted as an intermediary for West's and Pearce's correspondence.  (*See* R. Vol. 9, pp. 1335, 1346-48).  She did, however, claim that she was unaware it was illegal for her to do so.  *See id.* at 1346-47.

attacking Pearce's credibility further proves that West's trial attorneys pursued a reasonable trial strategy by foregoing "a battle of the experts." *See Harrington*, 131 S.Ct. at 789-90.[78]

As such, West has failed to rebut the presumption that his trial counsel's decision to attack the authenticity of the letters, instead of requesting a continuance in order to procure expert assistance, was sound trial strategy. *See Parker*, 565 F.3d at 1278. And after an independent review of the record, this Court "cannot say that 'no competent counsel would have taken the action that his counsel did take.'" *Williams v. Allen*, 598 F.3d at 792 (quoting *Hailiburton*, 342 F.3d at 1243). West is accordingly unable to establish deficient performance under *Strickland*.

### ii. Prejudice

Although West did not sufficiently plead this claim nor that his counsel performed deficiently, the Court will nonetheless address *Strickland*'s prejudice prong. Usually when a habeas petitioner claims his or her trial counsel should have enlisted expert assistance, such claims also include the proposed expert's testimony and assert that it would have bolstered the petitioner's defense had the expert rendered such assistance at trial. *See, e.g.*, *Williams v. Allen*, 598 F.3d at 794 ("Despite these efforts, [the habeas petitioner] argues that if his counsel had enlisted testimony from a psychopharmacologist, such testimony would have bolstered his voluntary intoxication defense and provided a clearer demonstration of his argument to the jury."). And logically, a court must then decide whether such a claim is meritorious. Both here and in his Rule 32 petition, however, West only claims that his counsel *should have* sought the assistance of an obliterated documents expert; not *how* such assistance would have aided his defense. *See* Petition (Doc. 1) at 39-42; (Rule 32 C.R.

---

[78] *See Harrington*, 131 S.Ct. at 790 ("Even apart from this danger, there was the possibility that expert testimony could shift attention to esoteric matters of forensic science, distract the jury from whether [the victim] was telling the truth, or transform the case into *a battle of the experts*." (emphasis added) (citation omitted)).

Vol. 16, Tab. 40, ¶¶ 56-66).

But West must plead more than a conclusion to establish that he was prejudiced by his counsel's alleged deficient performance. To explain, for West to establish this proposition he would have to prove that: (1) if his counsel had requested a continuance, either it would have been granted by the trial court or the trial court's denial would have necessitated reversal;[79] (2) during the subsequent layover his counsel would have found a forensic documents expert; (3) this expert would have aided his defense by either exposing some fault in the State expert's methodologies or disproving his conclusions;[80] and (4) considering the totality of the evidence before the judge or jury, there is a reasonable probability that the outcome of the case would have been different if a defense expert had assisted at trial.[81] (See Rule 32 C.R. Vol. 21, Tab. 73, p. 18). Because each point is necessary to show prejudice for a claim such as West's, each would need to be established before habeas relief could even be contemplated, yet West fails to prove even one. Put differently, West

---

[79] In his denial of West's Rule 32 petition, Judge Cardwell—the same circuit court judge that presided over West's trial—stated that he "would not have granted such a motion for continuance" even if trial counsel had requested one. (Rule 32 C.R. Vol. 21, Tab. 72, p. 23; accord Rule 32 C.R. Vol. 21, Tab. 73, p. 18 n.4). When the sentencing judge also presides over the defendant's related state collateral proceedings, such a statement is entitled to some amount of deference. Cf. Schriro, 550 U.S. at 476 ("And it is worth noting, again, that the judge presiding on postconviction review was ideally situated to make this assessment because she is the same judge who sentenced [the petitioner] and discussed these issues with him."); Parker, 565 F.3d at 1285-86 ("In this case, the sentencing judge was the same as the post-conviction judge and clearly stated that the sentence would not have been different even with additional testimony.").

[80] See Harrington, 131 S.Ct. at 792 ("It was also reasonable to find [the petitioner] had not established prejudice given that he offered no evidence directly challenging other conclusions reached by the prosecution's experts.").

[81] West has not shown that even if Drexler's testimony had been refuted at trial—either through a more in-depth cross examination or the testimony of a defense expert trained in the obliterated documents field—it would have made any difference whatsoever in the outcome of his case. See Hall v. Thomas, 611 F.3d at 1291 (finding that the petitioner did not establish Strickland prejudice because he "failed to show that [the] evidence . . . would have made a difference in the state court's finding" (emphasis added)); see also Strickland, 466 U.S. at 696 ("Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." (emphasis added)).

failed to "connect the dots" when he merely plead a conclusion.

In conclusion, West's argument is based on the unfounded assumption that a defense expert would have undeniably refuted the testimony of the State's obliterated documents expert, and in doing so would have resulted in a different outcome at his trial. But such bare allegations are insufficient to establish prejudice under *Strickland* because West "has not shown a reasonable probability that" if his counsel would have requested a continuance it "would have resulted in a life sentence rather than the death penalty." *Williams v. Allen*, 598 F.3d at 794-95. Therefore, West's claim is due to be denied.

## II.   DENIAL OF EXPERT ASSISTANCE.

As part of a jumbled twenty-one page argument, West argues that he was denied—what can generally be described as—his constitutional right to expert assistance.[82] *See* Petition (Doc. 1) at 43-64. West's overarching theme espouses that the principles articulated by the Supreme Court in "*Ake v. Oklahoma*, 470 U.S. 68 (1985) and in the [Supreme] Court's Confrontation Clause jurisprudence. . . . [which are] animated by the Fourteenth and Sixth Amendments, make clear that fundamental

---

[82] West's habeas petition contains two sections—both of which are captioned Section II—addressing his alleged denial of expert assistance. *See* Petition (Doc. 1) at 43-64. The first Section II, which is entitled "West Was Denied a Reasonable Opportunity to Obtain Expert Assistance, and Was Denied His Right to Effective Cross-Examination," primarily addresses claims arising under the Due Process Clause of the Fourteenth Amendment. *Id.* at 43-52. And the second Section II, which is entitled "Alabama Violated the Sixth Amendment's Confrontation Clause by Depriving West of His Right to Effective Cross-Examination," primarily addresses alleged violations of the Confrontation Clause of the Sixth Amendment. *Id.* at 53-64. Taken as a whole, parts of each section are unique, while others are merely duplicative. However, West succinctly summarizes two of his three sub-claims at the outset of his habeas petition. After listing his ineffective assistance of counsel claims in his "Summary of the Argument," West states: "Further, on direct appeal, the state courts erred by failing to find that West had been denied an opportunity to obtain expert assistance, *as well as* his right to effective cross-examination." *Id.* at 26 (emphasis added).

Despite the preceding summary, West's petition repeatedly swaps back and forth between arguing aspects of each sub-claim; thus, it is difficult to address one sub-claim without discussing facets of another. The Court has attempted to untangle and mend together the separate sub-claims West raises within the two disparate versions of Section II. In conclusion, the Court believes it best to treat the two sections as raising one overarching claim with three interrelated sub-claims.

fairness entitles a criminal defendant to an expert on any issue the government has made into a 'significant factor' at trial."  *Id.* at 43.

After viewing West's argument as a whole, the Court concludes that West's overarching assertion contains three somewhat distinct, yet interrelated, sub-claims: (1) Alabama denied West access to the raw materials integral to build an effective defense, a right grounded in the Fourteenth Amendment's guarantee of fundamental fairness, by depriving him a reasonable opportunity to obtain expert assistance in violation of *Ake v. Oklahoma*; (2) Alabama violated West's Sixth Amendment right to confrontation by denying him expert assistance to aid in the cross-examination of the State's "obliterated documents" expert; and (3) the trial court violated West's Sixth Amendment right to effective cross-examination by allowing "junk science," *i.e.*, unreliable expert testimony, to be admitted into evidence.  *See id.* at 43-64.  While West's first and second sub-claims in this regard are, at times, inexorably intertwined, the Court will endeavor to address each sub-claim individually and in turn.[83]   In the end, however, all three of West's sub-claims are due to be dismissed.

> **A.  Alabama Deprived West Access to the Raw Materials Integral to Build an Effective Defense by Denying Him a Reasonable Opportunity to Obtain Expert Assistance.**

In his "Summary of the Argument," West sums up this sub-claim by contending that "the

---

[83]  West's denial of expert assistance claim alleges two separate constitutional violations: (1) *Ake v. Oklahoma*'s recognition of "the Fourteenth Amendment's due process guarantee of fundamental fairness," *see* Petition (Doc. 1) at 43-52, 55-59 (citing *Ake*, 470 U.S. at 76-78); and (2) the Confrontation Clause of the Sixth Amendment, *id.* at pp. 49-64. As stated previously, however, West intermingles these two distinct constitutional rights, which at times makes it impossible for the Court to differentiate among his various sub-claims.  Nevertheless, the Court will attempt to sequester the two alleged constitutional violations West raises in his present habeas petition as mandated by Eleventh Circuit precedent.  *See Moultrie v. United States*, 380 Fed. Appx. 885, 888 (11th Cir. 2010) (per curiam) ("[A]n allegation of one constitutional violation and an allegation of another constitutional violation constitute two distinct claims for relief, even if both allegations arise from the same alleged set of operative facts.  If a district court fails to address all of the claims in a habeas petition, we 'will vacate the district court's judgment without prejudice and remand the case for consideration of all remaining claims.'" (alteration in original) (quoting *Clisby*, 960 F.2d at 936)).

state courts erred by failing to find that [he] had been denied an opportunity to obtain expert assistance." Petition (Doc. 1) at 26. West's primary argument hinges upon his interpretation of the Supreme Court's opinion in *Ake v. Oklahoma*, 470 U.S. 68 (1985), which he asserts "make[s] clear that fundamental fairness entitles a criminal defendant to an expert on any issue the government has made into a 'significant factor' at trial." Petition (Doc. 1) at 43. While this amorphous claim spans various headings within his petition, West's chief claim appears to be that without "the assistance of [an] expert in the cross-examination of the government's expert on the same issue," here, the State's obliterated documents expert Steven Drexler, he was "robbed of 'the basic tools of an adequate defense or appeal.'" *Id.* (quoting *Ake*, 470 U.S. at 77). Further, West argues that an indigent defendant's usual burden to prove that he or she is entitled to expert assistance[84] is inapplicable in his case because "[t]he trial court readily agreed that a defense expert was necessary in order to avoid a fundamentally unfair trial and offered to pay for one." *Id.* at 49. Viewed this way, West claims that "his case is similar to those in which courts supplied experts to defendants but then limited or prevented the testimony of those experts."[85] *Id.* West, therefore, argues that the trial

---

[84] As opposed to an indigent defendant's usual burden to prove that he or she is entitled to expert assistance at trial, West states:

> The majority of cases involving a trial court's denial of a defense expert involve the failure of the defense to make a sufficient showing that an expert is needed. In *Caldwell v. Mississippi*, 472 U.S. 230 (1985), also a capital case, the Supreme Court ruled that "[[g]iven that] petitioner offered little more than undeveloped assertions that requested assistance would be beneficial, [there was] no deprivation of due process." *Caldwell*, [472 U.S.] at 32[3 n.1]. *Caldwell* and *Ake*, considered together, hold that a defendant "must demonstrate something more than a mere possibility of assistance from a requested expert[ ]. . . [.] Rather, a fair reading of these precedents is that a defendant must show the trial court that there exists a reasonable probability both that an expert would be of assistance to the defense and that denial of expert assistance would result in a fundamentally unfair trial." *Moore*[ *v. Kemp*, 809 F.2d 702,] 712 [(11th Cir. 1987) (footnotes omitted)].

Petition (Doc. 1) at 48-49 (second alteration in original (*i.e.*, "[there was]")).

[85] In support of this assertion, West cites: *United States v. Barnette*, 211 F.3d 803 (4th Cir. 2000); *Giron v. Texas*, 19 S.W.3d 572 (Tex. Crim. App. 2000); *In re Detention of Donald Korrte*, 738 N.E.2d 983 (Ill. App. Ct. 2000).

court violated his constitutional right to expert assistance when it "acknowledge[d] that an expert [was] essential to [his] defense yet den[ied] him any meaningful opportunity to retain one."  *Id.*

Respondents respond by raising a number of arguments.  First, Respondents contend that "this Court should summarily dismiss this claim because it is conclusory in nature and fails to state a valid claim for relief under 28 U.S.C. § 2254."  Respondents' Br. (Doc. 11) at 44.  In support of this assertion, Respondents argue that West neither "identif[ies] an 'obliterated documents' expert that would have been available for his trial" nor "allege[s] what assistance that expert would have provided."  *Id.*  Second,  Respondents assert that "[t]his claim is procedurally defaulted from this Court's review because West did not fairly present this claim as a federal claim in state court," and "[d]ismissal of his habeas petition to allow West to present that claim fairly as a federal claim in state court now would be futile because he would be barred from raising it in state court under Rule 32.2(c) . . . (statute of limitations bar) and Rule 32.2(b) of the Alabama Rules of Criminal Procedure (successive petition bar)."  Answer (Doc. 10) at 21-22 (citations omitted).  Finally, Respondents maintain that "[p]ursuant to 28 U.S.C. § 2254(d), habeas relief cannot be granted on this particular claim because it was adjudicated on the merits" by the Alabama Court of Criminal Appeals on direct appeal.  *Id.* at 22 (citing *West v. State*, 793 So.2d 870, 879 (Ala. Crim. App. 2000)).

While this claim was not raised during West's Rule 32 proceedings, the Alabama Court of Criminal Appeals made the following findings of fact on direct appeal, which Respondents presently quote as support:

> The prosecution made the letters available to the defense on May 12, 1999, less than two days after it received them from Pearce.  On May 19, 1999, the day after it located an expert, Steven Drexler, the prosecution informed the defense that Drexler was examining the letters.  Over the next two days, May 20-21, 1999, the prosecution provided to the defense the substance of Drexler's expected testimony,

including the report he prepared.  Thus, contrary to the appellant's assertion, the prosecution promptly notified the defense about the letters and Drexler's expected testimony.  *See Brown v. State*, 545 So.2d 106 (Ala.Crim.App.1988), aff'd, 545 So.2d 122 (Ala.), cert. denied, 493 U.S. 900, 110 S.Ct. 257, 107 L.Ed.2d 206 (1989).  Therefore, the trial court did not err in refusing to exclude the letters and Drexler's testimony.

Furthermore, because Drexler did not testify until May 26, 1999, the defense had the letters for approximately fourteen days before he testified and had his report for approximately five days before he testified.  "'"A motion for [a] continuance due to lack of time for adequate preparation is a matter entirely and exclusively within the sound discretion of the trial court and its ruling will not be reversed on appeal absent a plain and palpable showing of abuse." *Reynolds v. State*, 539 So.2d 428, 429 (Ala.Cr.App.1988).' *Baker v. State*, 683 So.2d 1, 5 (Ala.Cr.App.1995)." *Boyd v. State*, 715 So.2d 825, 837-38 (Ala.Crim.App.1997), aff'd, 715 So.2d 852 (Ala.), cert. denied, 525 U.S. 968, 119 S.Ct. 416, 142 L.Ed.2d 338 (1998).  The appellant has not alleged or shown how he would have benefitted from a continuance.  *See Boyd*, supra; *Prince v. State*, 623 So.2d 355 (Ala.Crim.App.1992).  Accordingly, we do not find any plain error in this regard.

*See* Respondents' Br. (Doc. 11) at 45 (quoting *West v. State*, 793 So.2d 870, 879 (Ala. Crim. App. 2000) (alterations in original)).[86]

### 1.     *Procedural Rules Governing Habeas Corpus Cases Under § 2254.*

To begin, Respondents are correct to argue that "this Court should summarily dismiss this claim because it is conclusory in nature and fails to state a valid claim for relief under 28 U.S.C. § 2254."  Respondents' Br. (Doc. 11) at 44.  As discussed in detail in Part I(B)(4) *supra*, West does not allege whether such an expert would have been available to testify at trial, what testimony or assistance that defense expert would have provided, or, more importantly, how such assistance would

---

[86] Respondents only quote the second paragraph of the Alabama Court of Criminal Appeals' opinion above in its Brief on the Merits.  *See* Respondents' Br. (Doc. 11) at 45.  The Court, however, thought it would better provide the context in which the second paragraph arose if the first paragraph was provided as well.  *See West v. State*, 793 So.2d 870, 879 (Ala. Crim. App. 2000).

Further, Respondents incorrectly cite "Tab **R-73** at 879" as the source of this quotation.  Respondents' Br. (Doc. 11) at 45 (emphasis added).  The preceding quote actually appears within the Alabama Court of Criminal Appeals' opinion on direct appeal, as opposed to that court's Rule 32 opinion.  (*See* C.R. Vol. 21, **Tab 65**).

have aided his defense at trial.  *See* Petition (Doc. 1) at 43-52.  While West provides a conclusory assertion that such an expert could have aided his trial counsels' cross-examination of the State's expert witness, he fails to go into more detail and state who, what, when, and how.  Simply put, West does not argue that another interpretation could have been gleaned from the letters or that it was impossible for Drexler's methods to have yielded accurate results, *i.e.*, his testimony was merely a sham.  West only provides an implicit assumption that there is a remote possibility that expert assistance could have helped—not that it *would have* helped, but simply that it *may have* helped.

Therefore, the allegations in West's habeas petition fail to satisfy the heightened pleading requirements for federal habeas cases under section 2254.  *See, e.g.*, *Mayle*, 545 U.S. at 655 ("[T]he petition must 'specify all the grounds for relief available to the petitioner' and '*state the facts supporting each ground*.'" (emphasis added) (quoting Rule 2(c) of the Rules Governing Section 2254 Cases in the U.S. District Courts, 28 U.S.C. foll. § 2254)); *McFarland*, 512 U.S. at 856.  Conclusory and vague claims that fail to state facts showing the petitioner is entitled to habeas relief can be dismissed without further effort on the part of this Court.  *See Blackledge*, 431 U.S. at 74 ("The . . . presentation of conclusory allegations unsupported by specifics is subject to summary dismissal . . . .").  Because West does not plead facts, including, but not limited to, "identify[ing] an 'obliterated documents' expert that would have been available for his trial" or "what assistance that expert would have provided," this ground does not warrant habeas relief and is due to be dismissed.  Respondents' Br. (Doc. 11) at 44.  In spite of this defect, the Court will still address other facets of the sub-claim, *i.e.*, whether it is procedurally defaulted.

### 2.    *The Question of Procedural Default.*

Section 2254 requires habeas petitioners to "exhaust[] the remedies available in the courts

of the State" before filing a habeas petition in federal court.  28 U.S.C. § 2254(b)(1)(A) (2006).  That

is, "[t]he federal claim must be fairly presented to the state courts" so that they "have had the first

opportunity to hear the claim sought to be vindicated in the federal habeas proceeding."  *Ogle v.*

*Johnson*, 488 F.3d 1364, 1370 (11th Cir. 2007) (citation omitted).

This does not describe the entirety of West's burden, however.  For a habeas petitioner to

claim that he or she fairly presented a federal claim to state courts:

> "It is not sufficient merely that the federal habeas petitioner has been through the
> state courts . . . nor is it sufficient that all the facts necessary to support the claim
> were before the state courts or that a somewhat similar state-law claim was made."
> Rather, in order to ensure that state courts have the first opportunity to hear all
> claims,  federal courts "have required a state prisoner to present the state courts with
> the same claim he urges upon the federal courts."  While we do not require a
> verbatim restatement of the claims brought in state court, we do require that a
> petitioner presented his claims to the state court "*such that a reasonable reader*
> *would understand each claim's particular legal basis and specific factual*
> *foundation*."
>
> While these broad principles are relatively clear, the district court correctly
> noted that many courts have struggled to pinpoint the minimum requirements that a
> habeas petitioner must meet in order to exhaust his remedies.  For instance, the
> Supreme Court recently wrote that a petitioner wishing to raise a federal issue in state
> court can do so "by citing in conjunction with the claim the federal source of law on
> which he relies or a case deciding such a claim on federal grounds, or by simply
> labeling the claim 'federal.'"  *Baldwin v. Reese*, 541 U.S. 27, 32, 124 S.Ct. 1347,
> 1351, 158 L.Ed.2d 64 (2004).  If read in a vacuum, this dicta might be thought to
> create a low floor indeed for petitioners seeking to establish exhaustion.  However,
> we agree with the district court that this language must be "applied with common
> sense and in light of the purpose underlying the exhaustion requirement[:] to afford
> the state courts a meaningful opportunity to consider allegations of legal error
> without interference from the federal judiciary."  This is consistent with settled law
> established by the Supreme Court.  *We therefore hold that "'[t]he exhaustion*
> *doctrine requires a habeas applicant to do more than scatter some makeshift needles*
> *in the haystack of the state court record.'"*

*McNair v. Campbell*, 416 F.3d 1291, 1302-03 (11th Cir. 2005) (emphasis added) (internal citations

omitted).  Simply put, "[t]he exhaustion doctrine requires the petitioner to 'fairly present' his federal

claims to the state courts in a manner to alert them that the ruling under review violated a federal constitutional right." *Pearson v. Sec'y, Dep't of Corr.*, 273 Fed. Appx. 847, 849-50 (2008) (per curiam) (citation omitted).  And as part of such a showing, the claim presented to the state courts "must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief." *Reedman v. Thomas*, 305 Fed. Appx. 544, 545-46 (11th Cir. 2008) (per curiam) (citation omitted).

In the case at hand, the Supreme Court's opinion in *Ake v. Oklahoma* is integral to West's claim, but it only appears once within his brief to the Alabama Court of Criminal Appeals on direct appeal. (*See* C.R. Vol. 14, Tab. 31, p. 4).  West argued:

> The principles which guided the Alabama Supreme Court in Ex Parte Moody, 684 So.2d 1114 (Ala. 1996) and the United States Supreme Court in Ake v. Oklahoma, 470 U.S. 68 (1985) in setting the standards for payment of indigent experts, would similarly be hollow in the absence of a fair opportunity to locate and obtain expert assistance prior to trial.

*Id.* (parallel citations omitted).  Context, however, is invaluable because not only does the assertion espousing *Ake* appear in the closing paragraph of West's claim, but it also falls under a confusing caption that seems to only address purported violations of Alabama law.  *Id.* at 1, 4.  That section's heading states:

> The Trial Court Erred in Refusing to Exclude Letters Attributed to the Defendant Which Were Not Made Known to the Defense Until 8 Days Prior to the Date Scheduled for Commencement of the Trial; or in the Alternative, It Erred in Failing to Grant the Defendant's Request for a Continuance.

*Id.* at 1.

And while West's brief to the Alabama Court of Criminal Appeals on direct appeal cites "his right to a fair hearing" as well as his "14th amendment right[] under the Constitution of the United

States," both references only appear within a recitation of the various rights upon which his trial counsel filed pre-trial discovery motions seeking the production of documents, which "w[ere] premised upon" and made "pursuant to" rights guaranteed by the United States Constitution.  *See id.* at 3.[87]  Moreover, neither of West's citations to the Constitution can be viewed as a "reference to a specific federal constitutional guarantee," *Reedman*, 305 Fed. Appx. at 545-46 (citation omitted), in the sense that neither were made in support of a claim that West's constitutional rights were violated.  To the contrary, both references merely state that West's trial counsel filed pre-trial motions requesting the production of documents and that these motions were "premised upon" or made "pursuant to" West's constitutional rights.  (*See* C.R. Vol. 14, Tab. 31, pp. 2-3).  The fleeting nature of West's references to his constitutional rights is only compounded by the fact that both references appear within laundry lists of numerous rights arising under both the Alabama and United

---

[87] Both citations to the United States Constitution appear within sentences stating the grounds upon which West's trial counsel filed motions for the prosecution to produce documents.  The first reference states in full:

> On October 21, 1997, Defense Counsel filed a "Motion to Examine and Test Physical Evidence" (C. 60-61) this motion requested that the Court order the prosecution to produce "all physical evidence recovered from this defendant or pursuant to a search" and "all other physical evidence relating in any way to the alleged crime".  This request was premised upon the Defendant's *right to due process of law*, his *right to obtain a fair hearing*, his right to confrontation, his right to prepare a defense on his own behalf, his right to the effective assistance of counsel, and all rights guaranteed by the United States Constitution and the amendments thereto, as well as Article 1, Section 16 of the Constitution of the State of Alabama.

(C.R. Vol. 14, Tab. 31, pp. 2-3 (emphasis added))).  The second citation to the United States Constitution appears on the same page and states:

> Another motion filed by the defense on October 21, 1997, 18 months in advance of trial was a "Motion to Exclude all Evidence Not Provided Through Discovery Orders of This Court" that motion was filed pursuant to Ex Parte Monk, 557 So.2d 832 (Ala. 1989), in which the Alabama Supreme Court held that the 'hovering death penalty is the special circumstance justifying broader discovery in capital cases' and, pursuant to the Defendant's 4th, 5th, 6th, 8th, and *14th Amendment rights* under the Constitution of the United States, together with Sections 1, 5, 6, 7, 8, 9, 11, 13, 15, and 16 of Article 1 of the Alabama Constitution, as well as Rule 16 of the Alabama Rules of Criminal Procedure.

*Id*. at 3 (emphasis added).

States Constitution—a far cry from "referenc[ing] a *specific* federal constitutional guarantee." *Reedman*, 305 Fed. Appx. at 545-46 (emphasis added) (citation omitted).

Finally, it is worth noting that West reiterated this exact claim within his petition for certiorari to the Alabama Court on direct appeal.  (*See* Vol. 15, Tab. 36, pp. 1-4).  The importance of this repetition, while slight, is that at no time did West dispute the Alabama Court of Criminal Appeals' characterization of his claim as being solely premised on Alabama law.  *See id.*  Thus, the Alabama Court of Criminal Appeals' opinion on this issue accurately summarizes the essence of West's claim before the Alabama courts on direct appeal, which was "the trial court [erred] in refusing to exclude the letters and Drexler's testimony" and further exceeded its discretion by denying his "motion for [a] continuance due to lack of time for adequate preparation."  *West v. State*, 793 So.2d 870, 879 (Ala. Crim. App. 2000) (citations omitted).

Therefore, West's claim is analogous to the claim dismissed by the Eleventh Circuit in *McNair* as it: (1) falls under a caption that is labeled in a confusing manner;[88] (2) buries the citation to federal law within a string citation found in the closing paragraph;[89] and (3) was simply repeated before the Alabama Supreme Court, rather than pointing out any mischaracterization made by the Alabama Court of Criminal Appeals.[90]  *See McNair*, 416 F.3d at 1303.  As such, West has done

---

[88] *Cf. McNair*, 416 F.3d at 1303 (noting that both the section's caption as well as "the substantive argument contained in that section . . . addressed Alabama law, with the bulk of it consisting of [the petitioner's] attempt to analogize his case to" an earlier case from the Alabama Supreme Court).

[89] *See McNair*, 416 F.3d at 1303 ("The relevant part of the brief contained only two references to federal law. The first was a citation to [a federal district court case], which was one of seven cases included in a string citation . . . . The other reference to federal law came in the closing paragraph . . . .").

[90] *See McNair*, 416 F.3d at 1303 ("[The petitioner's] nine page petition for certiorari on [this] issue did not cite a single federal case; its only mention of federal law was a repetition of the concluding paragraph of his argument before the Court of Criminal Appeals.  His brief in support of the petition included a verbatim restatement of . . . his brief to the Court of Criminal Appeals and nothing more.").

nothing "more than scatter some makeshift needles in the haystack of the state court record." *Id.*
(citation omitted).  "He therefore failed to exhaust his state court remedies and is procedurally barred
from raising his non-exhausted federal claim in his federal habeas petition." *Id.* at 1304 (footnote
omitted).

   To be clear, this Court must discern whether West "presented his claims to the state court
such that a reasonable reader would understand each claim's particular legal basis . . . ." *Id.* at 1302
(citation omitted).  That is, the present issue is whether a "reasonable reader would understand" that
the claim West presented to the Alabama courts on direct appeal is the "same claim he [now] urges
upon the federal courts." *Id.*  If not, West failed to "'fairly present' his federal claims to the state
courts," and his present claims are unexhausted for purposes of federal habeas review. *Pearson*, 273
Fed. Appx. at 849-50 (citation omitted).

   As stated above, West argues before this Court that the principles articulated by Supreme
Court in "*Ake v. Oklahoma* . . . make[s] clear that fundamental fairness entitles a criminal defendant
to an expert on any issue the government has made into a 'significant factor' at trial." Petition (Doc.
1) at 43.  And without "the assistance of [an] expert in the cross-examination of the government's
expert on the same issue," West was "robbed of the 'basic tools of an adequate defense or appeal.'"
*Id.* (quoting *Ake*, 470 U.S. at 77).  When the preceding is compared to the claims West raised on
direct appeal, it is clear that West did not "present [Alabama] courts with the same claim he [now]
urges upon the federal courts." *McNair*, 416 F.3d at 1302 (quoting *Picard*, 404 U.S. at 275).  Even
though West cited *Ake* and the United States Constitution, the federal constitutional dimension of
this claim was not made clear to the Alabama appellate courts.

   In conclusion, West did not fairly present the federal constitutional dimension of his claim

to the state courts on direct appeal.  Because "the sanction for failing to exhaust properly [is] preclusion of review in federal court," this Court is barred from reaching the merits of West's claim. *Woodford v. Ngo*, 548 U.S. 81, 92 (2006); *see also Martin v. Sec'y, Dep't of Corr.*, 262 Fed. Appx. 990, 993 (11th Cir. 2008) (per curiam) ("If the petitioner never raised the claim in state court, and it is obvious that the unexhausted claim would be procedurally barred in state court, 'the exhaustion requirement and procedural default principles combine to mandate dismissal.'" (citation omitted)).

Further, a habeas petitioner can evade this exhaustion requirement if he or she shows "cause for and actual prejudice resulting from the default or by establishing a fundamental miscarriage of justice."  *McNair*, 416 F.3d at 1304 n.9 (citation omitted).  Here, however, West not only fails to argue that the preceding exceptions are applicable to his claim, but also would be unable to establish that either of these exceptions vitiate his present procedural default "as there is no conceivable excusable cause for his failure to raise [this] claim in state court and no fundamental miscarriage of justice will result from its default."  *Id.*  Therefore, this sub-claim is accordingly due to be dismissed.

**B.    Alabama Violated West's Sixth Amendment Right to Confrontation by Denying Him Expert Assistance to Aid in the Cross-Examination of the State's "Obliterated Documents" Expert.**

West summarizes this sub-claim by asserting that "the state courts erred by failing to find that [he] had been denied . . . his right to effective cross-examination."  Petition (Doc. 1) at 26.  Such an oversimplification, however, does not account for the many nuances in West's argument.

As a general proposition, West broadly asserts that the Sixth Amendment's "Confrontation Clause guarantees 'an opportunity for effective cross-examination.'"  *Id.* at 56 (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam)); *see also id.* at 54 ("The Sixth Amendment guaranteed West the right to confront and cross-examine the adverse witnesses in his case.").  But

Alabama deprived him of this right, West argues, when the trial court denied him "the assistance he

needed to question the prosecution's theory, much less show that it was baseless." *Id.* at 56-57; *see*

*also id.* at 54-55 ("[T]he trial court made it impossible for him to obtain an expert to counter the

prosecution's expert." (emphasis omitted)).

West further elaborates that:

> [He] was entitled to an expert to analyze documents and testify on his behalf. . . .
> Drexler's testimony was the only impartial evidence linking West to the crime.
> Moreover, only a battle of the experts could reasonably convince a jury that expert
> opinion-making is often a rather subjective business.  To avoid prejudice and to
> ensure a fair trial, the court should have given [him] a reasonable amount of time to
> obtain an expert who could examine the letters from the defendant's perspective,
> testify, question Drexler's methods, and provide defense counsel with the expertise
> to properly cross-examine Drexler.

*Id.* at 58-59 (internal citation omitted).  And the consequences of the trial court's denial, West

claims, were disastrous.

> Nonetheless, West's counsel attempted to cross-examine Drexler.  His
> cross-examination fills less than two pages of the trial transcript.  T. 1206-07.  Thus,
> the state's best evidence against West - the only evidence that did not come from a
> witness with something to gain by testifying against him - went unexamined and
> unchallenged by the defense.  Without his own expert, West was deprived of "the
> basic right to have the prosecutor's case encounter and 'survive the crucible of
> meaningful adversarial testing.[']"  *Crane*[ *v. Kentucky*, 476 U.S. 683,] 690-91
> [(1986)] (quoting *United States v. Cronic*, 466 U.S. 648, 656 (1984)[)].

*Id.* at 59.  To conclude, West argues that the imbalance evidenced by the disparity between the length

of his trial counsel's cross-examination and the State's direct examination of Drexler "frustrates the

Confrontation Clause's central concern: ensuring the reliability of the evidence by subjecting it to

rigorous testing in the context of an adversary proceeding before the trier of fact."  *Id.* at 58 (citing

*Maryland v. Craig*, 497 U.S. 836, 845 (1990)).

> Respondents raise a two principal arguments to rebut West's claim.  First, Respondents argue

that "this Court should summarily dismiss this claim because it is conclusory in nature and fails to state a valid claim for relief under 28 U.S.C. § 2254." Respondents' Br. (Doc. 11) at 47. Respondents specifically contend that "West fails . . . to identify an 'obliterated documents' expert that would have been available for his trial" and that West "does not allege what assistance that expert would have provided." *Id.* Second, Respondents assert that "[t]his claim is unexhausted and defaulted because it never was raised in state court on appeal from West's conviction and death sentence." Answer (Doc. 10) at 25. In particular, Respondents contend that "[a]lthough this claim was raised on direct appeal in West's petition for certiorari to the United States Supreme Court, including a claim in a petition for discretionary review is alone insufficient for exhaustion purposes," and further "dismissal to allow West to exhaust this claim would be futile because he is now barred from raising this claim in state court. *Id.* (citations omitted).

### 1. *Procedural Rules Governing Habeas Corpus Cases Under § 2254.*

For the same reasons discussed previously in Part II(A)(1) *supra*, West's claim that he was "denied . . . his right to effective cross-examination," Petition (Doc. 1) at 26, "is conclusory in nature and fails to state a valid claim for relief under 28 U.S.C. § 2254," Respondents' Br. (Doc. 11) at 47. Respondents are correct to argue that the same shortcomings which plagued West's previous sub-claim likewise bars his present sub-claim; namely, West "fails . . . to identify an 'obliterated documents' expert that would have been available for trial" and "does not allege what assistance that expert would have provided." Respondents' Br. (Doc. 11) at 47. In sum, West's petition fails to "state the facts supporting each ground" for relief and, accordingly, is due to be dismissed. *Mayle*, 545 U.S. at 655 (quoting Rule 2(c) of the Rules Governing Section 2254 Cases in the U.S. District Courts, 28 U.S.C. foll. § 2254).

106

## 2.   *The Question of Procedural Default.*

As a perquisite to federal habeas review, a petitioner "must exhaust state court remedies, either on direct appeal or in a state post-conviction motion." *Reedman*, 305 Fed. Appx. at 545 (citing § 2254(b), (c)).

> To exhaust state remedies, the petitioner must present fairly every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. For purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief. Indeed, we require that a petitioner present his claims to the state court such that a reasonable reader would understand each claim's particular legal basis.

*Id.* at 545-46 (alterations, citations, and internal quotation marks omitted). Stated differently, a federal habeas court must "ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies . . . ." *Woodford*, 548 U.S. at 92 (emphasis in original) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)).

Here, Respondents concede that West raised this claim in his petition for certiorari to the United States Supreme Court on direct appeal but argue that this alone is insufficient for purposes of exhaustion. *See* Answer (Doc. 10) at 25. In this respect, Respondents are correct. The Supreme Court has held that the exhaustion requirement is *not* met "where the claim has been presented for the first and only time in a procedural context in which its merits will not be considered unless 'there are special and important reasons therefor[.]' Raising the claim in such a fashion does not . . . constitute 'fair presentation.'" *Castille v. Peoples*, 489 U.S. 346, 351 (1989) (citations omitted). This principle still holds true today, as the Eleventh Circuit recently explained: "the Supreme Court in *Castille* explicitly rejected the argument that 'the submission of a new claim to a State's highest court on discretionary review constitutes a fair presentation.'" *Mauk v. Lanier*, 484 F.3d 1352, 1357-

58 (11th Cir. 2007) (quoting *Castille*, 489 U.S. at 351).  And if submitting a new claim to a state's supreme court on discretionary review does not constitute fair presentation of a claim to state courts, then, *a fortiori*, neither does presentment of a new claim to the United States Supreme Court within a petition for writ of certiorari.  *Cf. id.*

In other words, the Supreme Court has held that a habeas petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process" before he or she will "be deemed to have exhausted the remedies available in the courts of the State." *O'Sullivan*, 526 U.S. at 844-45 (quoting 28 U.S.C. § 2254(c)); *cf. Rose v. Lundy*, 455 U.S. 509, 520 (1982) ("[O]ur interpretation of § 2254(b), (c) provides a simple and clear instruction to potential litigants: before you bring any claims to federal court, be sure that you first have taken each one to state court.").  As such, any claim West raised within his petition for certiorari to the United States Supreme Court will not save him from having not raised this issue before Alabama courts.  The only relevant inquiry, therefore, is whether this issue was raised within the briefs West filed in conjunction with his state court proceedings; either on direct appeal or during Rule 32 proceedings.

The only citations to the Confrontation Clause of the Sixth Amendment within West's brief to the Alabama Court of Criminal Appeals on direct appeal appear in the same section as those to *Ake v. Oklahoma* and the Fourteenth Amendment above.  (*See* C.R. Vol. 14, Tab. 31, p.3).  Compared to the preceding claim, however, if West's references to *Ake v. Oklahoma* and its corresponding constitutional rights were tenuous, then any reference to the Confrontation Clause is nearly non-existent.  That is, West's previous claim benefitted from citations to both the Constitution and the Supreme Court's opinion in *Ake v. Oklahoma*; whereas, West's present claim merely hinges

upon two passing references to the United States Constitution.  *Id.*

In his brief to the Alabama Court of Criminal Appeals on direct appeal, which mirrors his petition for certiorari to the Alabama Supreme Court, West mentions "his right to confrontation" as well as his "6th . . . amendment right[] under the Constitution of the United States."  *Id.*; (*see also* C.R. Vol. 15, Tab. 36, p. 3).   These references, however, appear in the same explanation of the rights upon which West's trial counsel filed pre-trial discovery motions seeking the production of documents, which "w[ere] premised upon" and made "pursuant to" rights guaranteed by the United States Constitution.  (C.R. Vol. 14, Tab. 31, p.3).  As such, they are more akin to a discussion of the procedural history in West's case than to any resemblance of an argument.

Only one sentence in West's brief to the Alabama Court of Criminal Appeals on direct appeal is remotely similar to the claim he now raises in the federal habeas petition.  It states:

> The Trial Court gave limited recognition to the importance of allowing the defense to engage an expert to assist in analysis of the letters and *in preparation for cross examination* of the State's expert witness by indicating that approval would be given for payment of an expert at State expense if the defense could locate one.

*Id.* at 4 (emphasis added).  But even this assertion does not claim that the trial court violated his right to confrontation by denying him a reasonable opportunity to obtain expert assistance to aid in the cross-examination of the State's obliterated documents expert.  To be sure, the caption of this section as well as the substantive allegations contained therein both establish that West's argument before the Alabama courts on direct appeal did not invoke the guarantees of the Confrontation Clause, but instead that "[t]he Trial Court should have either excluded the letters, or granted a continuance to allow the defense a fair opportunity to respond to them."  *Id.* Because West did not fairly present this issue during state court proceedings, this claim is unexhausted and due to be dismissed.

## C.   The Trial Court Violated West's Sixth Amendment Right to Confrontation by Admitting "Junk Science," *i.e.*, Unreliable Expert Testimony, into Evidence.

In this sub-claim, West expounds upon his counsel's objection at trial where he argued that the speciality of obliterated documents is neither recognized as a profession nor recognized by Alabama as a proper mode of authentication.  *See* Petition (Doc. 1) at 62-63 (quoting R. Vol. 9, p. 1192).  West begins by asserting that Judge Cardwell "failed in his role as gate keeper."  *Id.* at 61. He argues that Judge Cardwell "had a special obligation to ensure that scientific testimony was not only relevant, but also reliable," yet he violated this duty by permitting the State's obliterated documents expert to testify in the absence of a defense expert to assist West's trial counsel during the State expert's cross-examination. *Id.* (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)).  Finally, West argues that Alabama does not have any "licensing requirements, procedural safeguards or regulations," nor even recognizes "'document obliteration' [as a] profession," and thus the prosecution failed to prove that Drexler's testimony was either sufficiently reliable or "had been 'sufficiently established to have gained general acceptance' in any recognized field of expertise."  *Id.* at 61-63; *cf. id.* at 62 n.6 (quoting R. Vol. 8, pp. 1177-78).[91]

In reply, Respondents raise two arguments.  First, Respondents assert that "[t]his claim is procedurally defaulted because it raises a pure question of state law."  Respondents' Br. (Doc. 11) at 49.  Second, Respondents assert that "the merits of this claim were addressed by the Alabama Court of Criminal Appeals on direct appeal."  Answer (Doc. 10) at 27 (citing Rule 32 C.R. Vol. 21, Tab. 65, pp. 879-81).

---

[91] West's habeas petition incorrectly cites "T. 177-178" when reproducing the trial "testimony regarding Drexler's qualifications."  *See* Petition (Doc. 1) at 62 n.6.  This portion of Drexler's testimony actually appears on pages 1177-78.  (*See* R. Vol. 8, pp. 1177-78).

1.      *Asserted Bases for Federal Relief*

At bottom, this aspect of West's denial of expert assistance sub-claim is not a cognizable claim for purposes of federal habeas review because it does not allege that "that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *see also Alston v. Dep't of Corr., Fla.*, 610 F.3d 1318, 1325-26 (11th Cir. 2010). The Supreme Court has made it exceedingly clear by "*stat*[*ing*] *many times* that 'federal habeas corpus relief does not lie for errors of state law'" and "*reemphasiz*[*ing*] that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (emphasis added) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). A mandate the Supreme Court reiterated just this term. *Wilson v. Corcoran*, 131 S.Ct. 13, 14 (2010) (per curiam) ("Federal courts may not issue writs of habeas corpus to state prisoners whose confinement does not violate federal law."). In other words, section 2254(a) "command[s] . . . that habeas relief may be afforded to a state prisoner '*only on the ground*' that his custody violates federal law." *Id.* at 17 (emphasis added).

Here, West does not argue that Alabama is prohibited from using testimony from experts such as Drexler. To the contrary, the implicit assumption underlying West's claim is that it is an unwise public policy for Alabama to do so. And while he attempts to clothe his arguments as claims arising under the Confrontation Clause of the Sixth Amendment, he primarily cites law review articles along with a few cases interpreting the Federal Rules of Evidence. *See* Petition (Doc. 1) at 60-62 (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1991);[92] *Daubert v. Merrell Dow*

---

[92] *Kumho*, 526 U.S. at 141 ("This case requires us to decide how *Daubert* applies to the testimony of engineers and other experts who are not scientists. We conclude that *Daubert*'s general holding—setting forth the trial judge's general 'gatekeeping' obligation—applies not only to testimony based on 'scientific' knowledge, but also to testimony

*Pharm., Inc.*, 509 U.S. 579 (1993);[93] *Barefoot v. Estelle*, 463 U.S. 880, 926 (1983) (Blackmun, J.

dissenting)).  As such, "[t]his issue is not of federal constitutional proportions," *Willeford v. Estelle*,

538 F.2d 1194, 1198 (5th Cir. 1976), and does not provide a basis for federal habeas relief.  *See* 28

U.S.C. § 2254(a); *Gonzalez v. Sec'y, Fla. Dep't of Corr.*, 629 F.3d 1219, 1223 (11th Cir. 2011) (per

curiam) ("A federal court may not issue the writ on the basis of a perceived error of state law."

(quoting *Pulley v. Harris*, 465 U.S. 37, 41 (1984))).

       Alternatively, for the reasons already set out in this opinion, all of the preceding claims are

procedurally defaulted for lack of merit.  This claim is due to be dismissed, or, in the alternative,

denied.

## **CONCLUSION**

For all of the reasons set forth herein, West's petition for writ of habeas corpus is due to be

**DISMISSED**, or alternatively **DENIED**.  A separate order in accordance with this Memorandum

Opinion will be entered.

       **DONE** and **ORDERED** this 26<u>th</u> day of April 2011.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE

---

based on 'technical' and 'other specialized' knowledge.  *See* Fed. Rule Evid. 702.").

   [93] *See Daubert*, 509 U.S. at 582 ("In this case we are called upon to determine the standard for admitting expert scientific testimony in a federal trial.").